PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:    (213) 687-5000
Facsimile:    (213) 687-5600

SCOTT D. MUSOFF (admitted *pro hac vice*)
scott.musoff@skadden.com
BORIS BERSHTEYN (admitted *pro hac vice*)
boris.bershteyn@skadden.com
LARA A. FLATH (admitted *pro hac vice*)
lara.flath@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000

Attorneys for Defendants Barclays PLC and Nigel Higgins

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| STEPHEN MERRITT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BARCLAYS PLC, JAMES E. STALEY, and NIGEL HIGGINS, <br><br> Defendants. | CASE NO.: 2:23-cv-09217-MEMF-KS <br><br> **DEFENDANTS BARCLAYS PLC'S AND NIGEL HIGGINS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT** <br><br> Date: May 15, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 8B <br> Judge: Hon. Maame Ewusi-Mensah Frimpong <br><br> Complaint Filed: November 1, 2023 <br> Amended Complaint Filed: August 12, 2024 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

I.      PRELIMINARY STATEMENT ....................................................................... 1

II.     ARGUMENT..................................................................................................... 1

        A.      Plaintiff Teamsters Fails to State a Claim Under Section 10(b) of the
                Exchange Act ........................................................................................ 1

                1.      Teamsters Fails to Adequately Plead Loss Causation ................... 1

                2.      The Complaint Fails to Allege Any Actionable False or
                        Misleading Statements................................................................. 3

                        (a)     Statements That Staley Never Engaged or Paid Fees to
                                Epstein............................................................................ 3

                        (b)     Statements That Staley and Epstein Had a
                                Professional Relationship................................................. 4

                        (c)     Statements of Opinion About Staley's Transparency
                                with Barclays .................................................................. 4

                        (d)     Statements About Barclays' Cooperation with
                                Regulators....................................................................... 5

                        (e)     Statement that Staley Volunteered an Explanation ............ 6

                        (f)     Statements About the FCA's Initial Findings................... 6

                        (g)     Barclays' Reaction to Certain Third-Party Lawsuits.......... 6

                3.      Higgins Cannot Be Liable Under Section 10(b) for
                        Statements He Did Not Make........................................................ 7

                4.      The Complaint Fails to Allege Scienter........................................ 7

        B.      Plaintiff St. Louis Firemen's Section 90A Claim Should Be
                Dismissed.............................................................................................. 8

                1.      The Court Should Decline to Exercise Supplemental
                        Jurisdiction or Dismiss Under *Forum Non Conveniens*................. 8

                2.      St. Louis Firemen Fails to State a Claim Under Section 90A...... 10

III.    CONCLUSION................................................................................................ 10

CERTIFICATE OF COMPLIANCE ................................................................................ 12

**TABLE OF AUTHORITIES**

**CASES**

*Abadilla v. Precigen, Inc.*,
No. 20-cv-06936-BLF, 2022 WL 1750033 (N.D. Cal. May 31, 2022) ............................ 2

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equipment (Shanghai) Co.*,
No. C 07-05248 JW, 2009 WL 10692715 (N.D. Cal. Nov. 30, 2009) ............................. 8

*Brendon v. Allegiant Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. 2019) ................................................................. 3

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002) ............................................................................. 4

*In re ChinaCast Education Corp. Securities Litigation*,
809 F.3d 471 (9th Cir. 2015) ............................................................................ 8

*City of Royal Oak Retirement System v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................. 4

*City of Sterling Heights Police & Fire Retirement System v. Reckitt Benckiser Group PLC*,
587 F. Supp. 3d 56 (S.D.N.Y. 2022) .................................................................. 9

*In re Cloudera, Inc.*,
121 F.4th 1180 (9th Cir. 2024) ........................................................................ 10

*In re Cutera Securities Litigation*,
610 F.3d 1103 (9th Cir. 2010) .......................................................................... 3

*Daniels-Hall v. National Education Ass'n*,
629 F.3d 992 (9th Cir. 2010) ............................................................................ 4

*De Asencio v. Tyson Foods, Inc.*,
342 F.3d 301 (3d Cir. 2003) ............................................................................. 9

*Eng v. Pacific Clinics*,
No. 2:12-cv-10892-SVW-PJW, 2013 WL 12129611 (C.D. Cal. May 17, 2013) ........... 8-9

