O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MERRITT, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>BARCLAYS BANK PLC, JAMES E. STALEY, and NIGEL HIGGINS,<br><br>      Defendants. | Case No.: 2:23-cv-09217-MEMF-KS<br><br>**ORDER DENYING STALEY'S MOTION TO DISMISS [ECF NO. 56] AND GRANTING IN PART BARCLAYS BANK'S MOTION TO DISMISS [ECF NO. 58]** |

   Before the Court is a Motion to Dismiss filed by Defendant James Staley (ECF No. 56) and a Motion to Dismiss filed by Defendants Barclays Bank PLC ("Barclays Bank") and Nigel Higgins (ECF No. 58). For the reasons discussed below, the Court DENIES Staley's Motion to Dismiss and GRANTS IN PART Barclays Bank's Motion to Dismiss with leave to amend.

/ / /

/ / /

**BACKGROUND**

I.     **Factual Allegations[1]**

This case concerns a securities class action on behalf of all persons or entities who (1) purchased or acquired Barclays American Depository Receipts ("ADRs") traded on the New York Stock Exchange ("NYSE") from July 22, 2019, through October 12, 2023, inclusive (the "Class Period") and/or (2) purchased or acquired Barclays ordinary shares traded on the London Stock Exchange ("LSE") during the Class Period. FAC ¶ 1.

Plaintiffs are Teamsters Local 237 Additional Security Benefit Fund and Teamsters Local 237 Supplemental Fund for Housing Authority Employees (the "Teamsters"), the Firemen's Retirement System of St. Louis (the "Firemen"), and members of the putative class (collectively, "Plaintiffs"). *Id.* ¶¶ 43, 44.[2] The Teamsters purchased Barclays ADRs during the Class Period and was appointed Lead Plaintiff on January 2, 2024. *See* ECF 31. The Firemen purchased ordinary shares during the Class Period. FAC ¶ 44. Plaintiffs are citizens of the United States. FAC ¶ 33.

Defendant Barclays Bank is a multinational bank and publicly held company headquartered in London. *Id.* ¶ 45. Barclays ADRs are traded on the NYSE under the ticker symbol "BRC." *Id.* Its ordinary shares are traded on the LSE under the ticker symbol "BARC." *Id*. Defendant Nigel Higgins has served as the Group Chairman of the Board of Barclays Bank (the "Board") since May 2019. *Id.* ¶ 47. Higgins served on the Board Nominations Committee throughout the Class Period. *Id.* Defendants Barclay Bank and Higgins are citizens of the United Kingdom. *Id.* ¶ 33. Defendant James E. Staley served as CEO of Barclays Bank and as a director on its Board from December 1, 2015, to October 31, 2021. *Id.* ¶ 46.[3]

---

[1] The following factual background is derived from the allegations in Plaintiffs' First Amended Complaint, ECF No. 52 ("FAC"), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

[2] Although the original Complaint was filed by Stephen Merritt which is reflected in the caption for this case, the Court appointed the Teamsters as lead plaintiff in this action on June 11, 2024. ECF No. 9.

[3] The Court will refer to Staley and Higgins collectively as the "Individual Defendants," and along with Barclays Bank, "Defendants."

In July 2019, Jeffrey Epstein was arrested on federal charges for sex trafficking of minors. *Id.* ¶ 13. On July 22, 2019, the New York Times published an article surrounding Epstein's arrest (the "NYT Article"). *Id.* ¶ 14. The NYT Article described a longstanding relationship between Epstein and Staley that began when Staley was running JP Morgan's private bank and Epstein was a client. *Id.* The NYT Article claimed the relationship was not purely professional and reported that Staley visited Epstein when Epstein was serving a home sentence in 2008 for soliciting prostitution of a minor. *Id.* ¶ 15. Further press reports soon connected Staley with Epstein. *Id.* ¶ 17. By August of 2019, Bloomberg reported that Staley severed his relationship with Epstein months after sailing to Epstein's island in the U.S. Virgin Islands when Staley was under consideration for the position as Barclays Bank's CEO. *Id.* A Wall Street Journal piece reported Staley had not had contact with Epstein in years. *Id.*

On August 15, 2019, the UK's Financial Conduct Authority (the "FCA") contacted Higgins to request a written response detailing how the Board had satisfied itself that there was no impropriety in the relationship between Staley and Epstein. *Id.* ¶ 19. The resulting letter (the "2019 Letter") was drafted by Barclays Bank's General Counsel. *Id.* Staley provided information for the 2019 Letter, and both Higgins and Staley made revisions and approved of the language. *Id.* Barclays Bank sent the 2019 Letter to the FCA on October 8, 2019. *Id.* ¶ 20. The Letter included three affirmations: (1) Staley did not have a close relationship with Epstein; (2) Staley had not seen anything that would have suggested the misconduct by Epstein; and (3) Staley's last contact with Epstein was "well before he joined Barclays in 2015." *Id.*

Shortly after the letter was issued, U.S. investigators sent Barclays Bank a cache of emails between Epstein and Staley that were discovered during its investigations of Epstein. *Id.* ¶ 21. Barclays Bank engaged a law firm to review the emails, conduct interviews, and provide a report to the Board (the "2020 Barclays Bank Investigation"). *Id.* On February 13, 2020, Barclays Bank disclosed an FCA investigation into the relationship between Staley and Epstein. *Id.* ¶ 22. The same day, Barclays Bank issued its 2019 Annual Report (the "2019 Annual Report") and a press release (the "2020 Press Release") announcing that Staley "retain[ed] the full confidence of the Board," and reaffirmed that Staley had been "sufficiently transparent with the Company as regards the nature and

extent of his relationship with Mr. Epstein." *Id.* Also that day, Staley had an earnings call with analysts and interviews with the press in which he acknowledged he had "a long-standing professional relationship with [Epstein]" and reiterated that the Board found he had been "transparent and open." *Id.* ¶ 23.

