ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
HADIYA K. DESHMUKH (328118)
SHAO-JIA CHANG (356004)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
hdeshmukh@rgrdlaw.com
schang@rgrdlaw.com
          – and –
MICHAEL A. TRONCOSO (221180)
DANIELLE S. MYERS (259916)
ASHLEY M. PRICE (281797)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
mtroncoso@rgrdlaw.com
dmyers@rgrdlaw.com
aprice@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STEPHEN MERRITT, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>BARCLAYS PLC, et al.,<br><br>                              Defendants. | Case No. 2:23-cv-09217-MEMF-KS<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, CERTIFICATION OF INTERLOCUTORY APPEAL<br><br>DATE: August 21, 2025<br>TIME: 10:00 a.m.<br>COURTROOM: 8B, The Honorable Maame Ewusi-Mensah Frimpong |

4919-6061-9351.v2

**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | SUMMARY OF RELEVANT FACTUAL ALLEGATIONS | 2 |
| III. | MOTION FOR RECONSIDERATION | 5 |
| | A. The Court Correctly Applied the Law to the Alleged Facts, Finding Materiality Adequately Pled | 6 |
| | B. The Court Correctly Applied the Law to the Alleged Facts, Finding Loss Causation Adequately Pled | 7 |
| IV. | MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL | 10 |
| | A. The Motion Fails to Present a Controlling Question of Law | 11 |
| | B. There are No Substantial Grounds for Difference of Opinion | 13 |
| | C. An Interlocutory Appeal Will Further Delay, Not Advance, This Litigation | 14 |
| V. | CONCLUSION | 15 |

4919-6061-9351.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ...............................................................................12

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)...........................................................................6, 12, 13

*Berman v. Freedom Fin. Network*,
30 F.4th 849 (9th Cir. 2022) ...........................................................................5, 7

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
556 U.S. 635 (2009)............................................................................................15

*Carroll v. Nakatani*,
342 F.3d 934 (9th Cir. 2003) ..............................................................................5

*Chosen Figure, LLC v. Kevin Frazier Prods., Inc.*,
2024 WL 5515932 (C.D. Cal. Feb. 15, 2024)......................................................5

*Cobbledick v. United States*,
309 U.S. 323 (1940)............................................................................................10

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)............................................................................................10

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ...............................................................10, 13, 14

*Doe v. Mindgeek USA Inc.*,
574 F. Supp. 3d 760 (C.D. Cal. 2021) ...............................................................11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).............................................................................................7

*Goodell v. Columbia Cnty. Pub. Transp.*,
2021 WL 1519509 (E.D. Wash. Apr. 16, 2021) ................................................11

*Greenhouse v. MCG Cap. Corp.*,
392 F.3d 650 (4th Cir. 2004) ...............................................................................7

*Guajome Park Acad. Inc. v. Duperry*,
2009 WL 10672194 (S.D. Cal. Aug. 7, 2009) .....................................................7

*Haw. ex rel. Louie v. JP Morgan Chase & Co.*,
921 F. Supp. 2d 1059 (D. Haw. 2013)................................................................11

- ii -

**Page**

*Herman Fam. Revocable Tr. v. Teddy Bear*,
254 F.3d 802 (9th Cir. 2001) ...............................................................................................15

*ICTSI Or., Inc. v. Int'l Longshore v. Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ..............................................................................................11

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ..........................................................................................7, 12, 14

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ...................................................................................................9

*In re Cement Antitrust Litg. (MDL No. 296)*,
673 F.2d 1020 (9th Cir. 1981), *aff'd sub nom.*
*Ariz. v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983) ...............................................10, 11, 14

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
986 F. Supp. 2d 524 (S.D.N.Y. 2014).....................................................................................11

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ...............................................................................................13

*In re Snap Inc. Sec. Litig.*,
2018 WL 3816764 (C.D. Cal. Aug. 8, 2018)...........................................................................10

*In re Tesla Inc. Sec. Litig.*,
477 F. Supp. 3d 903 (N.D. Cal. 2020) ......................................................................................8

*Kaufman v. Kijakazi*,
32 F.4th 843 (9th Cir. 2022) ....................................................................................................5

*Kowalski v. Anova Food, LLC*,
958 F. Supp. 2d 1147 (D. Haw. 2013)....................................................................................14

*Kulick v. Vandermeulen*,
2022 WL 22950986 (C.D. Cal. July 25, 2022),
*aff'd*, 2022 WL 10385515 (9th Cir. 2022)...............................................................................5

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ........................................................................................7, 9, 13

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ....................................................................................................8

