Adam S. Paris (SBN # 190693)
(parisa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

Jeffrey T. Scott (*pro hac vice*)
(scottj@sullcrom.com)
Matthew J. Porpora (*pro hac vice*)
(porporam@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3558

[ADDITIONAL COUNSEL ON SIGNATURE BLOCK]

*Attorneys for Defendants Barclays PLC
and Nigel Higgins*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

STEPHEN MERRITT, Individually and on Behalf of All Others Similarly Situated,

                        Plaintiff,

            v.

BARCLAYS PLC, JAMES E. STALEY, and NIGEL HIGGINS,

                        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:23-cv-09217-MEMF-KS

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, CERTIFICATION OF INTERLOCUTORY APPEAL**

Hearing Date:  August 21, 2025
Hearing Time:  10:00 A.M.
Courtroom:  8B
Judge:  Hon. Maame Ewusi-Mensah Frimpong

# TABLE OF CONTENTS

*Page*

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................3

I.       Plaintiff Ignores that the Court Overlooked Material Facts, Warranting
         Reconsideration of the Order ..................................................................................3

         A.       Plaintiff Did Not Adequately Allege Any Material Misstatements.....................3

         B.       Plaintiff Did Not Adequately Allege Loss Causation...........................................5

II.      Defendants Have Satisfied the Requirements for Interlocutory Appeal...........................8

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*A.C.C.S.* v. *Nielsen*,
2019 WL 7841860 (C.D. Cal. Sept. 17, 2019) ........................................................................8

*All. for Fair Bd. Recruitment* v. *SEC*,
125 F.4th 159 (5th Cir. 2024) (en banc) ...............................................................................4

*Brown* v. *DirecTV, LLC*,
2014 WL 12772076 (C.D. Cal. Dec. 11, 2014) ..................................................................2, 3

*Constr. Laborers Pension Tr.* v. *CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020)......................................................................................4

*Doe* v. *Trs. of Bos. Coll.*,
942 F.3d 527 (1st Cir. 2019)...................................................................................................10

*Espy* v. *J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ................................................................................................7, 9

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 524 (S.D.N.Y. 2014)......................................................................................9

*Greenhouse* v. *MCG Cap. Corp.*,
392 F.3d 650 (4th Cir. 2004) ..............................................................................................1, 4

*Grigsby* v. *BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020) .................................................................................................9

*Kowal* v. *MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) .................................................................................................5

*Macomb Cnty. Emps.' Ret. Sys.* v. *Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) .................................................................................................5

*Martinez* v. *E.I. DuPont de Nemours & Co.*,
86 A.3d 1102 (Del. 2014) ......................................................................................................10

*Menorah Mivtachim Ins. Ltd.* v. *Sheehan*,
2024 WL 1613907 (2d Cir. Apr. 15, 2024) .............................................................................7

*Meyer* v. *Greene*,
710 F.3d 1189 (11th Cir. 2013) ...............................................................................................6

*Mohawk Indus., Inc.* v. *Carpenter*,
558 U.S. 100 (2009)..................................................................................................................3

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) .................................................................................................6, 9

*Plumber & Steamfitters* v. *Danske Bank A/S*,
11 F.4th 90 (2d Cir. 2021) ....................................................................................................5, 7

-ii-

*Police Ret. Sys.* v. *Intuitive Surgical, Inc.*,
      759 F.3d 1051 (9th Cir. 2014) ...............................................................................5

*Reese* v. *BP Expl. (Alaska) Inc.*,
      643 F.3d 681 (9th Cir. 2011) ...............................................................................10

*Retail Wholesale* v. *Hewlett-Packard Co.*,
      845 F.3d 1268 (9th Cir. 2017) .............................................................................4, 5

*Royal Canin U. S. A., Inc.* v. *Wullschleger*,
      604 U.S. 22 (2025)................................................................................................10

*Rubke* v. *Capitol Bancorp Ltd*,
      551 F.3d 1156 (9th Cir. 2009) ...............................................................................5

*In re Tesla, Inc. Sec. Litig.*,
      477 F. Supp. 3d 903 (N.D. Cal. 2020) ...................................................................7

*TSC Indus., Inc.* v. *Northway, Inc.*,
      426 U.S. 438 (1976)................................................................................................5