*Espy v. J2 Global, Inc.*,
99 F.4th 527 (9th Cir. 2024) ............................................................................. 1

*In re Facebook, Inc. Securities Litigation*,
87 F.4th 934 (9th Cir. 2023), *cert. granted in part mem.*,
144 S. Ct. 2629 (2024) ...................................................................................... 4

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............................................................................ 5

*Lopes v. Fitbit, Inc.*,
No. 18-cv-06665-JST, 2020 WL 1465932 (N.D. Cal. Mar. 23, 2020), *aff'd mem.*,
848 F. App'x 278 (9th Cir. 2021) ...................................................................... 2

*Mandalevy v. Bofi Holding, Inc.*,
No. 17-cv667-GPC-KSC, 2021 WL 794275 (S.D. Cal. Mar. 2, 2021) ........................ 7

*McGovney v. Aerohive Networks, Inc.*,
      367 F. Supp. 3d 1038 (N.D. Cal. 2019)..................................................................6

*Metzler Investment GmbH v. Corinthian Colleges, Inc.*,
      540 F.3d 1049 (9th Cir. 2008) ...............................................................................4

*Mina v. Red Robin International, Inc.*,
      No. CV 18-9472 PSG (GJSx), 2020 WL 4037163 (C.D. Cal. Mar. 3, 2020).................. 10

*Nathanson v. Polycom, Inc.*,
      87 F. Supp. 3d 966 (N.D. Cal. 2015) ......................................................................2

*In re Nektar Therapeutics Securities Litigation*,
      34 F.4th 828 (9th Cir. 2022)..............................................................................1, 7

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
      575 U.S. 175 (2015) ..............................................................................................5

*In re Paypal Holdings, Inc. Shareholder Derivative Litigation*,
      No. 17-cv-00162-RS, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018)...............................2

*Prodanova v. H.C. Wainwright & Co.*,
      993 F.3d 1097 (9th Cir. 2021).................................................................................7

*Reese v. Malone*,
      747 F.3d 557 (9th Cir. 2014) ..................................................................................4

*Reyes v. Wells Fargo Bank*,
      No. EDCV 17-909-JFW (KKx), 2017 WL 11568871 (C.D. Cal. Aug. 17, 2017).............3

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
      697 F.3d 869 (9th Cir. 2012)...................................................................................3

*Siswanto v. Airbus Americas, Inc.*,
      No. 15-CV-5486, 2016 WL 7178460 (N.D. Ill. Dec. 9, 2016) ...................................9-10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
      551 U.S. 308 (2007) ..............................................................................................8

*In re Tesla, Inc. Securities Litigation*,
      477 F. Supp. 3d 903 (N.D. Cal. 2020) .....................................................................3

*In re Toyota Motor Corp. Securities Litigation*,
      No. CV 10-922 DSF (AJWx), 2011 WL 2675395 (C.D. Cal. July 7, 2011)....................9

*Weston Family Partnership LLLP v. Twitter, Inc.*,
      29 F.4th 611 (9th Cir. 2022)...................................................................................3

*Wochos v. Tesla, Inc.*,
      985 F.3d 1180 (9th Cir. 2021).................................................................................3

## I.    PRELIMINARY STATEMENT[1]

Plaintiffs continue to mischaracterize the retreading of old news as actionable securities fraud. But the "news" relating to Barclays' former CEO James Staley's relationship with Jeffrey Epstein (and Staley's resulting departure) was disclosed <u>years</u> before plaintiff Teamsters claims the stock market first learned it—and thus Teamsters cannot plausibly plead loss causation. Teamsters tries to brush this aside as a factual dispute for a later stage. Not so. Rule 9(b) and the PSLRA impose "heightened and demanding" requirements, *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 533 (9th Cir. 2024), at the pleading stage—not only for alleging loss causation, but also for alleging the falsity of defendants' alleged statements and their scienter. Teamsters falls short on all three fronts. As to the U.K.-law claims, this Court should decline to exercise supplemental jurisdiction or should dismiss on the basis of *forum non conveniens*. On the merits, St. Louis Firemen has abandoned any claim based on alleged misrepresentations or omissions. And the remaining claim for "dishonest delay" fails because the AC does not plead any obligation to disclose the allegedly delayed information. Accordingly, the AC should be dismissed in full and with prejudice.