On October 29, 2021, the FCA privately informed Staley and the Board of its preliminary findings. *Id.* ¶ 26. On November 1, 2021, Barclays Bank issued a press release announcing Staley would step down immediately as CEO (the "2021 Press Release"). *Id.* ¶ 27.

On February 15, 2023, portions of a complaint filed in a lawsuit brought by the Virgin Islands against JPMorgan Chase (the "USVI Complaint") were unredacted, revealing a more complete email record between Staley and Epstein to the public. *Id.* ¶ 28. On March 24, 2023, Barclays Bank issued its Notice of Annual General Meeting 2023, including a letter signed by Higgins (the "2023 Letter"). *Id.* ¶ 98. Despite the 2020 Barclays Bank Investigation into the email cache, the 2023 Letter maintained that the Board's February 2020 expression of full confidence in Staley had been based on "the information it had at the time and the representations made by Staley." *Id.* ¶ 98.

On October 12, 2023, the FCA issued a decision notice (the "FCA Decision Notice") on the results of its investigation into the relationship between Staley and Epstein. *Id.* ¶ 29. The FCA found Staley acted "recklessly" in approving the 2019 Letter. *Id.* The FCA further found that the 2019 Letter contained two misleading statements about the nature of the relationship between Epstein and Staley, and the date of their last contact. *Id.* The FCA fined Staley and banned him from holding a senior management position in the financial services industry. *Id.*

Also on October 12, 2023, Barclays Bank issued a press release on the FCA Decision Notice (the "2023 Press Release"). *Id.* ¶ 111. The 2023 Press Release disclosed conclusions by the Board's Remuneration Committee detailing a number of awards for which Staley was no longer eligible along with deferred compensation awards, amounting to a total value of £17.8 million. *Id.* ¶ 112. That day, the price of Barclays ADRs and ordinary shares declined by 4.99% and 3.12% respectively. *Id.* ¶ 30.

**II.     Procedural History**

The FAC, filed on August 12, 2024, brings three causes of action against Defendants. *See generally* FAC. Count 1 alleges that Defendants violated § 10(b) of the Securities Exchange Act ("SEA") and Rule 10b-5 by knowingly or with reckless disregard disseminating or approving of statements containing material misrepresentations, thereby inflating the price of Barclays Bank's NYSE-traded ADRs during the Class Period. *See id.* ¶¶ 132-43. Count 2 alleges that Defendants violated their duty to disseminate accurate and truthful information as "controlling persons" of Barclays Bank and thereby participated in conduct that inflated the market price of Barclays Bank's ADRs, in violation of § 20(a) of the SEA. *See id.* ¶¶ 144-50. Count 3—brought only against Defendants Barclays Bank by the Firemen—alleges that Barclays Bank omitted matters required to be included in published information and knew those omissions to be dishonest concealment of a material facts in violation of Section 90A of the Financial Services and Markets Act ("FSMA") of the United Kingdom ("Section 90A"). *See id.* ¶¶ 151–62.

On October 30, 2024, Staley brought a Motion to Dismiss. ECF No. 56 ("Staley MTD"). That day, Staley also filed a Request for Judicial Notice in support of his MTD. ECF No. 57 ("Staley RJN"). On January 18, 2025, Plaintiffs filed a response to both. ECF No. 67; ECF No. 66 ("Staley Opp."). On February 28, 2025, Staley filed a reply in support of the Staley RJN and MTD. ECF No. 72; ECF No. 71 ("Staley Reply").

On October 30, 2024, Higgins and Barclays Bank together brought a Motion to Dismiss. ECF No. 58 ("Barclays Bank MTD"). The same day, they filed a Request for Judicial Notice in support of the MTD. ECF No. 60 ("Barclays Bank RJN"). On January 18, 2025, Plaintiffs filed a response to both. ECF No. 68; ECF No. 69 ("Barclays Bank Opp."). On February 28, 2025, Barclays Bank filed a reply in support of the Barclays Bank RJN and MTD. ECF No. 74; ECF No. 73 ("Barclays Bank Reply"). On April 18, 2025, Plaintiffs filed a Notice of Supplemental Authority. ECF No. 76.

/ / /

/ / /

1

<strong><u>REQUESTS FOR JUDICIAL NOTICE (ECF NOS. 57, 60)</u></strong>

2

**I.    <u>Applicable Law</u>**

3

A court may judicially notice facts that: "(1) [are] generally known within the trial court's

4

territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy

5

cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially

6

notice "undisputed matters of public record," but generally may not notice "disputed facts stated in

7

public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other*

8

*grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

9

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material

10

beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011)

11

(quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials

12

"submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the

13

complaint—including documents that might otherwise be subject to judicial notice—may only be

14

considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's

15

claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450

16

F.3d 445, 448 (9th Cir.2006)).

17

**II.    <u>Discussion</u>**

18

**A.  The Court Grants the Staley RJN (ECF No. 57)**

19

In support of the Motion, Staley requests the Court judicially notice: (1) the NYT Article,

20

referenced in the FAC at ¶¶14–16, 52–53, (2) a Financial Times piece published November 12, 2021

21

and quoted by the FAC at ¶¶ 85–86, (3) a Financial Mail on Sunday piece published on November

22

28, 2021 and quoted in the FAC at ¶ 87 (collectively, the "Press Articles"), (4) excerpts of the

23

Barclays Bank 2019 Report, published February 13, 2020 and referenced in the FAC at ¶¶ 22, 68–

24

70, (5) Barclays Bank's historical stock price data on the NYSE and LSE, referenced in the FAC at

25

¶¶ 30, 113, (6) excerpts of the USVI Complaint that were unredacted in February of 2023 and quoted

26

in the FAC at ¶¶ 28, 81, 93, 95, and (7) the FCA Decision Notice which is extensively quoted in the

27

FAC at, for example, ¶¶ 4, 19–20, 60, 91. *See* Staley RJN, Exs. 1-7.