4919-6061-9351.v2

**Page**

*Metzler GMBH v. Cornthian Colls., Inc.*,
    540. F.3d 1049, 1059 (9th Cir. 2008) ..................................................................9

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) .........................................................................8

*Planned Parenthood of Great Nw. & Haw. Islands v. Wasden*,
    410 F. Supp. 3d 1108 (D. Idaho 2019) .............................................................14

*Rieve v. Coventry Health Care, Inc.*,
    870 F. Supp. 2d 856 (C.D. Cal. 2012) ..............................................................12

*Smilovits v. First Solar, Inc.*,
    2019 WL 7282026 (D. Ariz. Dec. 27, 2019) ......................................................7

*Steering Comm. v. United States*,
    6 F.3d 572 (9th Cir. 1993) ...............................................................................11

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976).............................................................................6, 12, 13

*United States v. Tenet Healthcare Corp.*,
    2004 WL 3030121 (C.D. Cal. Dec. 27, 2004) ...................................................10

*Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*,
    979 F.3d 1209 (9th Cir. 2020) ...........................................................................7

*Williams v. Alameda Cnty.*,
    657 F. Supp. 3d 1250 (N.D. Cal. 2023) ............................................................11

*Zimmerman v. Comcast Cable Comm. Mgmt.*,
    2017 WL 11635468 (C.D. Cal. Jan. 24, 2017) ....................................................8

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C.
    §1291..............................................................................................................10
    §1292..............................................................................................................10
    §1292(b)............................................................................................2, 10, 11, 12

Federal Rules of Civil Procedure
    Rule 12(b)(6)....................................................................................................13

4919-6061-9351.v2

## I. INTRODUCTION

On June 25, 2025, the Court entered the Order Denying Staley's Motion to Dismiss [ECF No. 56] and Granting in Part Barclays Bank's Motion to Dismiss [ECF No. 58]. ECF 84.[1] The Order held that Plaintiffs had sufficiently alleged their claim under §10(b) of the Exchange Act, and specifically found that the alleged misrepresentations concerning the nature and scope of defendant Staley's relationship with Epstein satisfied the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[2] Dissatisfied with the Court's well-reasoned ruling, Defendants seek reconsideration, arguing that the Court failed to consider material facts presented before it and that the Court applied incorrect legal standards in assessing materiality and loss causation. *See* ECF 92-1 ("Motion" or "Mot.") at 2-4, 8-14. As set forth below, both contentions are baseless and fail to meet the requirements of Local Rule ("L.R.") 7-18. Defendants' Motion should therefore be denied.

Despite Local Rule 7-18(c)'s demand that Defendants demonstrate a manifest failure by the Court to consider material facts previously presented, Defendants present no such material facts. Nor do Defendants present any new material facts or intervening change in law emerging after the Order was entered. Instead, Defendants mischaracterize Plaintiffs' allegations and repackage the same arguments (and unpersuasive case authorities) that they presented in their motions to dismiss, their reply briefs, and during the May 15, 2025 oral argument. For example, the Motion recycles Defendants' previously rejected claim that, because the market purportedly had some awareness of the nature of defendant Staley's relationship with Epstein prior to October 12, 2023, disclosures in the FCA Decision did not constitute new information sufficient to

---

[1] On July 10, 2025, to correct the identification of Barclays in its June 25, 2025 order, the Court entered an amended order denying Staley's motion to dismiss and granting in part Barclays Banks' motion to dismiss. ECF 93 (the "Order").

[2] Unless otherwise specified, capitalized terms shall have the meaning as defined in the Amended Class Action Complaint for Violations of the Securities Laws of the United States and the United Kingdom. ECF 52 ("Complaint"). Unless otherwise noted, paragraph references ("¶__" or "¶¶__") are to the Complaint. Emphasis is added and citations are omitted throughout unless otherwise indicated.

- 1 -

4919-6061-9351.v2

adequately allege loss causation. Mot. at 12-13. The Court explicitly considered and rejected that argument, including the same inapplicable, out-of-circuit case law. *See* Order at 18-19.

Defendants also advance a new argument that the alleged misrepresentations could be material only if the market believed that Staley's tenure as CEO would be jeopardized and that Barclays' profitability was at risk. Mot. at 8-11. Not only is this new argument prohibited by law, it also grossly mischaracterizes the Complaint's allegations.

Finally, Defendants' request that the Court certify its Order for interlocutory appeal pursuant to 28 U.S.C. §1292(b) must also be denied. Defendants fail to present novel or difficult legal questions warranting such extraordinary relief. Rather, Defendants present issues that are factual in nature and specific to the circumstances of this case. An interlocutory appeal would serve only to delay proceedings.