*Weir* v. *Allianz SE*,
      2025 WL 1792516 (9th Cir. June 27, 2025) ..........................................................5

*Wochos* v. *Tesla, Inc.*,
      985 F.3d 1180 (9th Cir. 2021) .............................................................................6, 9

**Statute and Rule**

28 U.S.C. § 1292(b) ............................................................................................2, 3, 8, 10

L.R. 7-18(c)..........................................................................................................................1

## INTRODUCTION

Plaintiff's Opposition confirms that the Court should reconsider its Order denying Defendants' motions to dismiss, or, alternatively, certify the Order for interlocutory review. Because the Court "fail[ed] to consider material facts presented to the Court" regarding materiality and loss causation, L.R. 7-18(c), the Court should grant Defendants' motion for reconsideration and dismiss Plaintiff's Section 10(b) claim.

*Materiality.*  The Complaint plainly alleges that the challenged statements were material to an investment decision in Barclays stock for one reason:  because the market was concerned that further "revelations" about Staley's prior relationship with Epstein "could mean [Staley's] days" as CEO "are numbered," which "would be a pity" because Barclays had "reported a better than expected set of full year results" for 2019 under Staley's stewardship of the bank.  (AC ¶ 76.)  Recognizing that the materiality theory alleged in the Complaint fails as a matter for law, Plaintiff seeks to disclaim it, protesting that Defendants "mischaracterize" their materiality theory.  (Opp. 6.)  But Plaintiff never explains (in its Complaint or Opposition) any alternative theory for why Staley's prior "close and personal" relationship with Epstein would be material to an investment decision to buy Barclays stock.  (Opp. 3.)  That silence speaks volumes.  If Plaintiff's theory is that any fact "that might cause investors to question management's integrity" is material, "[t]he law simply does not permit such a result."  *Greenhouse* v. *MCG Cap. Corp.*, 392 F.3d 650, 660 (4th Cir. 2004).  That is because "the fact misrepresented" has to be about matters material to investing in stock—*e.g.*, facts that bear on "the company's earnings."  *Id.* at 659-60.  Thus, any theory of materiality in this case fails as a matter of law.

*Loss Causation.*  Plaintiff acknowledges that, to plead loss causation, it had to identify a "disclosure of new information" that "relate[s] back to the misrepresentation" and "caus[ed] the price of Barclays Securities to decline."  (Opp. 8-9.)  Fully aware that a regulator's conclusion about publicly-known facts is not corrective, Plaintiff claims that is not what happened here. Instead, Plaintiff argues that the Court correctly "recognized" that "the FCA Decision revealed *new* information supporting an inference that Barclays had not cooperated" with the FCA's investigation.  (Opp. 10.)  But that argument is not alleged in the Complaint.  Nor could it have

been:  far from concluding that Barclays "had not cooperated" with its investigation, the FCA determined that "Mr Staley consistently did not accurately set out the nature and extent of his relationship with Mr Epstein *to Barclays*" (ECF No. 59-7 at 2.16)—a conclusion with which Mr. Staley continues to disagree (*see* Mot. 14 n.6).  As such, the FCA Decision revealed no new information that relates back to any alleged misrepresentation concerning Barclays' cooperation.  Even if Plaintiff were right (it is not), reconsideration still would be warranted, because a disclosure revealing only that Barclays supposedly did not cooperate in the investigation would relate back to and correct just one of the alleged misstatements:  the general statement in the 2019 and 2020 annual reports that "[t]he Group is also subject to enquiries and examinations . . . [and] is cooperating with the relevant authorities."  (AC ¶¶ 70, 79.)  Thus, even accepting Plaintiff's argument, there is no loss causation for all other statements.[1]

*                        *                        *

Instead of addressing the facts and arguments overlooked in the Court's Order, Plaintiff dwells on the "extraordinary" nature of reconsideration and claims that Defendants merely "repackage the same arguments" that the Court rejected in the Order.  (Opp. 1, 2, 5.)  Those form-over-substance arguments ignore reality.  This case is precisely the circumstance where reconsideration is warranted, because the Court overlooked material facts and "failed to fully address a party's arguments on an issue that is important to a decision."  *Brown* v. *DirecTV, LLC*, 2014 WL 12772076, at *2 (C.D. Cal. Dec. 11, 2014) (granting reconsideration).  As the years of hard-fought litigation in the *Goldman Sachs* case reinforce, getting it right at the outset will save the parties and the Court substantial time and resources.  (*See* Mot. 17-18.)