## II.    ARGUMENT

### A.    Plaintiff Teamsters Fails to State a Claim Under Section 10(b) of the Exchange Act

#### 1.    Teamsters Fails to Adequately Plead Loss Causation

The Opposition cannot salvage the AC's conspicuous failure to plead loss causation. (Mot. 8-10.) Teamsters does not dispute that a disclosure "must by definition reveal new information to the market" to be "corrective." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022). Instead, it asserts that Barclays' October 2023 disclosure of the FCA's final decision injected "new" information into the market by revealing that the FCA's investigation (i) was "completed" with a determination of wrongdoing by Staley and (ii) "provided details concerning other Barclays executives' involvement in . . . the misleading letter to the FCA." (ECF 69 ("Opp.") 18.)

But there was nothing new revealed in October 2023: to the contrary, the FCA affirmed what it had already provisionally concluded (and Barclays disclosed) in <u>November 2021</u>—that Staley's

---

[1] Capitalized terms not defined herein have the meanings used in Barclays' and Higgin's memorandum of law (ECF 58, "Motion" or "Mot."). All emphasis is added and internal citations and quotation marks are omitted unless otherwise noted.

1

"characterisation to Barclays of his relationship with [Epstein] and the subsequent description of that relationship in Barclays' response to the FCA" was problematic. (Ex. 3 at 11; AC ¶ 83.) By October 2023, major news organizations—including *The New York Times* and *Financial Times*—had published extensive details about the Staley-Epstein relationship (and Staley's departure from Barclays "in light of" the FCA's preliminary conclusions), further refuting any inference that the October 2023 disclosure was "corrective." (Mot. 4, 6-7, 9.) As for Barclays' executives' purported "involvement" (Opp. 18), Barclays disclosed in February 2020 that Staley had provided "certain executives, and [Higgins]," information about his relationship with Epstein ahead of the Company's response to the FCA. (Ex. 2 at 7.) What is more, the FCA did not implicate them in any wrongdoing. Far from it: the FCA emphasized that Staley had "misled both the FCA and the Barclays Board."[2] (AC ¶ 104 (quoting the FCA's October 12, 2023 announcement).) In short, because the disclosure of the FCA's completed investigation "offered 'no new information' to the market," *Lopes v. Fitbit, Inc.*, 2020 WL 1465932, at *12 (N.D. Cal. Mar. 23, 2020), *aff'd mem.*, 848 F. App'x 278 (9th Cir. 2021), it was not a corrective disclosure. This alone warrants dismissal.

To salvage their claim, Teamsters presses the untenable argument that a "completed" investigation (Opp. 18 (emphasis in original)) necessarily introduces new information to the market, even if immediately disclosed by the company. Under that reading of Section 10(b), a company must either confess its guilt in advance of any regulatory finding or face allegations of securities fraud when that finding is announced. Courts have uniformly rejected this view. *See, e.g.*, *In re Paypal Holdings, Inc. S'holder Derivative Litig.*, 2018 WL 466527, at *3 (N.D. Cal. Jan. 18, 2018) ("Federal securities laws do not impose upon companies a duty to disclose uncharged, unadjudicated wrongdoing."). Teamsters' theory makes little sense here—where, far from surprising shareholders, Barclays disclosed the FCA's preliminary findings and Staley's departure two years earlier.[3]

---

[2] Teamsters asserts that "loss causation is sufficiently pled when an announcement contains an express disclosure of actual wrongdoing." (Opp. 18.) But in its cases, the relevant "announcement[s]" were not preceded by a disclosure of that same alleged wrongdoing, as here. *See, e.g.*, *Abadilla v. Precigen, Inc.*, 2022 WL 1750033, at *9-10 (N.D. Cal. May 31, 2022) (SEC order disclosed for first time that company allegedly "had made inaccurate statements"); *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 983 (N.D. Cal. 2015) (disclosure revealed for first time that audit committee had "found certain irregularities" with expense statements by former CEO).