28

6

Plaintiffs object to judicial notice of these materials to establish the truth of facts contained therein, rather than merely to ascertain information that was in the public realm through the Class Period. *See* Staley RJN Resp. at 2–3. Plaintiffs do not object to judicial notice of any and all of the materials for the "limited purpose of determining what information was available to the public on the date of publication." *Id.* at 3. However, as noted above, under Fed. R. Evid. 201(b), Courts generally may not notice disputed facts in public records. Therefore, the Court's grant of Staley's RJN is only for the purposes of showing information available in the public realm during the Class Period.

### i.  The Press Articles

The Ninth Circuit has taken judicial notice of newspaper articles "as an indication of what information was in the public realm at the time." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). For Plaintiffs to prevail, they must show Staley knowingly or recklessly approved of material misrepresentations that misled shareholders and artificially inflated the price of Barclays Bank shares. Thus, proving the information available to shareholders throughout the Class Period is central to Plaintiffs' case. Because the FAC quotes the Press Articles, no party disputes their authenticity, and the issue of publicly available information is central to Plaintiffs claims, the Court takes judicial notice of the Press Articles.

### ii.  SEC Filings and Stock Price Data

The 2019 Report is a Form 20-F, filed with the Securities Exchange Commission ("SEC"). *Id.* 2. The Ninth Circuit has expressly included SEC filings within the class of public documents subject to judicial notice of public filings. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006). As above, the 2019 Report is mentioned in the allegations, no party disputes its authenticity, and the issue of publicly available information throughout the Class Period is central to Plaintiff's claim. Thus, the Court takes judicial notice of the 2019 Report.

The Court takes judicial notice of Barclays Bank historical stock price data, referenced in the FAC at ¶ 30. The data is publicly available information, neither party disputes its authenticity, and the fall in share prices is central to proving the harm Plaintiffs suffered as a result of the alleged misrepresentations.

/ / /

*iii.    The FCA's Decision Notice & USVI Complaint*

The Ninth Circuit has granted judicial notice to complaints filed in a federal district court. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (taking judicial notice of a memorandum filed in a court proceeding). As discussed above, the issue of publicly available information through the Class Period is central to Plaintiff's claims, the excerpts are referenced in the FAC, and neither party disputes the authenticity of the records. Thus, the Court takes judicial notice of the USVI Complaint.

The Court also takes judicial notice of the FCA Decision Notice. The Ninth Circuit has taken judicial notice of documents published by a foreign agency when it was "verifiable with certainty, and of the same type as other governmental documents which courts have judicially noticed." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001–02 (9th Cir. 2018), quoting *United States v. Camp*, 723 F.2d 741, 744 (9th Cir. 1984). No party contests the authenticity of the Decision Notice and it is central to Plaintiff's claims because its issuance marked the end of the Class Period and contributed, according to Plaintiffs, to the fall in stock prices of Barclays Bank. FAC ¶ 29–30.

**B.  The Court Grants the Barclays Bank RJN (ECF No. 60)**

In support of their Motion, Barclays Bank and Higgins request the Court judicially notice the items referenced above, in addition to: (1) the 2020 Press Release referenced in the FAC at ¶¶ 22, 28, 68–69, 80; (2) the 2021 Press Release referenced in the FAC at ¶¶ 27, 46, 83, 90–91; (3) a second Financial times article published on March 4, 2023, and referenced in the FAC at ¶¶ 62 n.3, 96; and (4) Barclays Bank's 2022 Annual Report, referenced at ¶ 94 of the FAC. Because the Court has already granted judicial notice of the items referenced above, it only considers below the additional four requests made by Barclays Bank and Higgins.

*i.    The Press Releases*

The 2020 and 2021 Press Releases are also referenced in the Complaint, essential to Plaintiffs' claims, and their authenticity is not disputed. The Court therefore finds it proper to judicially notice the Press Releases. *See Von Saher*, 592 F.3d at 960.

/ / /

/ / /

1

*ii.    The 2023 Financial Times Article*

2

The 2023 Financial Times article is, like the Press Articles discussed above, the type of

3

material subject to judicial notice in the Ninth Circuit. For the reasons the Press Articles are noticed,

4

the 2023 Financial Times article is also judicially noticed.

5

*iii.    Barclays Bank 2022 Annual Report*

6

The 2022 Report is, like the 2019 Report, a form 20-F SEC filing. For the reasons the 2019

7

Report is noticed, the 2022 Report is also noticed. Thus, the Barclays Bank RJN is granted.

8

**MOTIONS TO DISMISS (ECF NOS. 56, 58)**

9

**I.    Applicable Law**

10

Defendants bring their Motions to Dismiss pursuant to Federal Rules of Civil Procedure

11

12(b)(6). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for

12

"failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a

13

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

14

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

15

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

16

factual content that allows the court to draw the reasonable inference that the defendant is liable for

17

the misconduct alleged." *Id.*  Labels, conclusions, and "formulaic recitation of a cause of action's

18

elements" are insufficient. *Twombly*, 550 U.S. at 545.

19

The determination of whether a complaint satisfies the plausibility standard is a "context-

20

specific task that requires the reviewing court to draw on its judicial experience and common sense."

21

*Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true

22

and view them in the light most favorable to the plaintiff.  *Soo Park v. Thompson*, 851 F.3d 910, 918

23

(9th Cir. 2017); *Lee*, 250 F.3d at 679.  But a court is "not bound to accept as true a legal conclusion

24

couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

25

Allegations of securities fraud under the Exchange Act are subject to heightened pleading

26

standards under Fed. R. Civ. Pro. 9(b). *In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024).

27

The pleading must identify the "who, what, when, where, and how of the misconduct charged as

28

well as what is false or misleading about the purportedly fraudulent statement, and why it is false."

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (internal citation omitted). The Private Securities Litigation Reform Act of 1995 ("PSLRA") reinforces Rule 9(b) by requiring that the complaint specify each statement alleged to be misleading and the reasons why the statement is misleading. *In re Cloudera, Inc.*, 121 F.4th at 1186. While the PSLRA requires applying a heightened "strong inference" standard specific to the element of scienter, the PSLRA's particularity requirements do not otherwise make the plausibility standard irrelevant. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414–415 (9th Cir. 2020) (noting that "plausibility is no less relevant in the context of the heightened pleading standards of Rule 9(b) or the PSLRA").