In short, the Motion falls short of meeting the requirements for either reconsideration or interlocutory certification. It should be denied in its entirety.

## II.    SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

The Complaint alleges that during the Class Period, Barclays, Staley, and Higgins issued materially false and misleading statements or omitted known facts concerning Staley's relationship with Epstein, Barclays' investigation into that relationship, and the Company's cooperation with the regulatory investigations. For example, in response to public inquiries, the Company assured investors that Staley "never engaged or paid fees to Mr. Epstein to advise him, or to provide professional services, either in his various roles at JPMorgan, or personally." ¶53. Staley, in his capacity as CEO, further reassured investors during Barclays' annual investor conference call that he "had a professional relationship with [Epstein] . . . . [which] stopped before I joined Barclays. And obviously, there's been no contact . . . whatsoever since then." ¶71. Even after the Company had received documents and correspondence between Staley and Epstein, Barclays continued to impress upon the investing public that its examination of the facts was robust and that "[b]ased on a review, conducted with the support of external counsel, of the information available to us and representations made by Mr. Staley, the Board . . . believes that Mr. Staley has been sufficiently transparent with the Company as regards the nature and extent of his relationship with Mr.

- 2 -

4919-6061-9351.v2

Epstein." ¶69. Therefore, according to the Company, "Mr. Staley retains the full confidence of the Board, and is being unanimously recommended for re-election at the 2020 AGM." *Id.* Barclays also assured investors that the Company was cooperating with regulatory investigations. These alleged misrepresentations, among others, gave the investing public the impression that concerns about the personal nature of the relationship was either entirely false or materially exaggerated, causing the price of Barclays Securities to trade at artificially inflated levels. ¶¶80, 82, 90, 100.

The Complaint alleges that each of these statements and the related omissions was materially false and misleading when made because Defendants knew or disregarded the following facts: The relationship between Staley and Epstein was close and personal, and Staley sought Epstein's personal and professional guidance on matters including Staley's compensation, public remarks, and JPMorgan's internal business strategy. ¶¶56(a)-(f), 81(a)-(f), 101(a)-(b), 102. Staley provided Epstein protection within JPMorgan that allowed Epstein to continue banking with JPMorgan despite opposition from other JPMorgan executives. ¶56(b). Hundreds of emails between the two men suggest that in fact, the men shared a close, personal relationship, including emails in which Staley told Epstein that he was "my most cherished friend," "I have few so profound," and that "I count u as a deep friend." ¶¶56(c), 67. These communications made clear that Staley had visited Epstein's island in the U.S. Virgin Islands, a primary location for Epstein's alleged sex trafficking. *Id.*

In the summer of 2019, the FCA demanded that Barclays explain whether and how it satisfied itself that no impropriety existed in Staley's relationship with Epstein and, in particular, sought "assurance that Barclays had discharged its regulatory obligations to ensure it understood and had properly managed the risks to which it was exposed." ¶91(a). On October 8, 2019, Barclays responded in a letter, edited and approved by Staley and signed by Higgins, falsely assuring the FCA that

> [Mr. Staley] has confirmed to us that he did not have a close relationship with Mr Epstein, and he is resolute that at no time did he see anything that would have suggested or revealed any aspect of the conduct that has been the subject of recent allegations. [Mr. Staley's] last contact with Mr Epstein was well before he joined Barclays in 2015.

- 3 -

4919-6061-9351.v2

¶62.

Several weeks later, however, the FCA received a cache of 1,200 emails exchanged between Staley and Epstein. ¶64. Following the FCA's review of those emails, it summoned Higgins, on 24-hours' notice, to explain why the emails contradicted the October 8, 2019 letter and to confirm whether Staley had downplayed his relationship with Epstein. ¶65. Barclays thus commenced an internal investigation of the emails, involving outside counsel who assisted in the review, conducted interviews, and prepared a confidential report appending the emails for the Board's review. ¶¶65-66. Despite Barclays' review of the email cache, two months later, when Barclays announced the FCA was commencing an investigation into Staley's ties with Epstein, Defendants publicly affirmed that Staley had a "professional relationship with Mr. Epstein," was "sufficiently transparent with the Company," "retain[ed] the full confidence of the Board," and that Barclays was "cooperating" with its regulators in their investigations. ¶¶68-71.

On November 1, 2021, Barclays announced that the FCA had informed it and Staley that it had reached preliminary conclusions about Staley's characterization of the nature of the relationship, and as a result, Staley was departing from Barclays. ¶26. Nonetheless, Barclays publicly credited Staley for his leadership that "built up a secure capital base, improved its operational resilience and developed its business-leading franchises." ¶88.