If the Court does not reconsider its Order, it should certify the Order for interlocutory review.  Nothing in the Opposition counsels otherwise.  The Court's Order readily satisfies all three statutory criteria for certification under section 1292(b):  it involves two (i) "controlling question[s] of law" (materiality and loss causation), (ii) "as to which there is substantial ground

---

[1] Plaintiff does not dispute that Barclays' February 13, 2020 statements confirming Staley's "professional relationship" with Epstein corrected any alleged misrepresentations regarding a professional relationship in the July 22, 2019 statement.  (*See* Mot. 5 n.3.)  The Court should, at the very least, dismiss the Section 10(b) claim as it pertains to the July 22, 2019 statement.

for difference of opinion," (iii) whose resolution "may materially advance the ultimate termination of the litigation." Because "[t]he preconditions for § 1292(b) review" are "satisfied," the Court "should not hesitate to certify an interlocutory appeal." *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 110-11 (2009).

## ARGUMENT

**I.      Plaintiff Ignores that the Court Overlooked Material Facts, Warranting Reconsideration of the Order.**

Reconsideration should be granted "where [the court] has failed to fully address a party's arguments on an issue that is important to a decision." *Brown*, 2014 WL 12772076, at *2. As explained in the Motion, Defendants brought to the Court's attention material facts showing that Plaintiff failed to adequately allege materiality and loss causation, which the Court overlooked. None of Plaintiff's arguments compels a different conclusion.

### A.      Plaintiff Did Not Adequately Allege Any Material Misstatements.

Plaintiff's theory of materiality alleged in the Complaint fails as a matter of law. Under that theory, what mattered from an investment perspective was information bearing on whether Staley would continue on as CEO, and the market learned in November 2021 that he would not—which did not lead to any alleged drop in the stock price. (Mot. 9-10.) Rather than confront the deficiencies of its materiality theory, Plaintiff offers technicalities that it claims prevent the Court from reconsidering—and correcting—its error. Those arguments go nowhere.

Plaintiff's contention that Defendants' Motion improperly raises a "new argument" (Opp. 2) is demonstrably wrong, as Plaintiff itself acknowledges in a footnote conceding that Staley raised this argument in his motion to dismiss. (Opp. 7 n.3.) Plaintiff also claims that reconsideration is unwarranted because the Court already "thoroughly analyzed the statements" (Opp. 6), but that misses the point. What the Court overlooked is Plaintiff's allegations as to *why* those statements were material to an investment decision in Barclays stock.

On that point, Plaintiff asserts that Defendants "mischaracterize the Complaint" and attempt to "rewrite Plaintiffs' case." (Opp. 6.) Not so. When one "look[s] to [the Complaint's] allegations" (Opp. 7), it is clear that Defendants have not mischaracterized anything. The

Complaint affirmatively alleges that analysts "were comforted" by Barclays' continued "support for Staley" because "Staley [had] deliver[ed] . . . solid [financial] numbers." (AC ¶ 76.) It goes on to allege that analysts were concerned about further revelations only to the extent they "could mean [Staley's] days are numbered," which "would be a pity" given the financial results Barclays had obtained for its stockholders under his stewardship. (*Id.*)

Tellingly, although Plaintiff insists that Defendants misconstrue its materiality theory, Plaintiff never offers any alternative theory. Plaintiff does not provide any other reason why the fact that Staley had a relationship with Epstein before joining Barclays would be material to a decision to buy Barclays stock. Courts have rejected the notion that any statement that "implicate[s] management's integrity" is material to investor decision making, *Greenhouse*, 392 F.3d at 659, which is the only other materiality theory Plaintiff even hints at in its papers (*see* Staley MTD Opp. 13). Instead, to be material, "the actual fact misrepresented" must bear on financial matters in some way. *Greenhouse*, 392 F.3d at 659; *see All. for Fair Bd. Recruitment* v. *SEC*, 125 F.4th 159, 171-72 (5th Cir. 2024) (en banc) (observing that "Congress enacted the[] disclosure provisions" of the Exchange Act to "prevent companies from hiding financial problems from investors"). Any other rule "could turn all corporate wrongdoing into securities fraud." *Retail Wholesale* v. *Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017). That is why in the case Plaintiff cited when opposing dismissal, but now ignores in its Opposition, the court held that the plaintiff "adequately—though barely—allege[d]" materiality regarding statements about the personal conduct of CBS's CEO only because the statement "provid[ed] reassurance that Moonves, *the one executive that the Company and analysts viewed as crucial to CBS's continued success, would not be compromised* by the #MeToo Movement." *Constr. Laborers Pension Tr.* v. *CBS Corp.*, 433 F. Supp. 3d 515, 539-40 (S.D.N.Y. 2020) (emphasis added). Plaintiff cannot run from the case it invoked to survive dismissal now that it realizes that the *CBS* decision undermines its theory of materiality pled in the Complaint.