[3] In light of the relatively limited drop in Barclays' stock price, Teamsters posits that there is "no hard cutoff" and that "less than a 10% stock price drop" may support loss causation. (Opp. 19.) But those cases involved corrective disclosures

*(cont'd)*

BARCLAYS PLC'S AND HIGGINS' REPLY MEMORANDUM                    NO.: 2:23-cv-09217-MEMF-KS

**2.    The Complaint Fails to Allege Any Actionable False or Misleading Statements**

Teamsters does not contest, and thus concedes, that it does not plead falsity with respect to (i) representations about when the Staley-Epstein relationship ended (AC ¶¶ 69, 71, 75) or (ii) Higgins' statement declining comment on Staley's departure (*Id.* ¶ 88). *See Reyes v. Wells Fargo Bank*, 2017 WL 11568871, at *5 (C.D. Cal. Aug. 17, 2017) (unrebutted points are conceded). Accordingly, all claims premised on these statements should be dismissed.

As for the remaining statements, Teamsters does not contend that any were false. Rather, it repeatedly invokes the refrain that Barclays' statements, although accurate, either were "[h]alf-truths" (Opp. 8; *see also id.* at 7, 10-13) or pose factual issues that cannot be resolved at this stage. But Teamsters distorts these statements, conjuring implied meanings that are not supported by the words themselves. Teamsters has no choice but to try this sleight of hand because otherwise, its claim is defeated by a bedrock principle of federal securities law—that there is no "affirmative duty to disclose any and all material information." *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022); *see also Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (rejecting mischaracterization of alleged misleading statement). The Court should reject these machinations.

**(a)    Statements That Staley Never Engaged or Paid Fees to Epstein**

Teamsters does not contest the factual accuracy of Barclays' July 2019 statement that "Mr. Staley has never engaged or paid fees to Mr. Epstein to advise him, or to provide professional services, either in his various roles at JPMorgan, or personally." (AC ¶ 53.) Instead, it protests that this true statement nonetheless implicitly denied that Staley "repeatedly sought Epstein's counsel on personal and professional matters." (Opp. 9.) On its face, the statement does no such thing, and Teamsters cannot evade dismissal or the PSLRA's pleading requirements simply by claiming a statement is "incomplete." (Mot. 11 (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010) (a statement may "not mislead even if it is incomplete or does not include all relevant facts") and *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) (similar), which Teamsters does not address, much less distinguish).)

that "inject[ed] new information into the market[,]" *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 935 (N.D. Cal. 2020), or multiple corrective disclosures with a cumulative decline that far exceeded the 4.99% ADR decline here. *See, e.g., id.* at 931 (five corrective disclosures over ten days caused 21.6% stock decline); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1255, 1263-64 (D. Nev. 2019) (three disclosures totaling over 13%).

**(b)    Statements That Staley and Epstein Had a Professional Relationship**

The same flaw dooms any allegation that Barclays misled investors by stating that "earlier in his career[,] Mr. Staley developed a professional relationship with Mr. Epstein." (AC ¶ 69.) Again, Teamsters does not claim this statement is false but avers that it "effectively den[ied]" an "extremely close, personal relationship." (Opp. 8-9.) As Teamsters tells it, Barclays represented that the Staley-Epstein relationship "was *merely* professional." (*Id.* at 9; AC ¶ 81(a).) Barclays' actual statement said no such thing, and Barclays was under no obligation to provide more detail than it did.[4] (Mot. 12-13.) *See also Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("[P]laintiffs' complaint must specify the reason or reasons why the statements . . . were misleading or untrue, not simply why the statements were incomplete.").

In any event, it is implausible that investors were misled about the Staley-Epstein relationship given the proliferation of news coverage about it (which the AC itself references, AC ¶¶ 14, 15, 17, 54, 55). This belies any allegation that "material" information was somehow hidden from the market and newly revealed in October 2023.[5] (Mot. 12-13); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice . . . ."). And courts need not "indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008).

**(c)    Statements of Opinion About Staley's Transparency with Barclays**

In challenging the Board's "belie[f] that Mr. Staley ha[d] been sufficiently transparent" about "the nature and extent of his relationship with Mr. Epstein" (AC ¶ 69), Teamsters fails the stringent

---

[4] These statements contrast sharply with the "objectively misleading" disclosure sustained in *Reese v. Malone*, 747 F.3d 557, 569-70 (9th Cir. 2014) (Opp. 9) (company represented that corrosion rate in line was "low and manageable," when in fact its "inspection data showed objectively high corrosion rates and dramatically increased corrosion in certain places"). It also is miles apart from *In re Facebook, Inc. Securities Litigation*, 87 F.4th 934 (9th Cir. 2023). There, the social media giant was accused of "represent[ing] the risk of improper access to or disclosure of Facebook user data as purely hypothetical when that exact risk had already transpired." *Id.* at 949. Nothing of the kind is alleged here.