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II.    **Discussion**

Defendants move to dismiss Count 1 of the FAC contending that Plaintiffs have failed to plead material misstatements, and there is no loss causation. Defendants contend that this failure requires dismissal of Count 2 as well. Barclays Bank also moves on Count 3 contending that this Court should not exercise supplemental jurisdiction over the claim, and that regardless the Firemen have failed to state a Section 90A claim on the merits. For the reasons discussed below, the Court finds that Counts 1 and 2 have been sufficiently pleaded (with the exception of one statement made by Higgins) and that it has jurisdiction over Count 3. However, the Court finds that Count 3 is not sufficiently pleaded.

### A.  **The Court Finds Count 1 Sufficiently Pleaded**

The required elements of a private securities fraud action are (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.* 540 F.3d 1049, 1061 (9th Cir. 2008). Defendants dispute the sufficiency of a material misrepresentation and loss causation, and Barclays Bank and Higgins further dispute the sufficiency of scienter. The Court finds that all elements of the Section 10(b) claim have been adequately alleged.

*i.   The Court finds the FAC pleads material misstatements.*

A statement is considered misleading if it "would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017). As discussed next, the Court finds that the FAC sufficiently pleads statements that were both plausibly misleading and material.[4]

a.   The statement from the NYT Article is plausibly misleading.

On July 22, 2019, a Barclays Bank spokesperson was quoted in the NYT Article as saying that "Mr. Staley has never engaged or paid fees to Mr. Epstein to advise him, or to provide professional services, either in his various roles at JPMorgan, or personally[.]" FAC ¶ 53. Drawing all inferences in favor of the complainant, the Court finds that this statement is potentially misleading. As Plaintiffs allege in the FAC, "[t]he relationship between Staley and Epstein was close and personal enough that the offer or solicitation of business advice did not require the payment of fees or a formal engagement," and that the two did exchange professional guidance and assistance. FAC ¶ 56. Defendants appear to argue that because the statement specifically denies a "paid" relationship without other aspects of the relationship, it cannot be misleading. But the statement does not merely deny a paid relationship or a formal engagement, it denies that Epstein was engaged *at all*. Further, drawing all inferences in favor of Plaintiffs, a reasonable investor's interpretation of the statement would be that Staley and Epstein did not advise or provide professional services to each other, whether formally paid or not. It would be difficult to believe that Barclays Bank intended to make a public statement denying a "paid" relationship between Staley and Epstein without intending the public to believe that it was denying any sort of professional relationship between the two. Therefore, the Court finds that Plaintiffs have made a plausible allegation that this statement was misleading.

b.   The press releases and annual report are plausibly misleading.

---

[4] To be clear, it will ultimately be for the trier of fact (or this Court on a motion for summary judgment) to determine whether the statements were made, whether they were misleading, and whether they were material. But the Court finds at this stage that the FAC has properly and plausibly alleged all three.

1         In both a press release dated February 13, 2020, and the 2019 Annual Report, Defendants

2    stated that "Mr. Staley developed a professional relationship with Mr. Epstein." FAC ¶ 69. The

3    Court finds this statement supports an inference that Staley and Epstein only had a professional

4    relationship, which would be potentially misleading. A reasonable investor who read the Board's

5    statements would not think that Staley and Epstein had a personal relationship. Barclays Bank

6    contends that publications opined otherwise, so investors should not have been misled (Barclays

7    Bank MTD at 12), but this misses the point. The press release and annual report were a *response* to

8    the NYT Article, after Defendants had a reasonable opportunity to investigate the issue. Drawing all

9    inferences in favor of Plaintiffs, Defendants' statements were an attempt to set the record straight

10   about Staley and Epstein's relationship after doing their own due diligence, and it would be

11   reasonable for an investor to find that these statements from Defendants themselves to be more

12   reliable. *See In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1115 (9th Cir. 1989) ("The investing

13   public justifiably places heavy reliance on the statements and opinions of corporate insiders.").

14        The inference that Staley and Epstein's relationship was *purely* professional is reinforced by

15   the context of the statement, in which the Board reiterated that Staley had the "full confidence" of

16   the Board and recommended his re-election at the same time. *Id.* Although Defendants contend that

17   these are simply opinions that cannot be misleading without allegations the Board actually believed

18   differently, this is exactly what the FAC alleges. In particular, Plaintiffs allege that Barclays Bank

19   learned of the cache of emails revealing the true nature of Staley and Epstein's relationship in

20   December of 2019. FAC ¶ 65. Barclays Bank is alleged to have hired a law firm to conduct an

21   internal investigation with "appended the most controversial emails between Staley and Epstein." *Id.*

22   ¶ 66.[5] The Court does not find it proper at this stage to make determinations about whether or not

23

24   _____

25   [5] Barclays Bank also contends that Plaintiffs' allegations fall short of Rule 9(b), but it is unclear what more
     specificity can be provided about what Barclays Bank should have known than the emails themselves, which

26   the Court finds sufficiently identified. Based on their arguments, Defendants are not actually contesting the
     specificity of the allegations, but rather disputing the inferences to be drawn from them. *See, e.g.,* Barclays

27   Bank MTD at 13–14 (describing the emails to include "banal expressions of flattery and gratitude" and
     "references so cryptic and stripped of context that they cannot shed any definitive light on the relationship"

28   between Staley and Epstein"). The Court does not find this a proper basis to grant a motion to dismiss.

1   Defendants reasonably believed differently or not based on the information available to them at that

2   time. Therefore, the Court finds these statements properly and plausibly pleaded as misleading.