On October 12, 2023, the FCA issued a press release and published the conclusions of its investigation in a detailed, 79-page notice: the FCA Decision. ¶¶29 & n.2, 104-110. With its publication, the FCA Decision revealed previously undisclosed details about the relationship between Staley and Epstein, and thus also established that Staley's prior statements about the relationship, including his denials, were false. The FCA specifically found that Staley had acted "recklessly" in approving the October 8, 2019 letter, "which contained two misleading statements, about the nature of his relationship with Jeffrey Epstein and the point of their last contact." ¶¶4, 29. Because the FCA found that Staley had misled the FCA and failed to act with integrity while CEO of Barclays, it fined him £1.8 million and banned him from holding any senior management position in the financial services industry.

- 4 -

Barclays issued a press release announcing the FCA Decision on the same day, where it stated that, because of the FCA's findings, significant financial awards previously due to Staley would be forfeited.  ¶¶111-112.  The October 12, 2023 disclosures caused the price of Barclays' ADRs to immediately decline nearly 5%, causing investors significant economic losses.  ¶113.

## III.   MOTION FOR RECONSIDERATION

Under Local Rule 7-18, a motion for reconsideration must be brought on one of the exclusive grounds:

> (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

L.R. 7-18.  "No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion."  *Id.*  Nor can "[r]econsideration motions . . . be used to raise [a] new argument[] or introduce new evidence if, with reasonable diligence, the argument[] and evidence could have been presented during consideration of the original ruling."  *Berman v. Freedom Fin. Network*, 30 F.4th 849, 859 (9th Cir. 2022).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources" and must meet the requirements set forth in the Local Rules.  *Kaufman v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022).  A "motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *see also Chosen Figure, LLC v. Kevin Frazier Prods., Inc.*, 2024 WL 5515932, at \*1-\*2 (C.D. Cal. Feb. 15, 2024); *Kulick v. Vandermeulen*, 2022 WL 22950986, at \*1 (C.D. Cal. July 25, 2022), *aff'd*, 2022 WL 10385515 (9th Cir. 2022).  No such "highly unusual circumstances" are present here to warrant Defendants' request for this "extraordinary remedy."

- 5 -

4919-6061-9351.v2

### A.    The Court Correctly Applied the Law to the Alleged Facts, Finding Materiality Adequately Pled

The Supreme Court mandates that "the ultimate issue of materiality [is] appropriately resolved 'as a matter of law'" **only** where the misstatements and omissions are so obviously unimportant to a reasonable investor that "reasonable minds cannot differ on the question of materiality." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 (1976).  Reaffirming this principle, the Supreme Court, in *Matrixx Initiatives, Inc. v. Siracusano*, emphasized that "[t]he determination [of materiality] requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him."  563 U.S. 27, 36 (2011) (alterations in original) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988)).

The Complaint alleges Defendants made material misrepresentations and omissions regarding the scope and nature of Staley's relationship with Epstein, Staley's transparency with the Board about his relationship with Epstein, and Barclays' cooperation with it regulators in their investigations, among other alleged misstatements. *See* ¶56(a)-(f).  The Court thoroughly analyzed the statements and correctly found that all but one of the alleged misrepresentations were material. Importantly, the Court noted that Defendants' repeated denials of the personal nature of the relationship rendered the statements even more significant to investors. Order at 15-16.  Moreover, the fact that both Barclays and its regulator, the FCA, initiated investigations into that very conduct at issue "shows at the very least that it was **plausible** that the information was material."  *Id.* (emphasis in original).

In seeking reconsideration, Defendants ignore the Court's clear holding and instead mischaracterize the Complaint, submitting that, according to Plaintiffs' theory, these statements could "**only**" be material if investors wanted Staley to remain CEO "**and**" that he could not continue as CEO if the market learned that he had a personal relationship with Epstein.  Mot. at 9-10.  The Court should reject Defendants' attempt to rewrite Plaintiffs' case.  Rather, the Court

- 6 -

4919-6061-9351.v2

must look to Plaintiffs' allegations, not Defendants' preferred reconstruction of those allegations.[3] *See Guajome Park Acad. Inc. v. Duperry*, 2009 WL 10672194, at *3 (S.D. Cal. Aug. 7, 2009); *see also Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *8 (D. Ariz. Dec. 27, 2019) ("[T]he Court must look to Plaintiff[], not Defendants, for the nature of their liability case.").[4]  Contrary to Defendants' contentions, the Court did not improperly shift the burden of disproving materiality on Defendants.  *See* Mot. at 8.  The Court simply (and appropriately) rejected Barclays' argument that the misrepresentations and omissions about Staley's conduct were so obviously immaterial as to be dismissed as a matter of law.  Order at 15; *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 700 (9th Cir. 2021) ("[R]esolving materiality as a matter of law is generally appropriate 'only if . . . the materiality of the statement is so obvious that reasonable minds could not differ.'").