Instead of pointing to the Complaint's allegations of why the challenged statements are material, Plaintiff cites two grounds noted in the Court's opinion. Neither one relates to materiality. (Opp. 6.) *First*, Plaintiff cites the Court's assumption that investors might "give

more weight" to Staley's "denials" of a personal relationship with Epstein (Order at 16) than media reports quoting excerpts of their actual emails "expressing pronouncements of 'profound' friendship."   (AC ¶¶ 28, 95.)   But the question of whether investors may find company disclosures more reliable than other sources is not  the relevant question here—*i.e.*, whether the fact represented is material *to an investment decision* (it is not).   Moreover, the Court's assumption is in tension with the case law.   Reasonable investors do not rely on "characterizations of disclosed factual matters," especially where the contested fact of whether a relationship is professional or personal is not itself entirely objective.  *Kowal* v. *MCI Commc'ns Corp.*, 16 F.3d 1271, 1277 (D.C. Cir. 1994); *see Plumber & Steamfitters* v. *Danske Bank A/S*, 11 F.4th 90, 103 (2d Cir. 2021) ("No reasonable investor would discount all of the more recent news about AML failures . . . on the basis of [a] years-old boast" about compliance).  *Second*, the Court's observation that FCA and Barclays launched investigations (Opp. 6) is irrelevant to whether a particular statement is material to investor decision making.   All companies have numerous investigations.   But that cannot support the circular argument that the subject matter of every investigation is material because the fact of an investigation makes it material.

As a last resort, Plaintiff harps on the fact that fifty years ago the Supreme Court defined materiality under Section 10(b) as a context-specific inquiry, *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449-50 (1976), and suggests that dismissal at the pleading stage is never appropriate (Opp. 6, 12-13).   But a half-century-old decision adopting the governing legal standard for materiality does nothing to call into question the many subsequent Ninth Circuit decisions applying the *TSC* standard to hold that statements are immaterial as a matter of law at the pleading stage.  *See, e.g.*, *Hewlett-Packard*, 845 F.3d at 1277-78 (affirming dismissal on materiality grounds); *Macomb Cnty. Emps.' Ret. Sys.* v. *Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022) (same); *Police Ret. Sys.* v. *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (same); *Rubke* v. *Capitol Bancorp Ltd*, 551 F.3d 1156, 1163 (9th Cir. 2009) (same); *Weir* v. *Allianz SE*, 2025 WL 1792516, at *1 (9th Cir. June 27, 2025) (same).

### B.    Plaintiff Did Not Adequately Allege Loss Causation.

Plaintiff argues that the FCA's ultimate conclusion on October 12, 2023, is a corrective

disclosure because it "caused the company's stock price to drop and investors to lose money." (Opp. 7.)  But simply alleging a stock drop following purported bad news does not plead loss causation.  "[N]ot every bit of bad news that has a negative effect on the price of a security necessarily has a *corrective* effect for purposes of loss causation."  *Meyer* v. *Greene*, 710 F.3d 1189, 1202 (11th Cir. 2013).  Rather, Plaintiff had to identify a disclosure that provided "new information to the market" that "expose[s] the alleged falsity" of the statements and caused the stock price to decline.  *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 839 (9th Cir. 2022); *see Wochos* v. *Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021) ("Because the nature of a fraud is that it conceals underlying facts that affect the stock price, then if the stock price falls shortly after the disclosure of the true facts, that decline suggests that the fraud had artificially propped up the stock price.") (quotation and alterations omitted).