[5] Teamsters does not deny this coverage but accuses Barclays of raising a "truth-on-the-market" defense. (Opp. 9-10, 13-14.) This is a strawman: Barclays disclosed all required information. (Mot. 17.) *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 n.6 (N.D. Cal. 2012) (rejecting argument that defendants sought to improperly introduce a truth-on-the market defense as inapposite because "Defendants argue that they disclosed all required information, not that they failed to make required disclosures but should be excused because other sources have already made the same information available").

pleading requirements of *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015). It claims that this so-called "assurance[] gave the market a materially misleading impression that the Board had seen nothing contradicting a conclusion that Staley's relationship with Epstein was purely professional." (Opp. 10.) But Teamsters misreads the phrase "sufficiently transparent" to say more than it does; at most, it is an inherently subjective opinion incapable of "objective verification"—and thus inactionable.[6] (Mot. 14 (citing cases).)

Teamsters also fails to plead with particularity any facts that contradicted the Board's subjective belief about Staley's transparency. Instead, it asserts that the JPM emails should have dispelled any illusion that Staley was being transparent. (Opp. 10-11.) But pointing to vague expressions of flattery and gratitude is insufficient to plead facts that upend the Board's subjective opinion about what it believed at the time.[7] (Mot. 13-14.) And even if the JPM emails could have raised doubts about Staley's candor, opinions "[are] not necessarily misleading when [a speaker] knows, but fails to disclose, some fact cutting the other way." *Omnicare*, 575 U.S. at 189-90. Indeed, the Supreme Court has cautioned against an overly expansive reading of omission-based liability, emphasizing that pleading it would be "no small task for an investor." *Id.* at 194. And Teamsters continues to ignore its own admission that the FCA concluded Barclays was "misled" by Staley "about the nature of his relationship with Mr. Epstein," and that Staley was "the only person at Barclays who knew the full extent" of that relationship. (AC ¶ 104; Mot. 16.)

**(d)    Statements About Barclays' Cooperation with Regulators**

Teamsters cannot sustain its attack on Barclays' Annual Reports, in which the Company disclosed that it was "cooperating with the relevant authorities and keeping all relevant agencies briefed." (*E.g.*, AC ¶ 70.) Again, Teamsters does not challenge the literal accuracy of this statement, but instead argues that this disclosure created a misleading impression by failing to "disclose . . . the true nature of Staley's relationship with Epstein." (Opp. 12.) That is a non sequitur. There are no

---

[6] Unlike here, in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1010 (9th Cir. 2018), the omitted information—concerning a drug trial's lack of reliability—concretely and verifiably contradicted defendant's laudatory press release.

[7] Teamsters' assertion (Opp. 10-11) that the JPM emails make actionable (i) Higgins' April 3, 2020 opinion that Staley "retain[ed] the full confidence of the Board" (AC ¶ 77; Mot. 15) and (ii) Barclays' statement that "[t]he Board's governance processes were rigorously followed" (AC ¶ 77; Mot. 17) fails for the same reasons. And nowhere does the Complaint allege one fact about the Board's processes, much less how they were not adhered to.

5

BARCLAYS PLC'S AND HIGGINS' REPLY MEMORANDUM                    NO.: 2:23-cv-09217-MEMF-KS

allegations (much less particularized ones) that suggest Barclays did not cooperate with the FCA's investigation—which was the focus of the statement. (Mot. 15-16.)

### (e)    Statement that Staley Volunteered an Explanation

Teamsters quibbles with the wording of a February 2020 disclosure in which Barclays described Staley as having "volunteered" an explanation of his relationship with Epstein (AC ¶ 69), arguing that it "furthered the misimpression that Staley was 'transparent' and would have offered to disclose the information without the threat of an FCA investigation." (Opp. 11.) Teamsters, however, pleads no facts to support its premise—that, but for the FCA's request, Staley would not have offered such an explanation. Also, Teamsters never explains why Staley could not have "volunteered" information; instead, it continues to ignore that Barclays disclosed the FCA's non-compulsory request in the very same paragraph as the challenged statement. (Mot. 16.)