3        Defendants also contest a few other statements in the 2020 Press Release and 2019 Annual

4   Report regarding their response to the FCA—namely, that Staley "volunteered" information about

5   Epstein, that Barclays Bank was "cooperating" with the FCA, and that the Board had "rigorously

6   followed" its governance process with regards to the FCA's investigation. First, Defendants'

7   arguments about these specific word choices are insufficient at this stage to dispel the otherwise

8   potentially misleading nature of the 2020 Press Release and 2019 Annual Report—which is that

9   Staley and Epstein's relationship was merely professional (despite the Board having evidence

10  otherwise), and that because of this, the Board maintained full confidence in Staley. Nevertheless,

11  the Court finds the specific words that Defendants defend as technically truthful are still misleading.

12  The connotation of the word "volunteer" in the context of the statements conveys that Staley had

13  nothing to hide, which is misleading given what the evidence ultimately revealed. And, Staley's

14  concealment of information supports an inference that Defendants were not fully cooperative with

15  the investigation.[6] The Board's "rigorous" compliance with its processes also conveys that it put a

16  certain amount of effort into its investigation, which to a reasonable investor would include a fair

17  consideration of the evidence it actually had access to. As alleged, the Board simply disregarded the

18  evidence that Staley's relationship with Epstein was not as he had explained it previously to be.

19        Barclays Bank and Higgins also contend that the 2021 Press Release regarding the FCA's

20  preliminary findings were accurate. Barclays Bank MTD at 17. However, as alleged, the FCA's

21  investigation was not simply whether Staley was aware of Epstein's alleged crimes. Plaintiffs allege

22  that the FCA "was seeking assurance that Barclays Bank had discharged its regulatory obligations to

---

24  [6] The Court finds Staley's actions and knowledge as CEO attributable to Barclays Bank. *In re ChinaCast*
25  *Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (holding that "a corporation is responsible for a
    corporate officer's fraud committed 'within the scope of his employment' or 'for a misleading statement made
26  by an employee or other agent who has actual or apparent authority'"). Plaintiffs' allegations sufficiently
    point to statements made by Staley knowing they were misleading while he was at Barclays Bank and made
27  in the course of his employment as CEO. *See, e.g.,* FAC ¶ 71 (alleging that Staley affirmed his professional
    relationship with Epstein during an earnings call). Regardless of whether Staley's knowledge came prior to
28  his tenure at Barclays Bank, there is no dispute his knowledge of making misleading statements is temporally
    attributable to the time at which the statements were made.

1  ensure it understood and had properly managed the risks to which it was exposed," and therefore the

2  inquiry was "broader than whether Staley had witnessed Epstein's alleged crimes." FAC ¶ 91.

3  Drawing all inferences in favor of Plaintiffs, the 2021 Press Release, which implied that the biggest

4  concern of the FCA was simply Staley's awareness of Epstein's alleged crimes, is misleading.

5  Accordingly, the Court finds the statements contained in the 2020 and 2021 Press Releases

6  and the 2019 Annual Report plausibly misleading.

7                          c.   Staley's conference call statements were plausibly misleading.

8  On February 13, 2020, Staley participated on an earnings conference call with analysts,

9  where he stated that his relationship with Epstein "began to taper off quite significantly" after Staley

10  left JPMorgan, "stopped before [Staley] joined Barclays Bank," and the two have "obviously" had

11  "no contact . . . whatsoever since then." FAC ¶ 71. While Defendants contend that the last contacts

12  alleged was actually before Staley become CEO of Barclays Bank, Plaintiffs' allegations support

13  that Epstein and Staley had contact, even if indirectly, past this point in time. *See* FAC ¶ 56 (alleging

14  that Epstein emailed Staley earlier in the year "better if you not email me. phone only.").

15  Accordingly, drawing all inferences in favor of the complaint, the Court finds the statement to be

16  plausibly misleading.

17                          ii.   *The Court finds that Higgins can be liable for misleading statements.*

18  Higgins independently argues that he cannot be liable for any misleading statements he did

19  not personally make. "For Rule 10b-5 purposes, the maker of a statement is the person or entity with

20  ultimate authority over the statement, including its content and whether and how to communicate it."

21  *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The Court finds that,

22  drawing all inferences in favor of Plaintiffs, Higgins did have ultimate control for the statements

23  made by Barclays Bank. *See Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061 at n.5 (explaining

24  that "substantial participation or intricate involvement in the preparation of fraudulent statements is

25  grounds for primary liability"). The Court does not find the allegations purely conclusory in the

26  circumstances because as the *Chairman of the Board*, it logically follows that statements made by

27  *the Board* were made or at least approved by Higgins. *Cf. Bruce v. Suntech Power Holdings Co.*

28  *Ltd.*, 2013 WL 6843610, at *4 (N.D. Cal. Dec. 26, 2013) (attempting to link general statements made

by a company simply by virtue of being the company's Chief Financial Officer too conclusory).

Here, the allegations reflect that statements were made by "the Board." *See, e.g.,* FAC ¶ 69 ("Based

on a review . . . of the information available to *us* and representations made by Mr. Staley, *the*

*Board* . . . believes that Mr. Staley has been sufficiently transparent . . ."). Therefore, to the extent

that any statements are attributable to the Board, the Court finds them attributable to Higgins for

purpose of this motion.

Higgins also specifically contests that his declination to comment on Staley's departure from

Barclays Bank is not misleading. FAC ¶ 88. The Court finds that this specific comment is not

misleading, and thus will **partially grant the Motion on this statement only** without leave to

amend.

> *iii.   The Court finds the allegedly misleading statements were material.*

"For the purposes of a 10b-5 claim, a misrepresentation or omission is material if there is a

substantial likelihood that a reasonable investor would have acted differently if the misrepresentation

had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney,*

*Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). Defendants contend that any misrepresentations or

omissions about Staley's personal conduct as opposed to Barclays Bank's business cannot be

material, and that there was sufficient information in the public domain to allow investors to

determine the true nature of Staley and Epstein's relationship.