### B.    The Court Correctly Applied the Law to the Alleged Facts, Finding Loss Causation Adequately Pled

The Complaint sufficiently alleges "some indication of the loss and the causal connection that the plaintiff has in mind." *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  The October 12, 2023 corrective disclosures, *i.e.*, the publication of the FCA Decision, the disclosures therein, the FCA's press release, and Barclays' press release announcing the FCA's findings, revealed previously undisclosed details concerning the relationship between Staley and Epstein, and Defendants' misrepresentation to the FCA regarding that relationship.  These disclosures included the FCA's determination that the October 8, 2019 letter that Barclays submitted to the FCA was materially false and misleading.  ¶¶29, 104-112.  As alleged, the October 12, 2023 disclosures "caused the company's stock price to drop and investors to lose money." *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016).

---

[3]    Of course, a similar argument was made by Staley on his motion to dismiss, ECF 56 at 12-13, citing the same out-of-circuit case, *Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650 (4th Cir. 2004), and Plaintiffs addressed it directly in their opposition, ECF 66 at 14.

[4]    Defendants "do[] not explain why [they] w[ere] unable to '[bring this new argument] sooner through the exercise of reasonable diligence.'" *See Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020).  "Reconsideration motions may not be used to raise new arguments . . . ." *Berman*, 30 F.4th at 859.

- 7 -

Defendants' request for reconsideration merely repeats the very same arguments already rejected by the Court, namely, that the FCA's preliminary findings disclosed in 2021 and existing media reports had already disclosed the truth, thereby precluding the information released on October 12, 2023 from being a disclosure of new information causing the price of Barclays Securities to decline.  *Compare* Mot. at 3-4, 12-13, *with* ECF 56 at 15, and ECF 58 at 9-10.  Such reiteration is barred on a motion for reconsideration.  *Zimmerman v. Comcast Cable Comm. Mgmt.*, 2017 WL 11635468, at *3 (C.D. Cal. Jan. 24, 2017) ("The Local Rules expressly prohibit a party from repeating arguments from the original motion in a motion for reconsideration.").

Nevertheless, to support this recycled theory, Defendants again rely on the Company's November 1, 2021 press release disclosing Staley's departure, which included no factual details to support the FCA's then-preliminary conclusions.  *See* ECF 59-3 at 3.  But, the Ninth Circuit has found that the mere announcement of a government investigation alone usually does not provide sufficient information to the market to constitute a corrective disclosure.  *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 n.3 (9th Cir. 2014) (quoting *Meyer v. Greene*, 710 F.3d 1189, 1201 n.13 (11th Cir. 2013)) ("[T]he announcement of an investigation, 'standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of anything, and therefore does not qualify as a corrective disclosure.'"); *In re Tesla Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 934-35 (N.D. Cal. 2020) (recognizing the rule announced in *Loos* but identifying additional subsequent disclosures sufficiently alleging loss causation).

Here, Defendants again argue that the October 2023 disclosures revealed no new information because Barclays' November 2021 press release and other public sources had sufficiently disclosed the personal nature of Staley's relationship with Epstein and that Staley was under investigation for the characterization of his relationship with Epstein in Barclays' October 8, 2019 letter to the FCA.  *Compare* Mot. at 13-14, *with* ECF 58 at 9, and ECF 56 at 16.  Defendants ignore - as Plaintiffs allege and the Court acknowledged - that Barclays' November 2021 press release lacked any detail regarding what was known by Defendants.  ¶83; Order at 18-19; *see also* ECF 59-3.  Moreover, Plaintiffs did not allege, as Defendants would have preferred, that the November 2021 press release was a corrective disclosure giving rise to their losses.  Mot. at 4.