Plaintiff posits that the FCA's ultimate conclusion on October 12, 2023, must have revealed "new" information based on a flawed process of elimination that ignores facts alleged in the Complaint.  It argues that (i) the FCA's preliminary conclusion could not have been corrective because "the mere announcement of a government investigation"—something entirely different than the FCA's preliminary conclusion—"usually does not provide sufficient information to the market to constitute a corrective disclosure" (Opp. 8), and (ii) Barclays' "November 1, 2021 press release disclosing Staley's departure . . . included no factual details" about the "personal nature of Staley's relationship with Epstein" (*id.*).  With only those two disclosures in mind, Plaintiff concludes that the FCA's final determination on October 12, 2023 must have been a corrective disclosure because it concluded that Staley's relationship with Epstein was personal.  But Plaintiff ignores that the very same facts cited in the decision had been disclosed to the public *well before* the FCA's final determination, in press reports that widely reported information about their relationship, including their extensive email correspondence "expressing pronouncements of 'profound' friendship" and "references to Snow White and Beauty and the Beast."  (AC ¶¶ 28, 95; *see* Mot. 4-7 (citing *Financial Times* articles from November 2021, February 2023, and March 2023).)  As stated in the case that Plaintiff cites (Opp. 8), facts reported in a news article that "tie[] back" to the matter being investigated

qualifies as a corrective disclosure. *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 934-35 (N.D. Cal. 2020); *see Espy* v. *J2 Glob., Inc.*, 99 F.4th 527, 542 (9th Cir. 2024) (Plaintiff "alleges no facts plausibly explaining why this information—already publicly available . . . —was not yet reflected in [the company's] stock price."). As a result, a disclosure that the FCA made a final determination based on its assessment of those facts cannot support loss causation. A "'negative characterization of already-public information' . . . could not support loss causation, even if a 'generalized investor reaction of concern caus[ed] a temporary share price decline.'" *Menorah Mivtachim Ins. Ltd.* v. *Sheehan*, 2024 WL 1613907, at *2 (2d Cir. Apr. 15, 2024).

In response to Defendants' point that the Court overlooked that the FCA's final determination did not reveal "new" information about the closeness of Staley and Epstein's relationship, Plaintiff argues that two tidbits of information in the FCA's decision were purportedly "new" facts. *First*, Plaintiff contends that the FCA's decision was the first time the market learned "detail[s] regarding what was known by Defendants" (Opp. 8)—namely, that the FCA had provided to Barclays' Board "a cache of 1,200 emails exchanged between Staley and Epstein" (Opp. 4). That is demonstrably wrong. Two years earlier, in November 2021, the *Financial Times* publicly reported that exact same information. In that article, the *Financial Times* disclosed that the FCA (i) had informed Barclays' Board that Staley's "1,200 emails with Jeffrey Epstein"—which "included unexplained terms"—"contradicted an earlier letter sent by the bank, which described the relationship as professional," and (ii) "urged the [B]oard to review" those emails. (ECF 59-4 at 1, 3.) On March 4, 2023, the *Financial Times* reported further on the "large amount of emails given to [Barclays] by the FCA." (ECF No. 59-6 at 7.) Thus, the fact that Barclays Board had "known" about the emails (Opp. 8), was not a "new fact[]" when the FCA issued its decision, *Espy*, 99 F.4th at 542.[2]

*Second*, Plaintiff argues that "the FCA Decision revealed new information supporting an inference that Barclays had not cooperated." (Opp. 10.) That too is wrong. Although Plaintiff

---

[2] For the same reason, Staley's prior "denials" of a personal relationship were corrected when the press reported the contents of those emails—long before the FCA issued its decision. (Opp. 4.) *See Danske Bank*, 11 F.4th at 103 ("No reasonable investor would discount all of the more recent news about AML failures . . . on the basis of [a] years-old boast" about compliance).

REPLY IN FURTHER SUPPORT OF DEFS.' MOT. FOR RECONSIDERATION / INTERLOCUTORY APPEAL

argues that it cured its failure to include this allegation in its Complaint by raising the point "[d]uring oral argument" (Opp. 9),[3] Plaintiff does not identify anything in the FCA's decision remotely suggesting that Barclays did not cooperate.  In the paragraph of the FCA's decision cited by the Court, the FCA set forth its determination that "Mr Staley consistently did not accurately set out the nature and extent of his relationship with Mr Epstein *to Barclays*."  (ECF No. 59-7 at 2.16.)  The FCA's conclusion that Staley misled Barclays does not suggest that Barclays did not cooperate with the FCA—a material fact that the Court overlooked.  And even if the FCA had concluded that Barclays failed to cooperate (it did not), that would mean that Plaintiff pled loss causation solely with respect to the cooperation statements in the 2019 and 2020 annual reports.  (AC ¶¶ 70, 79.)  Thus, at a minimum, dismissal of all other challenged statements is required for failure to plead loss causation.