### (f)    Statements About the FCA's Initial Findings

Teamsters defies its own pleadings when it argues that Barclays' November 1, 2021 press release misled investors into believing that the FCA's investigation was limited to "whether Staley had witnessed Epstein's alleged crimes," when the probe was more broadly investigating the nature of the relationship. (Opp. 13.) In fact, the plain language of the press release shows otherwise. Its first sentence (which the Opposition ignores) states expressly that the investigation also concerned Staley's "characterisation" of his relationship with Epstein to regulators and to Barclays, as well as "the subsequent description of that relationship in [the Company's] response to the FCA." (Ex. 3 at 11; Ex. 2 at 7 (2020 release stating the same).) In short, Barclays "disclose[d] exactly what Plaintiff[] claim[s] [it] omitted," foreclosing liability. *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019).

### (g)    Barclays' Reaction to Certain Third-Party Lawsuits

The Opposition does not contest the accuracy of a March 23, 2023 statement in which Barclays represented that its February 2020 review "was based on the information it had at the time and representations made by Mr. Staley." (AC ¶ 98.) Instead, Teamsters recycles the "half-truth" label, accusing "the Barclays Defendants [of] perpetuat[ing] the false impression that [as of February 2020,] they were unaware" of certain emails that purportedly revealed "Staley's close, personal

BARCLAYS PLC'S AND HIGGINS' REPLY MEMORANDUM                NO.: 2:23-cv-09217-MEMF-KS

relationship" with Epstein. (Opp. 13.) The statement says no such thing. Instead, it advised that, at the time of the review in 2020, Barclays did not have access to certain accusations levied in subsequent third-party lawsuits—accusations that the AC itself characterized as "new" in 2023. (AC ¶¶ 92-98; Mot. 18.) This skewed interpretation does not meet Teamsters' burden to plead an actionable misstatement with particularity. *See Nektar Therapeutics*, 34 F.4th at 835.

### 3.   Higgins Cannot Be Liable Under Section 10(b) for Statements He Did Not Make

Higgins did not, as Teamsters claims (Opp. 14), "make" the six statements alleged in AC ¶¶ 69, 70, 78, 83, 89, or 94. All are drawn from Barclays' annual reports or press releases, and Teamsters neither alleges that Higgins signed those documents nor pleads specific facts—as opposed to conclusory assertions—showing that he had ultimate authority over their specific contents. (Mot. 18-19.) For example, no support exists for the claim that Higgins "took credit" for Barclays' February 13, 2020 statement because it allegedly involved a "director effectiveness assessment." Teamsters' sole authority, *Mandalevy v. Bofi Holding, Inc.*, 2021 WL 794275 (S.D. Cal. Mar. 2, 2021), does not help because, there, the plaintiff "alleged specific facts" showing that the defendants "had the ultimate authority" over the specific document containing the alleged misstatement. *Id.* at *7. Higgins is also not responsible for the statements in AC ¶¶ 86-87 from two news articles: one that quotes a press release over which Higgins is not alleged to have exercised ultimate authority (Mot. 19) and one that purports to reveal comments made by Higgins during a private (rather than public) investor call, a distinction that makes it non-actionable (*id.* at 18 n.13).

### 4.   The Complaint Fails to Allege Scienter

Teamsters concedes it has not pleaded that Higgins had a plausible motive to commit fraud. (Opp. 15.) Without such allegations, it must allege "compelling and particularized facts showing fraudulent intent or deliberate recklessness." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021). Teamsters' only pleading attempting to clear this "substantial hurdle," *id.* at 1103, is (once again) Higgins' access to the JPM emails. (Opp. 16.) But the isolated email fragments described in the AC are too vague and devoid of context to meet plaintiff's heavy burden to plead scienter. Teamsters, moreover, cannot paper over the defects in its pleading by arguing that Higgins should have asked Staley for clarification, (*id.*), as "omissions and ambiguities count against inferring

scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007).