First, Defendants have cited no binding authority that misrepresentations about matters

personal to a CEO are not material. Rather, the inquiry into materiality is "fact-specific" and

"requires delicate assessment of the inferences of a reasonable shareholder would draw from a given

set of facts and the significance of those inferences to him." *In re Alphabet, Inc. Sec. Lit.*, 1 F.4th

687, 700 (9th Cir. 2021). "These assessments are peculiarly ones for the trier of fact," and as a result,

"resolving materiality as a matter of law is generally appropriate only if [the materiality of the

statement] is so obvious that reasonable minds could not differ." *Id.* (internal citations omitted).

Defendants have not shown that a reasonable investor could not find the relationship of a top

executive of Barclays Bank with a convicted sex offender related to their decisions. Frankly, the

simple fact that Barclays Bank initiated an investigation and that FCA initiated an investigation

shows at the very least that it was *plausible* that the information was material. Moreover, even if there had been representations in the media that Staley and Epstein had a more than professional relationship, again, it appears that Defendants *denied* the representations, which investors may reasonably give more weight. And, media coverage does not logically hold the same amount of weight as the results of an investigation done by a regulatory agency. Thus, the Court finds sufficient allegations to meet materiality.

*iv.   The Court finds the FAC sufficiently pleads scienter.*

To adequately plead scienter, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "A 'strong inference' exists 'if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Glazer Cap. Mgmt. L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023). The Court finds scienter pleaded with sufficient specificity as to Barclays Bank and Higgins.[7]

A "reckless omission of material fact satisfies the element of scienter, provided that such recklessness reflects some degree of intentional or conscious misconduct." *In re Alphabet*, 1 F.4th at 701. As discussed above, the Court finds materiality sufficiently met, and the Court finds some degree of intent. In particular, intent to deceive or deliberate recklessness is supported by the allegations that Barclays Bank and Higgins received evidence revealing the true nature of Staley's relationship with Epstein as early as December 2019, and yet continued to make statements fully in support of Staley, even after his departure from Barclays Bank. The Court does not find that any opposing inference is more compelling at this stage—for example, an opposing inference could be that Barclays Bank and Higgins never looked at the emails in any great detail. However, given the specific investigation conducted by Barclays Bank into the issue, the Court finds it just as compelling that Barclays Bank and Higgins were fully aware of the contents of the emails and what

---

[7] Staley does not dispute that scienter is sufficiently pleaded as to him.

16

they signified,[8] and simply wanted to protect Barclays Bank's reputation.[9] Assessing all the allegations of the complaint "holistically," (*In re Alphabet*, 1 F.4th at 701), the Court finds there is a strong inference that Barclays Bank and Higgins acted with an intent to conceal or misrepresent facts.

#### v. The Court finds the FAC pleads loss causation.

"Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016).[10] Here, Plaintiffs allege that the FCA Decision Notice, published on October 12, 2023, revealed the truth about Staley's relationship with Epstein and Barclays Bank's knowledge thereof. FAC ¶ 103. Barclays Bank also released the 2023 Press Release on this day that disclosed a decision by the Board's Renumeration Committee, which concluded Staley was ineligible for or would forfeit a number of monetary awards. FAC ¶ 112. Because of these disclosures, Plaintiffs allege a stock in the drop price at the close of October 12. FAC ¶ 113. Staley's position is that these disclosures do not sufficiently relate to the misleading statements alleged, and Defendants all contend that they did not reveal any new information and therefore could not have caused the stock drop alleged.

---

[8] The Court notes that the FAC alleges that Higgins "privately admitted that the emails 'ma[de] for uncomfortable reading,'" further supporting scienter as to him individually. FAC ¶ 21.

[9] While the Court finds this a common-sense motive from the allegations, the Court does not find it necessary for motive to be specifically alleged. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1107 (9th Cir. 2021) (noting that "a complaint lacking a plausible motive allegation may still meet its burden of pleading a strong inference of scienter"). Here, as the complaint alleges "compelling and particularized facts showing . . . deliberate recklessness," an allegation of motive is not needed. *Id.*

[10] At the hearing, counsel for Barclays Bank and Higgins emphasized that the heightened pleading standards for the PSLRA applied to loss causation. While the Court acknowledges that the heightened requirements apply to the *particularity* of the allegations, the Court finds no support that a plaintiff must plead something beyond plausibility when it comes to the rationale of the causal link itself. *See Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("The degree of specificity demanded is that which will 'enable the court to evaluate whether the necessary causal link exists.'"), *adopted by Oregon Public Employees Retirement Fund v. Apollo Grp Inc.*, 774 F.3d 598, 605 (9th Cir. 2014); *see also In re Gilead Sciences Sec. Lit.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("So long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate").

The Court finds that the detailed, 79-page FCA Decision Notice and 2023 Press Release could plausibly have caused the alleged loss.[11] While Staley argues that the statements the FCA actually found misleading were never publicly made, the Court finds otherwise. As discussed above, the Court finds that Plaintiffs' allegations sufficiently support that Defendants did make plausibly misleading and public statements about the nature of Staley and Epstein's relationship, including implying that their relationship was only professional in the face of an FCA investigation. *See, e.g.,* FAC ¶¶ 69, 71. Moreover, Staley's prior departure from Barclays Bank after the FCA's preliminary findings does not preclude its ultimate findings having an impact on the market. While the 2021 Press Release communicated that Staley was departing Barclays Bank following the FCA's preliminary conclusions, there are no allegations about the specific findings being made, and Barclays Bank continued to support Staley. FAC ¶ 83. In fact, the 2021 Press Release stated that Staley intended to "contest" the FCA's conclusions, and the context of the statement could be interpreted that he was leaving to do so. ECF No. 59-3, Ex. 3. Significantly, it also stated that the Board was "disappointed" in the outcome, which could reasonably be interpreted as being disappointed by the FCA's preliminary findings because Barclays Bank disagreed with them, and supported Staley's decision to contest the findings. *Id.* The 2021 Press Release otherwise praised Staley's performance. *Id.* While the 2021 Press Release arguably characterizes the FCA's preliminary findings as "problematic" for Staley such that he needed to step down, it is a far cry from being as "problematic" as the 2023 Press Release was in terms of signaling actual wrongdoing by Defendants. *See* Reply at 2.