- 8 -

4919-6061-9351.v2

In addition to misapplying the law, Defendants disregard that the Court directly addressed Defendants' argument that there were other articles and publicly available information that revealed certain details of Staley and Epstein's relationship.  Instead, the Court found that the FCA Decision confirmed facts and misrepresentations that Barclays' November 2021 press release did not, and disclosed additional facts revealing that Staley had indeed misrepresented his relationship with Epstein, and Defendants had misled the FCA.  *See* Order at 18-19.[5]

Finally, Defendants assert that Plaintiffs never argued that the failure to cooperate with the regulators contributed to Plaintiffs' allegations of loss causation and that the Court's Order "raised [it] on its own."  Mot. at 14.  That, too, is incorrect.  During oral argument, the Court specifically asked Plaintiffs to explain their theory of falsity as to the statement concerning the private nature of the letter to the FCA and explain how the misstatements contained in that letter could give rise to actionable public misstatements.  Plaintiffs explained that it was the revelation on October 12, 2023 which crystalized the liability:

> The Court: Counsel, can you address the argument made by the defense that Barclays's statements to the FCA which were not public cannot be – give rise to liability under the securities laws?

> \*    \*    \*

> Ms. Price: I agree that their private statements to the FCA are not actionable, but what is actionable is that – is statements, for instance, where Barclays says that they are cooperating with regulators.  ***If you are lying to the regulators, you are not cooperating with them.  So that's – that is the truth that's revealed at the end of the class period***.

ECF 80 at 33-34; *see also id.* at 34.  *See also In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020) (A corrective disclosure "need not precisely mirror the earlier misrepresentation."); *Lloyd*, 811 F.3d at 1210 (A corrective disclosure need only "relate back to the misrepresentation" at the pleading stage.).

The Court's Order regarding Plaintiffs' loss causation allegations concerning Barclays' cooperation with government authorities was firmly grounded in Plaintiffs' pleadings and

---

[5]    This case is not like *Metzler GMBH v. Cornthian Colls., Inc.*, 540. F.3d 1049, 1059 (9th Cir. 2008), where the Ninth Circuit found that plaintiffs' loss causation allegations did not align with their alleged theory of fraud.

- 9 -

4919-6061-9351.v2

arguments.  *See* Order at 19 ("While the misleading statements in the 2019 Letter cannot be a basis for liability as they were never made publicly, Plaintiffs have pointed to multiple public statements by Barclays Bank that it was 'cooperating' with the FCA in the investigation."); ¶¶70, 79, 89, 94.  As Plaintiffs argued and the Court recognized, the FCA Decision revealed new information supporting an inference that Barclays had not cooperated, because the Company had submitted a misleading letter to the regulator.  *See* ECF 59-7.

**IV.     MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

The efficient administration of appellate justice ordinarily requires finality in the district court.  *See Cobbledick v. United States*, 309 U.S. 323, 324-25 (1940).  Accordingly, "parties may appeal only from orders which 'end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment.'"  *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (alterations in original); *see* 28 U.S.C. §1291.  Section 1292 provides a narrow exception to this rule, whereby a district court may certify an interlocutory order for appellate review.  *See* 28 U.S.C. §1292.

Certification should be applied sparingly and only granted in exceptional situations where allowing an interlocutory appeal would avoid protracted and expensive litigation.  *See, e.g.*, *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *In re Cement Antitrust Litg. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981), *aff'd sub nom. Ariz. v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983).  "The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court."  *United States v. Tenet Healthcare Corp.*, 2004 WL 3030121, at *1 (C.D. Cal. Dec. 27, 2004).

Therefore, certification pursuant to 28 U.S.C. §1292(b) is only appropriate if the moving party satisfies all three of the following criteria: (1) "a controlling question of law"; (2) "substantial grounds for difference of opinion"; and (3) that "an immediate appeal may materially advance the ultimate termination of the litigation."  *Cement*, 673 F.2d at 1026; 28 U.S.C. §1292(b).  "The party pursuing the interlocutory appeal 'has a heavy burden to show that "exceptional circumstances"' warrant immediate appellate review."  *In re Snap Inc. Sec. Litig.*, 2018 WL 3816764, at *1 (C.D. Cal. Aug. 8, 2018).

4919-6061-9351.v2

Questions about the sufficiency of securities fraud pleadings are particularly inappropriate for interlocutory review because "[s]ecurities actions in the motion to dismiss stage often cannot be resolved by pure questions of law, and resolution of pure questions of law by the appellate court does not obviate subsequent applications of fact to the determined law." *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014); *see also Goodell v. Columbia Cnty. Pub. Transp.*, 2021 WL 1519509, at *4 (E.D. Wash. Apr. 16, 2021) ("[D]enial of a motion to dismiss is generally not appropriate for a § 1292(b) interlocutory appeal," especially "where the merits of Plaintiff's claims depend on further factual discovery.").