**II.      Defendants Have Satisfied the Requirements for Interlocutory Appeal.**

If the Court will not reconsider the Order, it should certify it for interlocutory appeal. Defendants' Motion demonstrates that each requirement for certification has been met:  (i) the order involves a "controlling question of law," (ii) on which there is "substantial ground for difference of opinion," and (iii) "immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

***Controlling Question of Law.***  Defendants' Motion identified two clear, controlling questions of law:  whether information about the personal conduct of a CEO before joining the company is material to investor decision making, and whether the disclosure of a regulator's "conclusion" about facts already known to the market may serve as a proper corrective disclosure for purposes of pleading loss causation.  To try to escape interlocutory review, Plaintiff contends that these issues are not "controlling" because they are not "pure question[s] of law" that the court of appeals could "decide quickly and cleanly without having to study the record." (Opp. 11-12.)  But the Ninth Circuit need not study a complicated record; it can simply apply its materiality and loss causation precedents to the allegations in the Complaint.  In some

---

[3] Plaintiff "cannot amend the Complaint" through "statements" in a brief or at argument. *A.C.C.S.* v. *Nielsen*, 2019 WL 7841860, at *7 (C.D. Cal. Sept. 17, 2019).

securities cases, of course, the issue that the defendants present for interlocutory review "cannot be resolved by pure questions of law" (Opp. 11), like in the case that Plaintiff cites where the defendants sought interlocutory review to challenge the "sufficiency of [those] Plaintiffs' pleadings" regarding whether the defendants "knew" of a particular trend, which involved a fact-bound question, an appeal of which "at most [would] lead only to a remand for repleading." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530-31, 533 (S.D.N.Y. 2014). Here, by contrast, the materiality of statements about a CEO's personal conduct and whether a regulator's "conclusion" about facts already known to the market may serve as a proper corrective disclosure are pure questions of law.[4] Nor could there be a remand for leave to replead here, because amendment could not change the inherent nature of the challenged statements or the content of the alleged corrective disclosure.

Plaintiff further claims that the loss causation question is inappropriate for interlocutory review because it "improperly embeds a factual assumption that directly contradicts both the Court's Order and the allegations in the Complaint"—namely, the assumption that Barclays' "2021 Press Release" provided "details" about the personal relationship between Staley and Epstein. (Opp. 12-13.) That is wrong. Defendants' point was that those "details"—including the trove of emails—were disclosed *in press reports* before the FCA issued its decision. (*See* Mot. 6-7, 12.) Plaintiff cannot dispute that those details were in fact already known to the market well before its alleged corrective disclosure. Thus, the issue for interlocutory review does not involve any improper "embedded assumption." (Opp. 12-13.)[5]

***Substantial Ground for Difference of Opinion.*** In light of the Court's

---

[4] Plaintiff acknowledges that the question of "whether information about the personal conduct of a CEO before joining the company is material to investor decision-making" is a legal question, but claims incorrectly that this legal question transforms into a "fact-intensive inquiry" if the conduct "concern[s] [a] relationship with an indicted sex trafficker." (Opp. 12.) Nothing about this detail makes the question fact intensive; Plaintiff offers no explanation for why it would.

[5] Plaintiff's contention that "loss causation" always entails a "'context-dependent' inquiry" that cannot be decided on the pleadings is incorrect. (Opp. 13.) The Ninth Circuit repeatedly has held that a complaint failed to plead loss causation as a matter of law. *See, e.g.*, *Nektar*, 34 F.4th at 838-40; *Espy*, 99 F.4th at 540-42; *Wochos*, 985 F.3d at 1197-98; *Grigsby* v. *BofI Holding, Inc.*, 979 F.3d 1198, 1208-09 (9th Cir. 2020).