Nor can Staley's knowledge of his relationship with Epstein be imputed to Barclays. (Mot. 20-21.) Teamsters mischaracterizes Barclays' argument to be that scienter can never rest on "knowledge and actions from prior to the Class Period." (Opp. 17.) Not so. Rather, under general agency principles, an officer's knowledge is imputed to the corporation only if "obtained while acting in the course of [his] employment and within the scope of [his] authority." *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 2009 WL 10692715, at *9 n.53 (N.D. Cal. Nov. 30, 2009). Here, Teamsters does not allege that Staley's knowledge was obtained in the course of his employment at Barclays, nor does it dispute that, under these principles, Staley's knowledge cannot be imputed to Barclays for alleged misstatements made after his departure. (*See* AC ¶¶ 83, 86, 88, 98.)

*In re ChinaCast Education Corp. Securities Litigation*, 809 F.3d 471 (9th Cir. 2015), does not rescue plaintiff. Teamsters asserts that imputation is appropriate under *ChinaCast* because Staley purportedly "made [his statements] with the imprimatur of the corporation." (Opp. 17.) It, however, ignores a key distinction (Mot. 21 n.15): ChinaCast's CEO was attesting to the financial health of the company from whom he had allegedly embezzled funds; Staley, by contrast, provided information about an individual relationship that not only predated his employment with Barclays, but had nothing to do with his responsibilities as Barclays' CEO. (*See* AC ¶¶ 83, 86, 88, 98.)

**B.      Plaintiff St. Louis Firemen's Section 90A Claim Should Be Dismissed**

**1.      The Court Should Decline to Exercise Supplemental Jurisdiction or Dismiss Under *Forum Non Conveniens***

As St. Louis Firemen concedes, this Court may decline to assert supplemental jurisdiction "if one of the four categories specifically enumerated in section 1367(c) applies." (Opp. 20.) Here, each does. (Mot. 21-23.) St. Louis Firemen incorrectly contends that Section 90A would not raise a "novel or complex issue" because it is pursuing a theory—"dishonest delay"—that purportedly "overlaps with [a U.S.] omissions claim." (Opp. 20-21.) But it offers no authority for this proposition and, in fact, Section 90A has its own version of an omissions claim. (Moore Reply ¶¶ 8-9, 10(b), 25, 68-69, 70-76); *see also Eng v. Pac. Clinics*, 2013 WL 12129611, at *6 (C.D. Cal. May 17, 2013) (declining jurisdiction because the "[e]lements and facts required to establish [the U.S.-law claims] are

8

substantially different from those required to prove [the state law claims]").[8] Moreover, as St. Louis Firemen concedes, U.K. courts have heard few Section 90A claims. (Opp. 21; Moore Reply ¶ 6.) Indeed, plaintiff's own expert acknowledges this fact, as well as that "the delay provision (Schedule 10A, para 5) is not an easy one." (*Id.* ¶ 68.)

As to substantial predominance, St. Louis Firemen cannot contest that the volume of Barclays' ordinary shares far exceeds the volume of ADRs. Disregarding *In re Toyota Motor Corporation Securities Litigation*, 2011 WL 2675395 (C.D. Cal. July 7, 2011) (Mot. 22), it counters that predominance should focus on "the type of claim . . . [and] not the number of parties involved." (Opp. 21.) Other courts, though, have concurred with *Toyota. See, e.g.*, *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003) (disparity in numbers "may be so great that it becomes dispositive"). Plaintiff also misses the point: predominance focuses not on the "amount" of damages (Opp. 21), but on the burden of adjudicating disputes dominated by a larger number of foreign transactions. *See Toyota*, 2011 WL 2675395, at *6.

Nor can St. Louis Firemen dispute that comity counsels against exercising jurisdiction. It asks this Court to address an abstract question of whether comity always bars supplemental jurisdiction. (Opp. 21-22.) It need not. This case presents specific and acute reasons to defer to U.K. courts: a putative class of foreign shareholders (outnumbering any class of ADR holders) and issues of first impression under U.K. law. (Moore Reply ¶¶ 6, 61, 66, 72.) Other courts facing similar circumstances have declined jurisdiction on comity grounds. *See Toyota*, 2011 WL 2675395, at *7.