While Defendants note that there were other articles and publicly available information that revealed the details of Staley and Epstein's relationship before the 2023 Press Release, the Court finds that the ultimate conclusion of the FCA investigation still provides a plausible basis to support loss causation. The FCA's final determination provided confirmation of Staley's misrepresentations that the 2021 Press Release did not, and also provided details about Defendants' specific misleading

---

[11] While Defendants have judicially noticed a few news articles that they argue gave investors "extensive details" of the relationship, the Court does not find that Defendants have shown the news article covered the extent of the details given in the FCA Decision Notice, which summarized an investigation spanning years.

statements to the FCA. While the misleading statements in the 2019 Letter cannot be a basis for liability as they were never made publicly, Plaintiffs have pointed to multiple public statements by Barclays Bank that it was "cooperating" with the FCA in the investigation. FAC ¶¶ 70, 79, 89, 94. The FCA Decision Notice provides new information supporting an inference that Barclays Bank had not cooperated by sending a misleading letter. *See* ECF No. 59-7 ("FCA Decision Notice") at 2.16 (finding that "Barclays made statements which gave the misleading impression" that there was no close relationship"). To the extent that the FCA does not directly attribute blame on Barclays Bank to the 2019 Letter being misleading, the Court notes that the FCA Decision Notice still calls into question whether Barclays Bank sufficiently conducted its own due diligence into the issue in its claims to have been "cooperating." *Id.* at 2.12 (noting that the FCA was "entitled to rely on the contents of the Letter as being an accurate characterization by Barclays of the nature of the relationship" and the FCA "relied on the assurance provided by Barclays").

Defendants also have not shown that the stock price drop on October 12 was necessarily caused by something else, even just a typical market movement—rather, as Staley represents, Barclays Bank's stock drops in this time period only dropped about 2.25% per day, which is less than the stock drop alleged. Staley MTD at 17. Defendants cite no binding authority that a drop of 3–5% would not be sufficient to satisfy loss causation as a matter of law. *See In re Gilead Sciences Sec. Lit.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (noting that "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds").

Accordingly, the Court finds loss causation sufficiently alleged.

### B. The Court Finds Count 2 Sufficiently Pleaded

To state a claim for control-person liability under Section 20(a), a plaintiff must allege a primary violation under Section 10(b). As the Court has found a primary violation sufficiently pleaded under Count 1, the Court denies Defendants' Motions as to Count 2.[12]

---

[12] Staley independently argues that he cannot be considered a control person after his departure from Barclays Bank, but the Court finds this argument moot as Plaintiffs state they do not "assert a claim for Staley's control-person liability following his departure . . ." Staley Opp. at 17.

**C.  The Court Has Subject Matter Jurisdiction Over Count 3**

Barclays Bank moves to dismiss Count 3 for violations of Section 90A of the UK's FSMA arguing that this Court should decline to exercise supplemental jurisdiction over this claim specifically. However, this Court has original jurisdiction of Count 3 under the diversity statute, 28 U.S.C. §1332. As alleged, "[w]ith respect to the FMSA claim, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)." FAC ¶ 33. Barclays Bank does not dispute that the requirements of diversity jurisdiction have been met. As the Court has original jurisdiction of Count 3, the Court does not have discretion to decline jurisdiction of this claim. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) ("Although a district court does have discretion whether to exercise jurisdiction over state claims pendent to claims raising a question arising under federal law, a district court does not have discretion to refuse jurisdiction over state claims in a diversity case.") (citations omitted).[13]

Barclays Bank alternatively argues that this Court should decline to exercise jurisdiction over Count 3 under the doctrine of forum non conveniens. "The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224. Because of this harsh result for plaintiffs, it is "an exceptional tool to be employed sparingly." *Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011). At its core, the doctrine is concerned with fairness to the parties." *Id.* at 1030. To prevail, the defendant bears the burden of showing "(1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). "The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." *Id.*

---

[13] Regardless, the Court does not find the factors in 28 U.S.C. § 1367(c) satisfied in order to decline supplemental jurisdiction even if it were appropriate to do so. In particular, the claim does not "raise a novel or complex issue of *state* law" (§ 1367(c)(1) (emphasis added)); the claim does not substantially predominate (§ 1367(c)(2)); the other claims have not been dismissed (§ 1367(c)(3)); and Barclays Bank has not shown exceptional circumstances (§ 1367(c)(4)).

The central focus of the first part of the inquiry—whether an adequate alternative forum exists—asks if "the *entire case* and *all the parties* can come within the jurisdiction of that forum. *Gutierrez*, 640 F.3d at 1029 (emphasis added). "The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). Dismissal is not justified simply where a case involves conduct or parties from oversees. *Carijano*, 643 F.3d at 1224. "The burden of showing the existence of an adequate alternative forum is the defendant's." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983). Barclays Bank argues that "UK courts provide a more adequate forum to adjudicate plaintiff's claims against a UK company under UK securities laws." Barclays Bank MTD 23. However, the adequate forum inquiry concerns "the *entire case* and *all the parties*." Because this case also involves two claims under U.S. law, both including Barclays Bank as a defendant, a UK court would not necessarily be a *better* forum for the entire case and all Plaintiffs. Nonetheless, the UK is likely an *adequate* forum, as a remedy is provided under UK law.

Assuming the UK would be an adequate forum, the Court continues to the next step of the forum non conveniens analysis—consideration of the public and private interest factors. Courts consider the following private interest factors in determining whether to grant dismissal under forum non conveniens:

> (1) the residence of the parties and the witnesses;
> (2) the forum's convenience to the litigants;
> (3) the access to physical evidence and other sources of proof;
> (4) whether unwilling witnesses can be compelled to testify;
> (5) the cost of bringing those witnesses to trial;
> (6) the enforceability of the judgement; and
> (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* With regards to the private factors, Barclays Bank only raises arguments that touch on the first, second, third, and fourth factors. Thus, the Court finds it conceded that the remaining factors weigh against dismissal.