Defendants request the Court certify the following questions for interlocutory appeal: (1) "whether information about the personal conduct of a CEO before joining the company is material to investor decision-making"; and (2) "whether the disclosure of a regulator's 'conclusion' about facts already known to the market may serve as a proper corrective disclosure for purposes of pleading loss causation." Mot. at 14.

Neither question meets the rigorous standards for interlocutory appeal.

## A.    The Motion Fails to Present a Controlling Question of Law

Defendants have not presented pure questions of controlling law suitable for interlocutory appeal. *ICTSI Or., Inc. v. Int'l Longshore v. Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) ("A controlling question of law must be one of law – not fact . . . ."). Indeed, both "questions" posed by Defendants are issues of fact to be resolved after discovery.

A question is "controlling" where "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Cement*, 673 F.2d at 1026. Furthermore, the question "must be a pure question of law, not a mixed question of law and fact or an application of law to a particular set of facts." *Doe v. Mindgeek USA Inc.*, 574 F. Supp. 3d 760, 775 (C.D. Cal. 2021).[6] A pure question of law must enable the appellate court to "decide quickly and cleanly

---

[6]    Though Defendants argue that questions that involve review of "some factual issues" are appropriate where "the 'legal issues are at the heart' of the 'proposed interlocutory appeal,'" Mot. at 15, the questions Defendants seek to certify do not fall within this category. The Court may certify a "mixed question [that] is coupled with a 'pure[ly] legal question.'" *See Williams v. Alameda Cnty.*, 657 F. Supp. 3d 1250, 1254 (N.D. Cal. 2023) (quoting *Steering Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993)). As discussed below, Defendants identify no **pure** legal question. *See Haw. ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1066 (D. Haw. 2013) (cited by

- 11 -

4919-6061-9351.v2

without having to study the record." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000).

Defendants' first question presented for interlocutory appeal provides no such pure question of law. Instead, the materiality inquiry on which they rest their Motion "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *Basic*, 485 U.S. at 236; *see also Siracusano*, 563 U.S. at 39 (Materiality is an "inherently fact-specific finding."). Accordingly, the question "may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts." *Northway*, 426 U.S. at 450. "[T]he assessments are peculiarly ones for the trier of fact." *Id.* The Court recognized this standard and found Defendants had not demonstrated that any lack of materiality was "so obvious that reasonable minds could not differ," as is required to defeat claims that materiality is sufficiently pleaded at this stage. Order at 15.

Just because Defendants dress their question concerning materiality as a legal one, does not make it so. As the Court recognized "[t]he inquiry into materiality is 'fact-specific.'" *Id.* (quoting *Alphabet*, 1 F.4th at 700). More importantly, the relevant question in the action is not whether information about the personal conduct of a CEO before joining the company is material to investor decision making. Rather, the question presented by this case is whether, under these specific facts, the current statements of a CEO of a publicly traded and heavily regulated financial institution concerning his relationship with an indicted sex trafficker are material to investors. This is precisely the sort of fact-intensive inquiry that is "not the abstract type of question [that] could be decided without [engaging] with the facts of this case." *See Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012) (questions requiring development of the evidentiary record are inappropriate for interlocutory review under 28 U.S.C. §1292(b)).

Defendants' second question fares no better. It is neither appropriate for interlocutory appeal nor relevant here. As an initial matter, the question improperly embeds a factual assumption

---

Defendants but the Court found that "legal issues [were] at the heart of Plaintiff's proposed interlocutory appeal" despite addressing some factual issues because the argument concerned whether the district court misapplied governing laws and regulations).

4919-6061-9351.v2

that directly contradicts both the Court's Order and the allegations in the Complaint. The Court found the FCA Decision provided *new* information that was unavailable to the market. Specifically, it confirmed "Staley's misrepresentations that the 2021 Press Release did not, and also provided details about Defendants' specific misleading statements to the FCA." Order at 18-19. Because the second question assumes "facts already known to the market" (Mot. at 14) and that the FCA Decision did not provide *any* new information, contrary to the Court's findings, neither the question nor an answer to this question would advance the litigation.

Nor is it a question of law. "[L]oss causation is a 'context-dependent' inquiry," *Lloyd*, 811 F.3d at 1210, and "is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

Defendants' second question, too, is not appropriate for certification.

### B.   There are No Substantial Grounds for Difference of Opinion

Courts traditionally will find that a substantial ground for difference of opinion exists where the "circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented."

*Couch*, 611 F.3d at 633. Here, neither question posed by Defendants raises a substantial ground for difference of opinion.

Defendants' first question on materiality is neither a novel nor a legal question. *See Northway*, 426 U.S. at 450. The jurisprudence on materiality has been well-developed over the past half-century, holding that such "assessments are peculiarly ones for the trier of fact." *See id.*; *see also Siracusano*, 563 U.S. at 39; *Basic*, 485 U.S. at 236-39. Yet, Defendants challenge the Court's application of this settled law. The Court recognized that there is "no binding authority that misrepresentations about matters personal to a CEO are not material." Order at 15. But that is entirely consistent with the well-settled notion that materiality is a fact-specific inquiry that should be reserved for the trier of fact. Indeed, the Court discussed this lack of precedent in the context of the high bar that must be met to find a lack of materiality as a matter of law. Order at 15; *see also Northway*, 426 U.S. at 450. As this Court already noted, "resolving materiality as a matter of law is generally appropriate only if [the materiality of the statement] is so obvious that

- 13 -

4919-6061-9351.v2

reasonable minds could not differ." Order at 15 (alteration in original) (quoting *Alphabet*, 1 F.4th at 700).

Defendants' disagreement with the Court's reasoning is insufficient to establish a substantial ground for difference of opinion. *See Couch*, 611 F.3d at 633 ("[D]isagreement with the Court's ruling" and "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion."); *Planned Parenthood of Great Nw. & Haw. Islands v. Wasden*, 410 F. Supp. 3d 1108, 1111-12 (D. Idaho 2019) ("[A] substantial difference of opinion is not present simply because a court is the first to rule on the particular question or just because one party argues that one precedent is controlling."). Nor is "[a] party's strong disagreement with the Court's ruling" a sufficient basis for interlocutory appeal. *Kowalski v. Anova Food, LLC*, 958 F. Supp. 2d 1147, 1165 (D. Haw. 2013).

As discussed above, with respect to the second question, Defendants argue because "the Ninth Circuit and other courts have held that 'disclosure of confirmatory information' does not constitute a corrective disclosure," there "are plainly reasonable grounds for divergence of opinion on this issue." Mot. at 16. First, Defendants identify only their difference of opinion with the Court's application of precedent regarding loss causation to the facts in this case – not a circuit split or a novel question. *See* Order at 17-19. Second, they conveniently ignore that the Court found that the FCA Decision was not merely confirmatory but rather provided details that were previously undisclosed and or denied by Defendants. *Id.* at 18-19. Defendants' question incorrectly assumes as fact that the FCA Decision did not provide new information to the market – in direct contradiction to the Court's finding, applying settled law on materiality, that it "could ***plausibly*** have caused the alleged loss." *Id.* Defendants' disagreement with the Court's application of existing law on loss causation to this case does not satisfy their burden to demonstrate substantial grounds for difference of opinion. *See Couch*, 611 F.3d at 633.

### C.     An Interlocutory Appeal Will Further Delay, Not Advance, This Litigation

Defendants must show that resolution of their questions "may appreciably shorten the time, effort, or expense of conducting" the district court proceedings. *Cement*, 673 F.2d at 1027. An

- 14 -

4919-6061-9351.v2

immediate appeal will not materially advance the ultimate termination of the litigation; it will cause further unnecessary delay. Even if the Exchange Act claims are dismissed against Defendants, the Court is not divested of its supplemental jurisdiction. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). The Court may choose to exercise supplemental jurisdiction over Plaintiffs' §90A claim as it is derived from the same core nucleus of operative facts. *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001). And the §90A claim would entail nearly the same discovery as the Exchange Act claims.

Accordingly, Defendants fail to show that "immediate appeal from the order may materially advance the ultimate termination of the litigation." Instead, certification will only serve to delay the litigation based on claims the Court found sufficiently pled.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court deny Defendants' Motion.

DATED: July 23, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
HADIYA K. DESHMUKH
SHAO-JIA CHANG

s/ Shawn A. Williams
SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
hdeshmukh@rgrdlaw.com
schang@rgrdlaw.com

- 15 -

4919-6061-9351.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
MICHAEL A. TRONCOSO
DANIELLE S. MYERS
ASHLEY M. PRICE
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
mtroncoso@rgrdlaw.com
dmyers@rgrdlaw.com
aprice@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 16 -

4919-6061-9351.v2

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Lead Plaintiff Teamsters Local 237 Additional Security Benefit Fund and Teamsters Local 237 Supplemental Fund for Housing Authority Employees, certifies that this brief contains 5,545 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 23, 2025                              s/ Shawn A. Williams
                                                 SHAWN A. WILLIAMS

- 17 -

4919-6061-9351.v2