-9-

acknowledgement that there is "no binding authority that misrepresentations about matters personal to a CEO are not material" (Order at 15), and the many decisions holding that confirmatory information about already disclosed facts do not qualify as corrective disclosures, there are plainly "substantial ground for difference of opinion" (Mot. 15-17).  Plaintiff argues that Defendants have identified "only their difference of opinion," which is not a "substantial ground for difference of opinion." (Opp. 14.)  Not only is that argument untrue, but the Ninth Circuit has rejected Plaintiff's contention that interlocutory review "turn[s] on a prior court's having reached a conclusion adverse to that from which appellants seek relief." *Reese* v. *BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  Rather, "[a] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.*

***Immediate Appeal May Materially Advance the Litigation.***  There can be no question that immediate appeal may materially advance the litigation.  Plaintiff speculates that, were it to lose on these issues on appeal, this Court "may choose to exercise supplemental jurisdiction" over the novel and complex foreign law claims under English law asserted by a different plaintiff based on purchases made on the London Stock Exchange.  (Opp. 15.)  But as the Supreme Court recently reiterated, when the sole federal claim is dismissed, "the court may (and indeed, ordinarily should) kick the case." *Royal Canin U. S. A., Inc*. v. *Wullschleger*, 604 U.S. 22, 32 (2025).  Declining supplemental jurisdiction is especially warranted here, where Plaintiff improperly asks the Court to "blaze new and unprecedented jurisprudential trails as to [foreign] law." *Doe* v. *Trs. of Bos. Coll.*, 942 F.3d 527, 535 (1st Cir. 2019); *see Martinez* v. *E.I. DuPont de Nemours & Co.*, 86 A.3d 1102, 1106-07 (Del. 2014) ("novel" issues of foreign law are "more appropriately" addressed to "courts of the only sovereign whose law is at stake").

## CONCLUSION

The Court should grant Defendants' motion for reconsideration of the Court's Order and dismiss the Amended Complaint with prejudice.  Alternatively, the Court should certify interlocutory appeal of the Court's Order pursuant to 28 U.S.C. § 1292(b).

-10-

Dated:  July 30, 2025

/s/ Adam S. Paris

Adam S. Paris (SBN # 190693)
(parisa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:     (310) 712-6600
Facsimile:      (310) 712-8800

Jeffrey T. Scott (*pro hac vice*)
(scottj@sullcrom.com)
Matthew J. Porpora (*pro hac vice*)
(porporam@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3558

Peter B. Morrison (SBN # 230148)
(peter.morrison@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:     (213) 687-5000
Facsimile:      (213) 687-5600

Scott D. Musoff (*pro hac vice*)
(scott.musoff@skadden.com)
Boris Bershteyn (*pro hac vice*)
(boris.bershteyn@skadden.com)
Lara A. Flath (*pro hac vice*)
(lara.flath@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:     (212) 735-3000
Facsimile:      (212) 735-2000

*Attorneys for Defendants Barclays PLC
and Nigel Higgins*

-11-

/s/ Matthew Donald Umhofer
Matthew Donald Umhofer (SBN # 206607)
Elizabeth Mitchell (SBN # 251139)
UMHOFER, MITCHELL & KING LLP
767 S. Alameda Street, Suite 270
Los Angeles, California 90021
Telephone:     (213) 394-7979

Brendan V. Sullivan, Jr. (*pro hac vice*)
John M. McNichols (*pro hac vice*)
Stephen L. Wohlgemuth (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone:     (202) 434-5800
Facsimile:     (202) 434-5029

*Attorneys for Defendant James E. Staley*

-12-

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Barclays PLC and Nigel Higgins, certifies that this brief contains 10 pages, which complies with the page limit set in Section VIII.C of the Court's Civil Standing Order.

Dated:  July 30, 2025                    SULLIVAN & CROMWELL LLP


                                         /s/ Adam S. Paris
                                         Adam S. Paris

                                         *Attorney for Defendants Barclays*
                                         *PLC and Nigel Higgins*

-13-

**SIGNATURE CERTIFICATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  July 30, 2025                              SULLIVAN & CROMWELL LLP


                                                    /s/ Adam S. Paris
                                                    Adam S. Paris

                                                    *Attorney for Defendants Barclays PLC and Nigel Higgins*

REPLY IN FURTHER SUPPORT OF DEFS.' MOT. FOR RECONSIDERATION / INTERLOCUTORY APPEAL