Alternatively, the Section 90A claim should be dismissed under *forum non conveniens*. (Mot. 23-24.) St. Louis Firemen does not dispute that U.K. courts can capably adjudicate the liability of a U.K. company under U.K. securities laws. Instead, it complains that a dismissal of the U.K. claims would be "self-defeating" because the case would be "bifurcated" from the U.S. claims, thereby "imposing an additional burden." (Opp. 22.) But "[d]ismissal of some, but not all . . . claims . . . upon *forum non conveniens* grounds is not atypical." *Siswanto v. Airbus Americas, Inc.*, 2016 WL 7178460, at *14 (N.D. Ill. Dec. 9, 2016). Any bifurcation, moreover, would stem from plaintiff's

---

[8] St. Louis Firemen's sole case is inapposite as it did not involve a dishonest delay theory and defendants did not even argue that the court should decline to exercise supplemental jurisdiction over the Section 90A claim. *See City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 106-09 (S.D.N.Y. 2022).

BARCLAYS PLC'S AND HIGGINS' REPLY MEMORANDUM                    NO.: 2:23-cv-09217-MEMF-KS

"own decision to file suits outside the proper forum." *Id.* As for forum choice, it is afforded "minimal consideration" in a nationwide class action, *Mina v. Red Robin Int'l, Inc.*, 2020 WL 4037163, at *4 (C.D. Cal. Mar. 3, 2020), not the "great deference" St. Louis Firemen claims (Opp. 22).

### 2.    St. Louis Firemen Fails to State a Claim Under Section 90A

St. Louis Firemen concedes that it cannot state a Section 90A claim based on alleged misrepresentation or omission given its failure to plead reliance. (Opp. 20 n.11; Moore Reply ¶¶ 11, 19-21, 28, 40-49.) It pivots to a dishonest delay theory, but that too is insufficiently pleaded. To state a claim for dishonest delay, St. Louis Firemen must allege particular facts satisfying Rule 9(b) (Mot. 24 n. 18) and showing that a manager not only (i) knew the issuer was obligated to publish information but also (ii) deliberately and dishonestly caused the later publication (Moore ¶ 78). Instead, St. Louis Firemen pleads the conclusory statement that "Staley and Higgins dishonestly delayed publishing information regarding the failure to accurately disclose Staley's personal relationship with Epstein to the FCA." (Opp. 24.) This barebones legal conclusion falls short of Rule 8, much less Rule 9(b). *See In re Cloudera, Inc.*, 121 F.4th 1180, 1189 (9th Cir. 2024) (allegations "unsupported by details" "cannot satisfy the particularity requirement of Rule 9(b)").

What is more, St. Louis Firemen does not identify what information was required to be published but was allegedly delayed. Barclays provided immediate disclosure of the FCA's preliminary findings (after which Staley promptly departed) and once the Decision Notice was issued, Barclays immediately disclosed that too. (*Supra* at 6.) There are no plausible allegations that Barclays delayed the publication of any information that it was obligated to disclose by a particular deadline. (Moore Reply ¶¶ 70-76; Moore ¶¶ 57-63, 77-79.)[9] Just as under U.S. law, plaintiff cannot twist these facts into actionable securities fraud under U.K. law.

### III.    CONCLUSION

For these reasons, the Court should dismiss the AC in full and with prejudice.

---

[9] Nor can plaintiff avoid the requirement of individual reliance that precludes its Section 90A claims for misrepresentation or omission by calling its claim one of dishonest delay. (Moore Reply ¶¶ 11, 19-21, 28, 40-49, 60.)

BARCLAYS PLC'S AND HIGGINS' REPLY MEMORANDUM                    NO.: 2:23-cv-09217-MEMF-KS

DATED: February 28, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
                               */s/ Lara A. Flath*
                                Lara A. Flath
                                Scott D. Musoff
                                Boris Bershteyn

                          Attorneys for Defendants
                     Barclays PLC and Nigel Higgins

11

BARCLAYS PLC'S AND HIGGINS' REPLY MEMORANDUM        NO.: 2:23-cv-09217-MEMF-KS

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for defendants Barclays PLC and Nigel Higgins, certifies that this brief is prepared in Times New Roman font with text no less than twelve (12) point font (with footnotes no less than ten (10) point font) and is 10 pages, which complies with the limits set in Section VIII.C of the Court's Civil Standing Order published as of May 3, 2024, which is the current version available on the Court's website.

DATED: February 28, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Lara A. Flath_____
Lara A. Flath
Scott D. Musoff
Boris Bershteyn

Attorneys for Defendants
Barclays PLC and Nigel Higgins

12