The first two factors also weigh against dismissal. While Barclays Bank is headquartered in London, Barclays Bank does not dispute that it "operates internationally." FAC ¶ 5. Moreover, it would appear that at least some of the relevant class of plaintiffs (if not the majority of them) reside

1  in the United States.[14] Even if the Court were to sever Count 3 from the other counts, it would be

2  even less convenient for the parties to have to litigate the two lawsuits concurrently and Barclays

3  Bank would still have to defend the case here.

4          The third and fourth factors also weigh against dismissal. Although Barclays Bank

5  summarily states that "most of the evidence and witnesses relating to its board's conduct . . . would

6  be located [in London]," Barclays Bank does not provide any specific details. Barclays Bank Motion

7  at 23. Rather, the evidence in this case is likely to be largely digital—the contested statements were

8  made by Defendants themselves and are contained in materials easily available and transmitted

9  online. *Cf. Lueck*, 236 F.3d at 1146 (finding the private interest factors favored dismissal where

10 evidence in New Zealand included aircraft wreckage, flight crew, crash investigators, Plaintiffs,

11 Plaintiffs' doctors and employers, airline and aircraft records, investigation records, and records

12 regarding the qualifications of the flight crew). Barclays Bank also does not specify which witnesses

13 or otherwise show that an overwhelming majority of them would be unwilling or unable to testify. In

14 any event, the witnesses would still be called upon with regards to the other two counts.

15         Courts also examine the following five public interest factors in determining whether to

16 dismiss under forum non conveniens:

17         (1) local interest of lawsuit;
           (2) the court's familiarity with governing law;
18         (3) burden on local courts and juries;
           (4) congestion in the court; and
19         (5) the costs of resolving a dispute unrelated to this forum.

20 *Id.* at 1147.

21         Here, Barclays Bank simply argues that "UK courts have a greater interest in adjudicating"

22 the claim. Be that as it may, the Court finds that this does not outweigh its determination on the

23 private factors, which all weigh in favor of retaining jurisdiction of Count 3. Barclays Bank has not

24 met its burden in showing that the Court should employ the exceptional application of form non

25 conveniens to dismiss Count 3 in its entirety. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d

26 1163, 1180 (9th Cir. 2006) (explaining that "a plaintiff need not select the optimal forum for his

27 ───────────────

28 [14] The Court understands from the parties' briefing that Count 3 is solely brought by the Firemen.

1    claim, but only a forum that is not so oppressive and vexatious to the defendant 'as to be out of

2    proportion to the plaintiff's convenience'").

3                    **D.  The Court Finds Count 3 Insufficiently Pleaded**

4            Although the Court finds that it should retain jurisdiction over Count 3, the Court finds that it

5    is insufficiently alleged. Barclays Bank contends there are insufficient allegations of a misleading

6    statement that resulted in the loss alleged. Barclays Bank Motion at 24. In opposition, the Firemen

7    appear to concede that their Section 90A claim is not applicable with regards to false and misleading

8    statements, but contend that their 90A claim is sufficient under a theory of dishonest delay. Barclays

9    Bank Opp. at 20, n.11. However, the Court finds that the allegations are insufficient to plead a

10   Section 90A claim for dishonest delay at this time.

11           Under the FMSA, an issuer of securities is liable to individuals who "suffers loss in respect of

12   the securities [acquired or held] as a result of delay by the issuer in publishing information," where

13   the issuer "acted dishonestly in delaying the publication of the information." ECF No. 69-1 ("Moore

14   Decl.") ¶ 74. The parties do not dispute that reliance is not required under a dishonest delay theory.

15   ECF No. 73-1 ("Kramer Reply Decl.") ¶ 41. The Firemen contend that by the disclosure of the FCA

16   investigation on February 13, 2020, Barclays Bank knew that its response to the FCA was

17   inaccurate, yet delayed in disclosing what they understood the true nature of Staley's relationship

18   with Epstein to be. Barclays Bank Opp. at 24. Nevertheless, the parties also do not dispute that the

19   information that was delayed in being disclosed must have been ultimately published. As to this

20   point, the Firemen point to the press release issued in October of 2023 based on the FCA Decision.

21   The Court notes that the 2023 Press Release is based specifically on the FCA Decision, and thus

22   could not have been disclosed earlier. FAC ¶¶ 111–12. Although the Court understands Plaintiffs'

23   position to be that Defendants knew what the FCA ultimately concluded earlier, as the 2023 Press

24   Release is specifically based on the FCA's final determination and not on what Defendants

25   independently may have known, the Court finds that it cannot support a theory of dishonest delay.

26           The Court therefore finds Count 3 insufficiently pleaded, although the Court finds that it may

27   be possible for the Firemen to cure the deficiency through amendment. Accordingly, the Court will

28   GRANT the Motion as to Count 3 WITH LEAVE TO AMEND.

**III.**    <u>**Conclusion**</u>

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Staley Motion to Dismiss (ECF No. 56) is DENIED;

2. The Barclays Bank Motion to Dismiss (ECF No. 58) is GRANTED IN PART;

   a. The Court DISMISSES Counts 1 and 2 against Higgins to the extent that they are based on Higgins' declination to comment on Staley's departure ONLY.

   b. The Court DISMISSES Count 3 for violations of Section 90A of the FMSA with leave to amend.

   c. Any amended complaint must be filed within thirty (30) days of the date of this Order.

   d. Should Plaintiffs fail to timely file an amended complaint, the operative complaint will be the existing FAC with Count 3 stricken (as well as the portions of Counts 1 and 2 that rely on the declination to comment), and the thirtieth (30th) day from the date of this Order will be deemed the date of filing for purposes of calculating when Defendants' Answer is due.

IT IS SO ORDERED.

Dated: June 24, 2025

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge