1  Adam S. Paris (SBN # 190693)
   (parisa@sullcrom.com)
2  SULLIVAN & CROMWELL LLP
   1888 Century Park East
3  Los Angeles, California 90067
   Telephone:    (310) 712-6600
4  Facsimile:    (310) 712-8800

5  Jeffrey T. Scott (*pro hac vice*)
   (scottj@sullcrom.com)
6  Matthew J. Porpora (*pro hac vice*)
   (porporam@sullcrom.com)
7  SULLIVAN & CROMWELL LLP
   125 Broad Street
8  New York, New York  10004
   Telephone:    (212) 558-4000
9  Facsimile:    (212) 558-3558

10  [ADDITIONAL COUNSEL ON SIGNATURE BLOCK]

11  *Attorneys for Defendant Barclays PLC*

12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16                                )
    STEPHEN MERRITT, Individually and )  Case No. 2:23-cv-09217-MEMF-KS
17  on Behalf of All Others Similarly )
    Situated,                      )  **BARCLAYS PLC'S MEMORANDUM OF**
18                                )  **POINTS AND AUTHORITIES IN**
                Plaintiff,         )  **SUPPORT OF ITS MOTION TO**
19                                )  **DISMISS THE SECOND AMENDED**
                v.                 )  **COMPLAINT**
20                                )
    BARCLAYS PLC, JAMES E.         )  [Notice of Motion and Motion; Declaration of
21  STALEY, and NIGEL HIGGINS,     )  Martin Moore K.C.; Declaration of Adam S.
                                   )  Paris; Request for Judicial Notice; and
22                                )  [Proposed] Orders Filed Concurrently]
                Defendants.        )
23                                )  Hearing Date:  November 13, 2025
                                   )  Hearing Time:  10:00 A.M.
24                                )  Courtroom:  8B
                                   )  Judge:  Hon. Maame Ewusi-Mensah
25                                )  Frimpong
26  _____   )

27

28

# TABLE OF CONTENTS

*Page*

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................5

    A.    Factual Background .........................................................................5

    B.    Procedural History ...........................................................................7

ARGUMENT ................................................................................................................7

I.    Section 90A's Dishonest Delay Provision is a Narrow Gap-Filler That has Rarely been Litigated in England ................................................................7

II.    St. Louis' Section 90A Claim Continues to be Fatally Flawed and Should be Dismissed Again ................................................................10

    A.    St. Louis Does Not Allege That Barclays Made a Disclosure That Was Accurate, But Late ................................................................11

    B.    St. Louis Cannot Recast a Misstatement or Omissions Claim as a Dishonest Delay Claim To Evade the Reliance Requirement ...........................11

    C.    St. Louis Fails To Plead the Requisite Fraudulent Intent ...................................13

III.    Alternatively, the Court Should Dismiss St. Louis' Novel Section 90A Claim Under the Doctrine of *Forum Non Conveniens* ................................................................14

    A.    England is an Adequate Alternative Forum With a Superior Interest in Adjudicating Novel English Law Securities Claims ...........................................15

    B.    St. Louis' Choice of a California Forum is Entitled to Little Deference ...........18

    C.    The Private Interest Factors Favor Dismissal ...................................................19

    D.    The Public Interest Factors Favor Dismissal ....................................................22

IV.    Alternatively, the Court Should Dismiss St. Louis' Section 90A Claim Under Adjudicatory Comity ................................................................24

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abad* v. *Bayer Corp.*,
563 F.3d 663 (7th Cir. 2009) ...........................................................16

*ACL Netherlands BV* v. *Lynch*,
[2022] EWHC 1178 (Ch) ...................................................................23

*Aenergy, S.A.* v. *Republic of Angola*,
31 F.4th 119 (2d Cir. 2022) ...............................................................21

*In re Air Crash Over S. Indian Ocean*,
352 F. Supp. 3d 19 (D.D.C. 2018) ....................................................16

*Allarcom Pay Television, Ltd.* v. *Home Box Off., Inc.*,
2000 WL 6058 (9th Cir. 2000) ..........................................................16

*Allianz Funds Multi-Strategy Trust* v. *Barclays*,
[2024] EWHC 1178 (Ch) .............................................................. *passim*

*Alternate Health USA Inc.* v. *Edalat*,
2022 WL 767573 (C.D. Cal. Mar. 14, 2022) ...............................20, 24

*Alternate Health USA, Inc.* v. *Edalat*,
2023 WL 8732811 (9th Cir. Dec. 19, 2023) ................................16, 24

*Animal Sci. Prods., Inc.* v. *Hebei Welcome Pharm. Co.*,
585 U.S. 33 (2018) ...............................................................................3

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ...........................................3, 13

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ...........................................................................13

*Ayco Farms, Inc.* v. *Ochoa*,
862 F.3d 945 (9th Cir. 2017) .........................................15, 18, 19, 22

*Blum* v. *Gen. Elec. Co.*,
547 F. Supp. 2d 717 (W.D. Tex. 2008) .............................................18

*Bundy* v. *Nirvana LLC*,
2021 WL 5822127 (C.D. Cal. Oct. 21, 2021) ...................................19

*Bundy* v. *Nirvana LLC*,
2023 WL 4311613 (9th Cir. July 3, 2023) .........................................24

*Chang* v. *Baxter Healthcare Corp.*,
599 F.3d 728 (7th Cir. 2010) .............................................................20

*In re Citizens Bank, N.A.*,
15 F.4th 607 (3d Cir. 2021) ...............................................................22

-ii-

*Combs* v. *Int'l Ins. Co.*,
  354 F.3d 568 (6th Cir. 2004) ............................................................................13

*Contact Lumber Co.* v. *P.T. Moges Shipping Co.*,
  918 F.2d 1446 (9th Cir. 1990) ...........................................................................21

*Cooper* v. *Tokyo Elec. Power Co.*,
  860 F.3d 1193 (9th Cir. 2017) ...........................................................................16

*Cooper* v. *Tokyo Elec. Power Co.*,
  960 F.3d 549 (9th Cir. 2020) ........................................................................13, 16

*de Fontbrune* v. *Wofsy*,
  838 F.3d 992 (9th Cir. 2016) ...............................................................................2

*Dibdin* v. *S. Tyneside NHS Healthcare Tr.*,
  2013 WL 327324 (C.D. Cal. Jan. 29, 2013) ..............................................21, 22

*Dickens* v. *NXP Semiconductors*,
  703 F. Supp. 3d 1013 (N.D. Cal. 2023) ............................................................22

*Doe* v. *Trs. of Bos. Coll.*,
  942 F.3d 527 (1st Cir. 2019) ................................................................................8

*Doud* v. *Kochai*,
  2013 WL 5313701 (N.D. Cal. Sept. 23, 2013) ..................................................20

*Esa* v. *NortonLifeLock, Inc.*,
  2022 WL 14002189 (9th Cir. Oct. 24, 2022) .....................................................18

*In re FirstEnergy Corp. Sec. Litig.*,
  ___ F.4th ___, 2025 WL 2331754 (6th Cir. Aug. 13, 2025) .............................12

*Ford* v. *Brown*,
  319 F.3d 1302 (11th Cir. 2003) .........................................................................22

*Goldman Sachs Grp., Inc.* v. *Ark. Tchr. Ret. Sys.*,
  594 U.S. 113 (2021) ...........................................................................................13

*Greben* v. *Cinmar, LLC*,
  2025 WL 1765916 (C.D. Cal. May 30, 2025) ...................................................18

*Gutierrez* v. *Advanced Med. Optics, Inc.*,
  640 F.3d 1025 (9th Cir. 2011) ...........................................................................16

*Herbert* v. *VWR Int'l, LLC*,
  686 F. App'x 520 (9th Cir. 2017) ......................................................................21

*Hoefer* v. *U.S. Dep't of Com.*,
  2000 WL 890862 (N.D. Cal. June 28, 2000) .....................................................18

*Howe* v. *Goldcorp Invs., Ltd.*,
  946 F.2d 944 (1st Cir. 1991) ..................................................................14, 23, 25

*Instituto Mexicano del Seguro Soc.* v. *Zimmer Biomet Holdings, Inc.*,
  29 F.4th 351 (7th Cir. 2022) ..............................................................................24

*Jensen* v. *U.S. Tennis Ass'n*,
   2025 WL 707447 (9th Cir. Mar. 5, 2025) .................................................8, 11, 14

*Kerkhof* v. *MCI WorldCom, Inc.*,
   282 F.3d 44 (1st Cir. 2002) ....................................................................22

*King* v. *Cessna Aircraft Co.*,
   562 F.3d 1374 (11th Cir. 2009) .............................................................17

*Leetsch* v. *Freedman*,
   260 F.3d 1100 (9th Cir. 2001) ..........................................................15, 23

*Levien* v. *hibu plc*,
   475 F. Supp. 3d 429 (E.D. Pa. 2020) .....................................................19

*Levien* v. *hibu Plc*,
   2021 WL 5742664 (3d Cir. Dec. 2, 2021) ...............................................15

*Lou* v. *Belzberg*,
   834 F.2d 730 (9th Cir. 1987) .........................................................18, 19, 23

*Manning & Napier* v. *Tesco plc*,
   [2017] EWHC 3296 (Ch) ....................................................................8, 12

*Markel* v. *Union of Orthodox Jewish Congregations of Am.*,
   124 F.4th 796 (9th Cir. 2024) ...................................................................3

*Martinez* v. *E.I. DuPont de Nemours & Co.*,
   86 A.3d 1102 (Del. 2014) ........................................................................23

*Moser* v. *Benefytt, Inc.*,
   8 F.4th 872 (9th Cir. 2021) ......................................................................20

*Mujica* v. *AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014) ..............................................................24, 25

*In re Orland Ltd.*,
   2022 WL 885167 (B.A.P. 9th Cir. Mar. 25, 2022) .................................16

*Paraschos* v. *YBM Magnex Int'l, Inc.*,
   130 F. Supp. 2d 642 (E.D. Pa. 2000) .....................................................25

*PT United Can Co.* v. *Crown Cork & Seal Co.*,
   138 F.3d 65 (2d Cir. 1998) ......................................................................17

*Ranza* v. *Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ...........................................................14, 15

*RJR Nabisco* v. *Eur. Cmty.*,
   579 U.S. 325 (2016) ...................................................................................3

*Scot. Air Int'l, Inc.* v. *Brit. Caledonian Grp., PLC*,
   81 F.3d 1224 (2d Cir. 1996) ...............................................................16, 17

*Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*,
   559 U.S. 393 (2010) .................................................................................17

*Siswanto* v. *Airbus Ams., Inc.*,
   2016 WL 7178460 (N.D. Ill. Dec. 9, 2016) ...................................................17, 18

*Smith Kline & French Lab. Ltd.* v. *Bloch*,
   [1983] 1 W.L.R. 730, 733 (C.A.) ................................................................................17

*SPS Techs., LLC* v. *Briles Aerospace, Inc.*,
   2020 WL 12740596 (C.D. Cal. Jan. 17, 2020) ..........................................................17

*Stratte-McClure* v. *Morgan Stanley*,
   776 F.3d 94 (2d Cir. 2015)..........................................................................................14

*Sysco Mach. Corp.* v. *Cymtek Sols., Inc.*,
   124 F.4th 32 (1st Cir. 2024)........................................................................................21

*Tongfang Glob. Ltd.* v. *Element Television Co.*,
   2020 WL 4354173 (C.D. Cal. June 22, 2020) ......................................................16, 17

*Unitednet Ltd.* v. *Tata Commc'ns Am., Inc.*,
   112 F.4th 1259 (10th Cir. 2024) .................................................................................21

*Various Claimants* v. *Standard Chartered PLC*
   [2025] EWHC 698 (Ch) ...............................................................................................10

*Vivendi SA* v. *T-Mobile USA Inc.*,
   586 F.3d 689 (9th Cir. 2009) .................................................................................19, 24

*In re Volkswagen "Clean Diesel" Litig.*,
   2 F.4th 1199 (9th Cir. 2021) .......................................................................................12

*Waggoner* v. *Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017)..........................................................................................10

*Wirral Metro Borough Council* v. *Indivior Plc*,
   [2025] EWCA Civ 40 ....................................................................................................8

**Rules**

Fed. R. Civ. P. 23(b) .........................................................................................................4

Fed. R. Civ. P. 26(f) ...................................................................................................19, 21

Fed. R. Civ. P. 44.1 ...........................................................................................................2

Fed. R. Civ. P. 45(c) .......................................................................................................21

**Other Authorities**

Brief for United Kingdom as Amicus Curiae,
   *Morrison* v. *Nat'l Aus. Bank Ltd.*, No. 08-1191 (U.S. Feb. 25, 2010)............................ *passim*

Brief for United Kingdom as Amicus Curiae,
   *Toshiba Corp.* v. *Auto. Indus. Pension Trust Fund*, No. 18-486
   (U.S. Dec. 4, 2018) .......................................................................................... *passim*

# INTRODUCTION

This Court previously dismissed the sole claim asserted by the Firemen's Retirement System of St. Louis ("St. Louis") in this case—a novel Section 90A "dishonest delay" claim under English law.  As the Court noted, St. Louis' claim was premised on its allegation that Barclays delayed in disclosing "what [it] understood the true nature of [Jes] Staley's relationship with [Jeffrey] Epstein to be" until October 2023, when Barclays issued a press release reporting that the British Financial Conduct Authority ("FCA") had issued its decision regarding its investigation.  (Order at 23.)  As the Court correctly held, those allegations failed to plead a Section 90A claim for two reasons—first, because Barclays could not have disclosed the results of the FCA's investigation until after the FCA announced its decision; and, second, because Barclays' 2023 press release was "specifically based on the FCA's final determination and not on what Defendants independently may have known." (*Id.*)  Accordingly, St. Louis' "position . . . that Defendants knew what the FCA ultimately concluded earlier . . . cannot support a theory of dishonest delay." (*Id.*)  Nonetheless, the Court granted St. Louis leave to amend.

St. Louis has not even tried to fix the fundamental pleading failure that the Court identified.  Rather than proffer new factual allegations aimed at addressing the deficiency, St. Louis merely seeks to change its theory for why its previously pled facts support a claim—namely, that Barclays knew that its alleged misstatements purportedly downplaying the Staley-Epstein relationship were untrue.  That new theory still fails to support a Section 90A claim.  As described below, the Court should dismiss St. Louis' dishonest delay claim for failure to state a claim, or, alternatively, on *forum non conveniens* or international comity grounds.

***Failure to State a Claim.***  St. Louis fails to plead its Section 90A "dishonest delay" claim for three independent reasons.  *First*, St. Louis does not allege that Barclays itself ever "published" the "information that was delayed."  (Order at 23.)  That was the basis for the Court's prior dismissal, and St. Louis has done nothing in its amendments to remedy this fatal deficiency.  Instead, St. Louis merely constructs a new argument for why, in its view, St. Louis need *not* plead that Barclays published information that was delayed, and instead can proceed on a different *theory* of liability.  That new theory is wrong on the law, for the reasons explained

immediately below, but more fundamentally, St. Louis' failure to plead any new facts to address the Court's ruling—and instead seeks to circumvent it—is fatal. The Court should reject this thinly-veiled motion for reconsideration.

*Second*, St. Louis' new theory of liability under Section 90A plainly is meritless, as it attempts to repackage its abandoned omissions and misrepresentations claims as a claim of dishonest delay by alleging that Barclays failed to disclose that its prior statements were not true. Notably, St. Louis alleges that the putative class period for the "dishonest delay" claim begins on July 22, 2019. (SAC ¶ 1.) That is the day, according to St. Louis, when the duty arose to make the disclosure that Barclays allegedly "delayed" making. As it happens, July 22, 2019, also is the day that Barclays made the first of the statements that St. Louis alleges was misleading by purportedly downplaying the Staley-Epstein relationship. (*Id.* ¶ 53.) St. Louis thus effectively asserts that, after Barclays made that statement and the nine other statements that it alleges were false, Barclays should have "publicly corrected th[ose] public misstatements" but "dishonestly delayed" doing so. (*Id.* ¶¶ 114, 117.) As Barclays' English law expert explains, this "is in reality an allegation of omission or misstatement." (Moore ¶ 108(a).)[1] St. Louis concedes as much when it alleges that Barclays ordinary shares were "artificially inflated" not due to any delayed disclosure, but because of the "misrepresentations and omissions" made on July 22, 2019 (SAC ¶ 57), and throughout the putative class period (*id.* ¶¶ 80, 82, 90, 100).

While St. Louis may wish to lessen its pleading obligations, "the English court would not . . . permit a claimant to avoid the need to show individual reliance (a requirement for omission and misstatement claims) by seeking to recast it as a 'delay' claim." (Moore ¶ 108(a).) The views of St. Louis' English law expert do not warrant a different conclusion. That expert merely states that the scope of a dishonest delay claim is "not settled" and hypothesizes that a future English court might expand that scope to allow a claimant to evade the reliance requirement by recharacterizing any misstatement claim as a dishonest delay claim. (ECF

---

[1] Courts may look to "any relevant material or source" in deciding questions of foreign law, including declarations from foreign lawyers. *See* Fed. R. Civ. P. 44.1; *de Fontbrune* v. *Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016).

No. 69-1 ¶¶ 79-83.)  But, stating the obvious, that is not the current state of English law, and this Court has no authority to expand English law.  *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 977 (N.D. Cal. 2016) (Koh, J.) ("When [a federal court is] given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [the court] should choose the narrower and more reasonable path.").

*Third*, St. Louis fails to plead the requisite fraudulent intent, alleging only that Barclays acted "reckless[ly]" (SAC ¶ 167), rather than with knowledge and deliberate intent to delay making a required disclosure, as English law requires.

**Forum Non Conveniens.**  In the alternative, St. Louis' claim should be dismissed on *forum non conveniens* grounds.  In fact, this is a textbook case for such dismissal:  every one of the factors that courts consider in analyzing *forum non conveniens* point in one direction— England.  England is the most suitable forum for St. Louis' claim under English law, asserted against an English corporation, based on securities purchased in England on the London Stock Exchange.  None of the parties resides in California, and many of the witnesses that St. Louis has identified reside in England outside the reach of this Court's compulsory process.  Moreover, the U.K. government itself has stated that "[s]erious doubt exists as to whether a judgment or court-approved settlement in a U.S. securities class action would bind a non-U.S. plaintiff who did not opt out of the class."  Brief for United Kingdom as Amicus Curiae at 28, *Morrison* v. *Nat'l Aus. Bank Ltd.*, No. 08-1191 (U.S. Feb. 25, 2010) ("U.K. Morrison Br.") (Ex. 1).[2]  St. Louis' invitation to expand dramatically the disclosure obligations of English corporations under English law with no support in English precedent only strengthens the case for dismissal.  If entirely new disclosure obligations for English issuers of securities under English law are to be adopted, that decision should be made by a court in England, not California.

_____

[2] A "federal court should carefully consider a foreign state's views about the meaning of its own laws," *Animal Sci. Prods., Inc.* v. *Hebei Welcome Pharm. Co.*, 585 U.S. 33, 43 (2018), and may take "judicial notice of an amicus brief filed with the Supreme Court," *Markel* v. *Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 812 n.7 (9th Cir. 2024); *see RJR Nabisco* v. *Eur. Cmty.*, 579 U.S. 325, 347-48 & n.9 (2016) (considering amicus briefs filed by foreign governments in prior cases).

1    For those reasons, the U.K. government has expressly taken the position that the
2    "adequacy of disclosure" by English securities issuers should "be decided under the laws of [its]
3    jurisdiction *by the courts and regulatory agencies of [its] jurisdiction*."  *Id.* at 30 (emphasis
4    added).  As the U.K. government recently explained, the "establishment of litigation rules [are]
5    an important exercise of public policy," and because of the "unique combination of advantages
6    to plaintiffs [in the U.S.] that are not present in the U.K.," it "is a source of ongoing concern to
7    the U.K. every time a significant extraterritorial class action is brought in the U.S."  Brief for
8    United Kingdom as Amicus Curiae at 15-16, *Toshiba Corp.* v. *Auto. Indus. Pension Trust Fund*,
9    No. 18-486 (U.S. Dec. 4, 2018) ("U.K. Toshiba Br.") (Ex. 2).

10    **Comity.**  As a second alternative, the court should dismiss the Section 90A claim under
11    adjudicatory comity for the same reasons it could dismiss on *forum-non-conveniens* grounds.[3]

12                        *        *        *

13    It is important to bear in mind what really is going on here:  Because the public float of
14    Barclays' U.S.-traded ADRs is much lower than Barclays' common shares traded on the
15    London Stock Exchange, counsel for the court-appointed lead plaintiff, Teamsters, invited
16    St. Louis to join this lawsuit in order to inflate potential damages.  And St. Louis is desperate to
17    transform its now abandoned allegations of misstatements and omissions into a "dishonest
18    delay" claim to get around the English law requirement to prove reliance—a requirement that
19    would make it impossible to assert English law securities claims on a class basis in a U.S. court,
20    because individual issues of reliance would predominate over common issues under
21    Rule 23(b)(3).  Because of substantive and procedural differences between U.S. and English
22    law—including the U.S.'s opt-out class procedure and the absence of a loser-pays rule—if this
23    Court allows St. Louis to proceed in this Court with a misstatement claim masquerading as a
24    dishonest delay claim, that would create a powerful incentive for all future claimants to file
25    Section 90A claims in this Court, rather than in the forum that Parliament intended (the English

---

26
27    [3] Barclays submits that lead plaintiff, Teamsters Local 237 ("Teamsters"), fails to plead a
       Section 10(b) claim for the reasons explained in its motion to dismiss and motion for
       reconsideration.  (ECF Nos. 58, 92.)  Barclays will not repeat those arguments here, but
28     preserves all rights.

High Court).  The Court should not countenance Teamsters' and St. Louis' litigation tactics.

## BACKGROUND

### A.    Factual Background

On December 1, 2015, Barclays hired Staley as CEO.  (SAC ¶ 11.)  In July 2019, Epstein "was arrested on federal charges of sex trafficking" (*id.* ¶ 13), and "media attention turned to the business associates and friends of Epstein," including Staley (*id.* ¶ 14).

St. Louis alleges that Barclays and Staley made numerous statements about the "professional" nature of Staley and Epstein's relationship, which St. Louis alleges were false and misleading by omitting the "close, personal" nature of their relationship.  (*Id.* ¶ 24.)  In total, St. Louis alleges that Barclays and Staley made ten false or misleading statements that purportedly downplayed the closeness of Staley's relationship with Epstein:

- On July 22, 2019, a Barclays spokesperson was quoted in a *New York Times* article as stating that "Mr. Staley has never engaged or paid fees to Mr. Epstein to advise him, or to provide professional services, either in his various roles at JPMorgan, or personally."  (*Id.* ¶ 53.)

- On February 13, 2020, Barclays stated that "Mr. Staley developed a professional relationship with Mr. Epstein."  (*Id.* ¶ 69.)

- Also on February 13, 2020, Staley reiterated his "professional" relationship with Epstein three separate times:  during Barclays' earnings call, and in interviews with *Bloomberg Television* and the *Evening Standard*.  (*Id.* ¶¶ 71, 72, 74.)

- On April 3, 2020, Barclays stated that "[t]he Board's governance processes were rigorously followed" and that "Jes [Staley] retains the full confidence of the Board."  (*Id.* ¶ 77.)

- On February 18, 2021, Barclays stated its "conclusions [regarding Staley] remain unchanged, in relation to the investigations by [the U.K. securities regulator]."  (*Id.* ¶ 78.)

- On November 1, 2021, Barclays issued a press release announcing the FCA's "preliminary conclusions" of its "investigation into Mr Staley's characterization to Barclays of his relationship with the late Mr Jeffrey Epstein and the subsequent description of that relationship in Barclays' response to the FCA."  (*Id.* ¶ 83.)  As

Barclays stated, "[i]n view of those conclusions, and Mr Staley's intention to contest them, the Board and Mr Staley have agreed that he will step down." (ECF No. 59-3 at 11.) St. Louis alleges that the letter falsely stated that "the investigation makes no findings that Mr Staley saw, or was aware of, any of Mr Epstein's alleged crimes, which was the central question underpinning Barclays' support for Mr Staley following the arrest of Mr Epstein in the summer of 2019." (SAC ¶ 83.)

- On November 12, 2021, Barclays reiterated that "the investigation makes no findings that Mr Staley saw, or was aware of, any of Mr Epstein's alleged crimes." (*Id.* ¶ 86.)

- On November 28, 2021, the media reported that Barclays' chairman had told a Barclays investor that "once you read the final report you will have questions for us because it makes for uncomfortable reading." (*Id.* ¶ 87.)[4]

St. Louis expressly alleges that each of these statements was "materially false and misleading when made." (*Id.* ¶¶ 56, 81, 91, 101.) To transform these alleged misstatements into a dishonest delay claim, St. Louis alleges that Barclays had "knowledge of the truth that contradicted [its] public statements" and "dishonestly delayed" disclosing that its statements were untrue. (*Id.* ¶ 114.)

Nearly two years after Staley left Barclays, on October 12, 2023, the FCA concluded that it was standing by its November 2021 preliminary determination—that Staley had mischaracterized the nature of his relationship with Epstein to the FCA and that he mischaracterized it to Barclays. (*See* SAC ¶ 104.) As the FCA stated, "Mr Staley recklessly approved a letter sent by Barclays to the FCA, which contained two misleading statements, about the nature of his relationship with Jeffrey Epstein and the point of their last contact." (*Id.*) The FCA also concluded that Barclays had no knowledge of Staley's misconduct, finding that Staley "misled both the FCA and the Barclays Board about the nature of his relationship with Mr Epstein." (*Id.*) It emphasized that Barclays had "relied on information supplied by Mr Staley," and that Staley "was the only person at Barclays who knew the full extent of his personal relationship with Mr Epstein and the specific timings of his contact with him." (*Id.*)

---

[4] St. Louis also alleges that Barclays' 2019, 2020, and 2021 annual reports disclosed that it is "subject to enquiries and examinations" and "is cooperating with the relevant authorities." (*Id.* ¶ 70, 79, 89.)

Barclays reported these developments in a press release the same day. (*Id.* ¶ 125.) That press release stated: "The [FCA Decision] finds that Mr Staley acted recklessly in approving a letter dated 8 October 2019 from Barclays to the FCA regarding his relationship with Jeffrey Epstein (which the RDC [Regulatory Decisions Committee] concluded was misleading)." (*Id.*) That day, the price of Barclays' ordinary stock price fell 3.12%. (*Id.* ¶ 127.)

## B.    Procedural History

On June 11, 2024, the Court appointed Teamsters to be lead plaintiff of a putative class asserting federal securities fraud claims based on ADRs purchased on the New York Stock Exchange. (ECF No. 31 at 4, 8-9.) When Teamsters filed its Amended Complaint on August 12, 2024, it invited St. Louis to join its lawsuit to assert a novel English law claim based on ordinary shares purchased on the London Stock Exchange. (ECF No. 52 ¶¶ 152-62.)

On June 24, 2025, this Court sustained Teamsters Section 10(b) claim, but dismissed St. Louis' dishonest delay claim under English law. As the Court explained, "Plaintiffs' position . . . that Defendants knew what the FCA ultimately concluded earlier . . . cannot support a theory of dishonest delay." (Order at 23.) The Court granted St. Louis leave to amend. (*Id.*)

On July 24, 2025, St. Louis filed a Second Amended Complaint that tries to re-plead a dishonest delay claim. (SAC ¶¶ 163-71.) St. Louis alleges that Barclays had "knowledge" of "Staley's close relationship with Epstein" that "contradicted [its] public and false assurances to investors about the nature of th[at] relationship," but "dishonestly delayed" "publicly correct[ing] [its] public misstatements." (*Id.* ¶¶ 113-14, 117, 166.) As described below, the Second Amended Complaint does not adequately plead a dishonest delay claim.

## ARGUMENT

## I.    Section 90A's Dishonest Delay Provision is a Narrow Gap-Filler That has Rarely been Litigated in England.

Before addressing St. Louis' fatally flawed theory, it is important to set out the background and parameters of a Section 90A dishonest delay claim. In the analogous context of addressing novel state law claims, the Ninth Circuit has stressed that "[f]ederal courts . . . must 'proceed with caution' when making pronouncements about state law, and are in a 'particularly

1   poor position' to endorse a 'policy innovation' in a state's law absent an 'authoritative signal

2   from the legislature or the courts' of that state." *Jensen* v. *U.S. Tennis Ass'n*, 2025 WL 707447,

3   at *2 (9th Cir. Mar. 5, 2025) (internal citations omitted).  In short, a federal court cannot "blaze

4   new and unprecedented jurisprudential trails as to state [or foreign] law." *Doe* v. *Trs. of Bos.*

5   *Coll.*, 942 F.3d 527, 535 (1st Cir. 2019).  The Court should reject St. Louis' invitation to do so.

6         Both parties' English law experts agree that the dishonest delay claim is a narrow

7   provision that Parliament enacted to fill a liability gap in the baseline provisions governing false

8   statements or omissions—namely, a situation where an issuer makes "statements which were

9   accurate but late, ie should have been disclosed earlier under" a mandatory disclosure

10  obligation.  (ECF No. 69-1 ¶ 76; Moore ¶ 57.)  Because the omissions provision reaches only an

11  "omission[] 'from the statement which is made,'" a new provision—one for dishonest delay—

12  was needed to catch a situation where the issuer "fail[s] to make any statement at all." *Allianz*

13  *Funds Multi-Strategy Trust* v. *Barclays* [2024] EWHC 2710 (Ch), at ¶ 47 (Moore Ex. 2)

14  (quoting Davies report).[5]  Thus, as St. Louis' English law expert states, "[t]he introduction of

15  dishonest delay claims was intended to plug this gap."  (ECF No. 69-1 ¶ 76.)  Moreover,

16  because "it is difficult to see how [Section 90A's] requirement for reliance 'on the information

17  in the publication' could be satisfied in relation to the period when no statement had been

18  made," the dishonest delay provision does not include a reliance requirement. *Allianz*, at ¶ 47.

19  The dishonest delay provision was never intended to swallow the standard claims for

20  misstatements and omissions, which impose a strict reliance requirement.  As English courts

21  have explained, reliance is "absolutely central to the statutory form of action."  (Moore ¶ 36

22  (quoting *Manning & Napier* v. *Tesco plc* [2017] EWHC 3296 (Ch), ¶ 29).)  "The requirement of

23  reliance is a significant controlling mechanism in relation to what claims can be brought under

24  section 90A." *Wirral Metro Borough Council* v. *Indivior Plc* [2025] EWCA Civ 40, at ¶ 142

25  (Moore Ex. 2).

26        Throughout the legislative process, the U.K. government recognized that imposing

27  ─────────────────
28  [5] Parliament enacted Section 90A following a review and report "undertaken by Professor Paul Davies KC, a pre-eminent company law academic."  (Moore ¶ 20.)

liability for dishonest delay was a "finely balanced issue," which required "the scope of liability [to] be precisely drawn" to discourage strike suits. *Allianz*, ¶ 54. As explained by the Economic Secretary to the Treasury, "[t]he statutory regime has deliberately been shaped, principally by selecting a demanding fraud test for liability, to minimise the potential for speculative litigation and the corresponding pressure on issuers to settle in order to terminate litigation." *Id.* ¶ 56 (quoting Treasury impact assessment). To further limit liability, the government rejected a "recklessness" scienter standard, *id.* ¶ 54, explaining:

> [I]n order to be successful a claimant would have to demonstrate that a particular statement should have been made at a previous point in time and in fact wasn't, and the act of so doing, was as a result of dishonest behaviour intended to enable a gain to be made or to cause loss to another or expose another to the risk of loss. This is a very high evidential hurdle that claimants will have to satisfy and thus reduces the possibility of opportunistic litigation.

*Id.* ¶ 59 (quoting Treasury report).

Accordingly, as Moore explains, "liability for delay will be engaged where: (i) the issuer was subject to an obligation to publish information by a particular date or within a particular timeframe, possibly a very short one but (ii) that required information was not in fact published until a later date." (Moore ¶ 61 (citing *Allianz*).) Moreover, a claimant must prove that the defendant "knew of the requirement to publish by the earlier date" and "dishonestly" delayed doing do. (*Id.* ¶ 63.)

Only two English courts have evaluated a "dishonest delay" claim, both at the trial-court level. In *Allianz*, Barclays shareholders sued Barclays claiming that Barclays "made false representations" that a particular dark-pool trading platform was protected against high frequency traders. *Allianz*, ¶¶ 10-11. In an attempt to evade the reliance requirement for omissions claims, claimants alleged that Barclays "dishonestly delay[ed]" disclosing the "true facts" about the trading platform. *Id.* ¶ 14. The court rejected that claim, holding that the dishonest delay provision "does not impose liability where no publication has taken place," which precluded a delay claim because Barclays had consistently maintained that the dark-pool "allegations were not justified." *Id.* ¶¶ 12, 138. The court also reasoned that adopting claimants' position would mean that "liability for delay under Paragraph 5 [of Section 90A] will

always overlap with liability for omissions under Paragraph 3," thereby eliminating the reliance requirement, which "is plainly inconsistent with both the Davies Review and the Treasury Consultation." *Id.* ¶ 142.  In short, there are three paths for civil liability under Section 90A: (i) "misleading or untruthful statements" (Paragraph 1); (ii) "deliberately omitting to include facts in [] published information" (Paragraph 3); or (iii) "delaying the publication of information which was accurate but doing so late" (Paragraph 5).  *Id.* ¶ 139.[6]

In *Various Claimants* v. *Standard Chartered PLC* [2025] EWHC 698 (Ch), at ¶¶ 108, 110 (Moore Ex. 2), the court observed that, based on a "textual analysis" of the dishonest delay provision, there were "substantial arguments" against the bottom-line ruling in *Allianz* that "Para. 5 requires the truth to have been published at some later time."  A dishonest delay claim might lie, for example, if the issuer never makes the required disclosure.  The court, however, deferred resolving this "novel point of law" until further factual development.  *Id.* ¶ 119; *see* Moore ¶¶ 27, 65-66 (discussing the unique procedural posture of *Standard Chartered*).  But the court emphasized both the "desire to ensure that there is as little overlap as possible" between omissions claims and delay claims, *Standard Chartered*, ¶ 118, and "the desire to avoid speculative US style securities litigation," *id.* ¶ 90.

## II.   St. Louis' Section 90A Claim Continues to be Fatally Flawed and Should be Dismissed Again.

St. Louis' Section 90A claim fails for three independent reasons.  *First*, St. Louis does not allege that Barclays ever made a disclosure that was accurate but late.  *Second*, St. Louis cannot evade Section 90A's reliance requirement for false statements and omissions by contending that Barclays dishonestly delayed disclosing that its statements were false.  *Third*, St. Louis fails to plead that Barclays intentionally delayed making a disclosure that it had a duty to make.

---

[6] Plaintiffs in the United States asserted Section 10(b) claims against Barclays based on those same statements about its dark-pool, and the Second Circuit emphatically rejected a similar attempt to evade the reliance requirement by trying to transform Barclays' allegedly false statements into omissions claims subject to the so-called *Affiliated Ute* presumption of reliance for omissions.  That presumption does not apply where the "only omission is the truth" that "Barclays' statement . . . was false."  *Waggoner* v. *Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017).

---

A. **St. Louis Does Not Allege That Barclays Made a Disclosure That Was Accurate, But Late.**

This Court previously held that "the information that was delayed in being disclosed must have been ultimately published." (Order at 23.) That is what the English court held in *Allianz*. (*See* Moore ¶¶ 61-67 (discussing *Allianz*'s holding).) A delay claim lies only where there are disclosures that are "accurate but late." (ECF No. 69-1 ¶ 76; Moore ¶ 59.) St. Louis has not fixed that fatal defect. Specifically, it does not allege that Barclays ever made a disclosure admitting that the alleged misrepresentations at issue were false, which is the disclosure that St. Louis says was required. (*See* SAC ¶ 117 (alleging a failure to "publicly correct[] [Barclays'] public misstatements").[7] St. Louis continues to point only to Barclays' October 2023 press release, which, as the Court previously held, was "specifically based on the FCA's final determination and not on what Defendants independently may have known." (Order at 23.) St. Louis has just added more detail from the FCA's Decision (*see* SAC ¶¶ 108-14), which does nothing to save its claim. Because St. Louis has not fixed the pleading failure that the Court previously identified, its claim must be dismissed.

Although another English trial court has questioned the ruling in *Allianz*—without taking any position one way or the other (*supra* 10)—that is a far cry from the "potent evidence" that is required before this Court may "endorse a 'policy innovation' in" English law. *Jensen*, 2025 WL 707447, at *2. Accordingly, there is no basis for this Court to change its prior ruling.

B. **St. Louis Cannot Recast a Misstatement or Omissions Claim as a Dishonest Delay Claim To Evade the Reliance Requirement.**

St. Louis functionally concedes that it seeks to evade the requirement to plead reliance for a misstatement or omissions claim by asserting that Barclays "dishonest[ly] delay[ed]" disclosing that its alleged false and misleading statements were untrue. (SAC ¶¶ 113-14, 117, 136, 166.) American courts do not permit this sleight of hand, and neither would an English court.[8] Specifically, St. Louis asserts that Barclays' duty to make the allegedly delayed

---

[7] As noted (at n.3), Barclays submits that Plaintiffs failed to plead any false or misleading statements.

[8] The Ninth Circuit has rejected this same ploy when plaintiffs try to invoke the *Affiliated Ute* presumption of reliance on omissions claims under the federal securities laws, "because all

1    disclosure arose on July 22, 2019—the day that Barclays made its first alleged false statement

2    that "Mr. Staley has never engaged or paid fees to Mr. Epstein to advise him, or to provide

3    professional services." (SAC ¶¶ 1, 52, 53.) St. Louis effectively asserts that when Barclays

4    made that statement and the nine others it challenges, Barclays knew facts that "contradicted

5    Defendants' public and false assurances" and had a duty to "publicly correct[]" those statements

6    but "dishonestly delayed" doing so. (*Id.* ¶¶ 113, 117, 165-67.) But failing to disclose that a

7    statement is false is not the same as "fail[ing] to make any statement at all"—the situation where

8    a delay claim arises. *Allianz*, at ¶ 47 (quoting Davies report). Rather, what St. Louis alleges is a

9    thinly-disguised "allegation of omission or misstatement," and "the English court would not in

10   [Moore's] view permit a claimant to avoid the need to show individual reliance by seeking to

11   recast it as a 'delay' claim." (Moore ¶ 108(a).)

12        No English court has permitted this. In fact, the U.K. government has emphasized that

13   "reliance is a necessary condition to a claim in the U.K., for which a higher fraud-based

14   standard of liability is designed to reduce the risk of 'unmeritorious claims for large sums' and

15   of 'encourag[ing] defensive and bland reporting.'" U.K. Morrison Br. 17. Against this

16   backdrop, there is no basis whatsoever to presume that an English court would allow this

17   "necessary condition," *id.*—which is "absolutely central to the statutory form of action" (Moore

18   ¶ 36 (quoting *Tesco*))—to be jettisoned through the simple expedient of dressing up a false

19   statement or omissions claim as a delay claim. Indeed, the basis for omitting the reliance

20   requirement from a dishonest delay claim, which is the same for omissions claims under U.S.

21   law—*i.e.*, the "impossible evidentiary burden" of proving reliance on "something that [was]

22   never [said]"—simply does not exist in this situation: "[Barclays'] statements very much

23   happened." *FirstEnergy*, 2025 WL 2331754, at *21.

24        There is a very obvious reason St. Louis is so desperate to evade the reliance

25   _____

26   misrepresentations can be cast as omissions, at least to the extent they fail to disclose which
     facts are not true." *In re Volkswagen "Clean Diesel" Litig.*, 2 F.4th 1199, 1209 (9th Cir. 2021);
     *see also In re FirstEnergy Corp. Sec. Litig.*, ___ F.4th ___, 2025 WL 2331754, at *12 (6th Cir.

27   Aug. 13, 2025) ("Because every misrepresentation includes some sort of 'concealment,' the
     right way to think about *Affiliated Ute* is as a narrow case premised on the conceptual difficulty

28   of proving reliance on a representation that was never made.").

1  requirement:  if it were required to prove reliance, not only would its claim fail, but it could not

2  proceed as a class action in this Court because individual issues of reliance "would defeat

3  predominance and 'preclude certification'" of a class.  *Goldman Sachs Grp., Inc.* v. *Ark. Tchr.*

4  *Ret. Sys.*, 594 U.S. 113, 119 (2021).  In short, St. Louis wants to take advantage of the U.S. class

5  action device that is not available in England in an attempt to increase the alleged value of its

6  claims.  *See* U.K. Toshiba Br. 15-16.  This Court should reject St. Louis' invitation to alter

7  fundamentally the English statutory scheme for securities claims, and make federal courts in

8  California the forum of choice for purchasers of securities traded on the London Stock

9  Exchange seeking to assert English law securities claims against English issuers.  *See Combs* v.

10  *Int'l Ins. Co.*, 354 F.3d 568, 577-78 (6th Cir. 2004) ("[W]hen given a choice between an

11  interpretation of [state] law which reasonably restricts liability, and one which greatly expands

12  liability, [the court] should choose the narrower and more reasonable path."); *Anthem*, 162 F.

13  Supp. 3d at 977 (same).

14          **C.**        **St. Louis Fails To Plead the Requisite Fraudulent Intent.**

15          St. Louis' dishonest delay claim fails for a third reason:  St. Louis merely alleges that

16  Barclays' "delay in publishing information" was "reckless" and a "serious failure of judgment."

17  (SAC ¶ 167.)  But mere "recklessness" is not sufficient for liability for dishonest delay.  As the

18  U.K. Treasury stated, "[a] requirement for recklessness would [] be insufficient" because

19  "[t]here would be considerable uncertainty as to what delay would be considered to be

20  'reckless' for these purposes."  *Allianz*, at ¶ 54 (quoting Treasury report).  Rather, "the person

21  concerned [must be] aware that their conduct would be regarded as dishonest."  *Id.*, at ¶ 59.

22  St. Louis makes no such allegation.[9]  To the extent St. Louis attempts to allege that Barclays

23  was aware of some duty to disclose that it "know[s]" that the FCA will reject the litigation

24  position of its former CEO in a hotly contested regulatory proceeding and delayed disclosing its

_____

25

26  [9] Although St. Louis also parrots the language of the statute by asserting that Barclays' delay "was regarded as dishonest by people who regularly trade on the securities market in question" (SAC ¶ 167), "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice," *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *see Cooper* v. *Tokyo Elec. Power Co. Holdings,* *Inc.*, 960 F.3d 549, 557 (9th Cir. 2020) ("a federal district court will apply its own rules of procedure" to foreign-law claims).

27

28

-13-

belief, no such claim has ever before been recognized by an English court.  (SAC ¶¶ 117, 166.) In that context, it is eminently reasonable that a company should not be required to comment on its view of the evidence until after the regulator makes its final determination.[10]  But again, this Court should not "push[] [English] law 'to new frontiers'" on issues that deeply implicate policy judgments that are better suited for English courts to decide.  *Jensen*, 2025 WL 707447, at *3.

## III.    Alternatively, the Court Should Dismiss St. Louis' Novel Section 90A Claim Under the Doctrine of *Forum Non Conveniens*.

Dismissal is appropriate on *forum-non-conveniens* grounds if (i) an "adequate alternative forum" exists, and (ii) "the balance of private and public interest factors favors dismissal." *Ranza* v. *Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015).  It is hard to imagine a stronger case for *forum-non-conveniens* dismissal.  A Missouri plaintiff that purchased securities traded on the London Stock Exchange seeks to assert a novel English-law claim—which would meaningfully expand the scope of English law—against an English company based on disclosures it made under English law.  The challenged conduct occurred in England, the relevant witnesses largely reside in England or outside the U.S., and St. Louis asks this Court to alter existing English law so that it is significantly easier for people who buy securities in England to assert claims in California than in England.  St. Louis' case has no business being litigated in California.  *See Howe* v. *Goldcorp Invs., Ltd.*, 946 F.2d 944, 951, 953 (1st Cir. 1991) (Breyer, J.) ("the balance of conveniences" favors "the Canadian defendants" "with unusual strength," because the "underlying circumstances involve actions of a Canadian corporation" and "its directors"; "plaintiff's claims implicate duties the defendants owed to the corporation and its shareholders under Canadian law"; and a "significant portion of the adjudication of [the] case will involve tasks most easily and appropriately handled by a Canadian court: interpreting primarily Canadian law and applying it to matters principally of concern to Canada and Canadians").

Indeed, the only connection to this forum is that St. Louis' counsel has brought federal

---

[10] For comparison, even under Section 10(b) where a lesser recklessness standard applies, if "a complaint 'does not present facts indicating a clear duty to disclose' it does not establish 'strong evidence of conscious misbehavior or recklessness.'"  *Stratte-McClure* v. *Morgan Stanley*, 776 F.3d 94, 107 (2d Cir. 2015).

-14-

securities law claims against Barclays in this District on behalf of a different plaintiff that purchased Barclays ADRs on the New York Stock Exchange.  But that is no reason for this Court to adjudicate St. Louis' novel English law claim on behalf of an entirely different putative class.  On the contrary, and keeping in mind that convenience of plaintiff's counsel is not a relevant consideration, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice of forum commands."  *Ayco Farms, Inc.* v. *Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017).  Every relevant factor points to one answer:  St. Louis' claim would be better adjudicated in England.

As the Third Circuit recently explained in affirming dismissal on *forum-non-conveniens* grounds of a Section 90A claim against an English company based on securities purchased on the London Stock Exchange, "there is little sense to allowing a U.S. citizen to [hale] a group of foreign defendants into a U.S. court on transactions having little or nothing to do with this country where there is an available foreign forum significantly better suited to handling the litigation."  *Levien* v. *hibu Plc*, 2021 WL 5742664, at *2 (3d Cir. Dec. 2, 2021).

## A.    England is an Adequate Alternative Forum With a Superior Interest in Adjudicating Novel English Law Securities Claims.

An "alternative forum is deemed adequate if:  (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy."  *Ranza*, 793 F.3d at 1077. That is plainly the case here.  Barclays is amenable to service in England—where it is headquartered—and it is indisputable that English courts provide an adequate forum to adjudicate novel English law claims.  Indeed, the English High Court is the forum that Parliament intended for Section 90A claims.  *See* U.K. Morrison Br. 9-10.

In addition to the adequacy of the alternative forum, "competency to decide the legal questions involved will also be considered."  *Leetsch* v. *Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001).  Here, "[t]he [English] court would be more competent than a United States court to hear the [English law] claim," which "weighs especially heavily in favor of" dismissal.  *Id.* at 1103, 1105.  That is all the more so given that St. Louis' position—that this Court should eliminate Section 90A's reliance requirement by allowing any misstatement or omissions claim

to be recast as a delay claim by contending that the defendants delayed disclosing that they had allegedly lied—is contrary to existing English precedent and would require this Court to make new English law.  As then-judge Ketanji Brown Jackson explained, efforts to change existing foreign law "are better left to courts in those countries."  *In re Air Crash Over S. Indian Ocean*, 352 F. Supp. 3d 19, 41 (D.D.C. 2018); *see also Abad* v. *Bayer Corp.*, 563 F.3d 663, 671 (7th Cir. 2009) (Posner, J.) ("[T]he uncertainty of Argentine law is a compelling reason why this case should be litigated in Argentina. . . . When the decision of a case is uncertain because the orthodox sources of law do not provide adequate guidance . . . , the court asked to decide must make law, in this case Argentine law; and an Argentine court is the more competent maker of Argentine law."); *Alternate Health USA, Inc.* v. *Edalat*, 2023 WL 8732811, at *1 (9th Cir. Dec. 19, 2023) ("the statutory claims [] raise novel issues about how the Securities Transfer Act of British Columbia would be interpreted by a Canadian court").[11]

In its prior decision, the Court stated that an alternative forum is adequate only if "'the entire case and all the parties can come within the jurisdiction of that forum.'"  (Order at 21 (quoting *Gutierrez* v. *Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011) ).)  The court in *Gutierrez* actually stated that an "alternative forum *ordinarily* exists . . . when the entire case and all parties can come within the jurisdiction of that forum."  640 F.3d 1029 (emphasis added).  There is no hard-and-fast rule.  On the contrary, "*[f]orum non conveniens* is a doctrine that necessarily requires great flexibility"; it is not "an all-or-nothing doctrine."  *Scot. Air Int'l, Inc.* v. *Brit. Caledonian Grp., PLC*, 81 F.3d 1224, 1234-35 (2d Cir. 1996); *see Tongfang Glob. Ltd.* v. *Element Television Co.*, 2020 WL 4354173, at *3 (C.D. Cal. June 22, 2020) (same; quoting *Scot. Air*).  That is why courts routinely hold that it is permissible to "dismiss[] part of [a] suit for *forum non conveniens*."  *Allarcom Pay Television, Ltd.* v. *Home Box Off., Inc.*, 2000 WL 6058, at *1 (9th Cir. 2000); *see In re Orland Ltd.*, 2022 WL 885167, at *6-7 (B.A.P. 9th

---

[11] That St. Louis is now asking this Court to change existing English law is reason alone to re-evaluate the Court's prior *forum-non-conveniens* decision.  *See Cooper* v. *Tokyo Elec. Power Co.*, 860 F.3d 1193, 1210 n.12 (9th Cir. 2017) (affirming denial of dismissal, but observing that "further developments in the district court may counsel in favor of dismissing Plaintiffs' lawsuit in favor of a Japanese forum"); *Cooper*, 960 F.3d at 566 (affirming dismissal "based on new developments" that "tilted the scales towards dismissal" in favor of Japanese forum).

MEM. OF POINTS & AUTHORITIES IN SUPPORT OF DEFS.' MOT. TO DISMISS

Cir. Mar. 25, 2022) (rejecting that "a foreign forum is available only when the entire case and all parties can come within its jurisdiction," because "the [*Gutierrez*] panel's use of the word 'ordinarily' left intact a court's discretion, in the proper circumstances, to retain some claims yet dismiss others on *forum non conveniens grounds*"); *SPS Techs., LLC* v. *Briles Aerospace, Inc.*, 2020 WL 12740596, at *7 (C.D. Cal. Jan. 17, 2020) (same).[12]

       This case cries out for the flexible approach because St. Louis, at the invitation of Teamsters, injected itself into this lawsuit in an attempt to "craftily preemptively defeat any [] potential [*forum non conveniens*] motion." *PT United Can Co.* v. *Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998). The Court appointed Teamsters to be lead plaintiff of a putative class asserting federal securities fraud claims based on ADRs purchased on the New York Stock Exchange. (ECF No. 31 at 4, 8-9; ECF No. 18 at 1-3.) Teamsters' counsel then invited St. Louis to join its lawsuit to assert a novel English law claim based on ordinary shares purchased on the London Stock Exchange. The reason St. Louis seeks to litigate its novel English law claim in California rather than in its natural forum is obvious: (i) unlike in England, where the loser pays attorney's fees (Moore ¶ 149; U.K. Toshiba Br. 14), there is no financial risk for bringing unmeritorious claims in the U.S.; and (ii) the U.S. class action device can result in "'potentially ruinous liability'" that "accordingly places pressure on the defendant to settle even unmeritorious claims," *Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010) (Ginsburg, J., dissenting).[13] Thus, as the English court has observed, "[a]s a moth is drawn to the light, so is a litigant drawn to the United States." *Smith Kline & French Lab. Ltd.* v. *Bloch*, [1983] 1 W.L.R. 730, 733 (C.A.).

---

[12] *See Siswanto* v. *Airbus Ams., Inc.*, 2016 WL 7178460, at *14 (N.D. Ill. Dec. 9, 2016) ("Dismissal of some, but not all, defendants, claims, or even plaintiffs upon *forum non conveniens* grounds is not atypical.") (collecting cases); *King* v. *Cessna Aircraft Co.*, 562 F.3d 1374, 1385 (11th Cir. 2009) ("the district court did not abuse its discretion in dismissing the European Plaintiffs on the grounds of *forum non conveniens*"); *Scot. Air*, 81 F.3d at 1234-35 (allowing the district court to retain a contempt claim and dismiss other claims on *forum non conveniens* grounds); *Tongfang*, 2020 WL 4354173, at *3 (dismissing counterclaims).

[13] Although some other countries "permit opt-out class actions (e.g. Australia . . .), [they] always apparently combine it with their normal 'loser pays' litigation cost rules in order to reduce the risks of questionable class actions. Thus, the combination of opt-out class actions and no litigation cost recovery appears to be a unique feature of the U.S. system." U.K. Toshiba Br. 16.

1    But even if a partial *forum-non-conveniens* dismissal were somehow improper (it is not),

2    "where a dismissal pursuant to the doctrine of *forum non conveniens* is warranted for some

3    plaintiffs, there exists sufficient cause to sever otherwise properly joined parties." *Blum* v. *Gen.*

4    *Elec. Co.*, 547 F. Supp. 2d 717, 724 (W.D. Tex. 2008); *see Esa* v. *NortonLifeLock, Inc.*, 2022

5    WL 14002189, at *1 (9th Cir. Oct. 24, 2022) (affirming dismissal where district court severed

6    and dismissed state law claims on *forum-non-conveniens* grounds, while retaining federal

7    securities fraud claim).    That such a partial dismissal "results in 'fragmented or duplicated'

8    litigation does not turn upon [] grant[ing] [Barclays'] motion, but rather [St. Louis'] 'own

9    decision to file suit[] outside the proper forum.'"    *Siswanto*, 2016 WL 7178460, at *14.

10    **B.      St. Louis' Choice of a California Forum is Entitled to Little Deference.**

11    St. Louis' choice of a California forum cannot overcome the lack of a substantial nexus

12    with California.   Whatever deference courts typically give to a plaintiff's choice of forum, it is

13    substantially weakened where, as here, a non-resident plaintiff brings a putative class action

14    outside its home forum.   *First*, a "U.S. citizen plaintiff is entitled to less deference in his choice

15    of forum if he does not reside in that forum."   *Ayco Farms*, 862 F.3d at 950.   Here, St. Louis

16    resides in Missouri, not California.   *Second*, the reduced deference owed to a non-resident

17    plaintiff is given even "less weight" where the plaintiff seeks to "represent[] a class."   *Lou* v.

18    *Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).   Because "there are hundreds of potential plaintiffs,

19    'all of whom could with equal show of right, go into their many home courts, the claim of any

20    one plaintiff that a forum is appropriate merely because it is his home forum is considerably

21    weakened.'"   *Hoefer* v. *U.S. Dep't of Com.*, 2000 WL 890862, at *2 (N.D. Cal. June 28, 2000)

22    (quoting *Koster* v. *(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).   "[T]he

23    reduced weight on plaintiff's choice of forum in class actions serves as a guard against the

24    dangers of forum shopping, especially when a representative plaintiff does not reside within the

25    district."   *Greben* v. *Cinmar, LLC*, 2025 WL 1765916, at *3 (C.D. Cal. May 30, 2025).   Indeed,

26    "[f]orum shopping has the potential to seriously undermine the ability of nations to regulate

27    domestic securities and set the rules governing litigation between private parties regarding such

28    securities within their national jurisdictions," and "[i]n the [U.K.] Government's view, plaintiffs

1    should not be allowed to exploit differences between national legal systems and choose the

2    litigation rules that best suit their interests in a particular case." U.K. Toshiba Br. 18.

3        Accordingly, where, as here, "the operative facts have not occurred within the forum and

4    the forum has no interest in the parties or the subject matter, [the plaintiff's] choice is entitled to

5    only minimal consideration." *Lou*, 834 F.2d at 739.

6        **C.    The Private Interest Factors Favor Dismissal.**

7        The private interest factors are:  "(1) the residence of the parties and the witnesses;

8    (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of

9    proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing

10   witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems

11   that make trial of a case easy, expeditious and inexpensive.'"  *Ayco Farms*, 862 F.3d at 950.

12   These factors favor dismissal.

13       ***1.  None of the Parties or Relevant Witnesses Reside in California.***  St. Louis resides in

14   Missouri and Barclays (the only defendant on the Section 90A claim) resides in England.

15   Further, many of the witnesses that St. Louis identified in the Rule 26(f) report and initial

16   disclosures reside outside the United States.  (ECF No. 100 at 6; Ex. 3 at 5-13.)  Because

17   "material and important witnesses are likely to reside in the U.K. or outside the U.S," this

18   "factor favors dismissal."  *Bundy* v. *Nirvana LLC*, 2021 WL 5822127, at *7 (C.D. Cal. Oct. 21,

19   2021); *see Levien* v. *hibu plc*, 475 F. Supp. 3d 429, 444 (E.D. Pa. 2020) ("England is, by far, the

20   more convenient forum for the parties and the witnesses" to litigate Section 90A claims based

21   on securities issued by an English company traded on the London Stock Exchange.).  It is true,

22   as the Court previously noted, that Barclays "operates internationally" through its subsidiaries

23   and some members of the putative class who bought Barclays common shares traded on the

24   London Stock Exchange might "reside in the United States."  (Order at 22.)[14]  But those facts

25   are irrelevant to the *forum-non-conveniens* analysis.  The residence factor focuses on the

26   location of Barclays' "principal place[] of business" (here, England), *Vivendi SA* v. *T-Mobile*

27

28   ---
     [14] Any U.S. person that bought Barclays ADRs traded on the New York Stock Exchange is a member of the separate putative Section 10(b) class represented by Teamsters.

1    *USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009), so it does not matter that Barclays, through its

2    subsidiaries, has a global presence.  What is more, St. Louis' claim concerns Barclays' conduct

3    and disclosures in England under English law during an investigation by its primary securities

4    regulator in the U.K.  Further, the fact that some putative class members might reside in the

5    United States is irrelevant, because until a class is certified, the case "includes only the claims of

6    the named plaintiff."  *Moser* v. *Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021).

7        ***2. California is Not a Convenient Forum.***  The Court previously assumed that it would

8    be inconvenient for Barclays "to have to litigate two lawsuits concurrently."  (Order at 22.)[15]

9    Respectfully, Barclays disagrees with this Court's assumption about what is more convenient

10   for Barclays.  In any event, assumptions about what is convenient for the moving party are not a

11   relevant consideration.  *See Doud* v. *Kochai*, 2013 WL 5313701, at *4 (N.D. Cal. Sept. 23,

12   2013) ("[T]his District would appear to be more convenient for Defendants, yet this factor is not

13   relevant for them as they are the ones that seek to have the case brought in Afghanistan.");

14   *Chang* v. *Baxter Healthcare Corp.*, 599 F.3d 728, 735 (7th Cir. 2010) (to the same effect).

15       ***3. Relevant Documents are Primarily Located in England.***  The Court previously held

16   that this factor "weighed against dismissal" because documents are "likely digital."  (Order

17   at 22.)  But as even St. Louis now acknowledges, U.K.'s "data privacy" laws will complicate the

18   transfer of documents to the United States.  (ECF No. 100 at 5.)  At any rate, the bare fact that

19   "electronic transmission of documents" minimizes the cost of document production "neither

20   precludes nor favors dismissal," and cannot outweigh all of the other factors, especially the fact

21   that "this case presents issues of first impression regarding [English law]," which "weigh[s]

22   heavily in favor of dismissal."  *Alternate Health USA Inc.* v. *Edalat*, 2022 WL 767573, at *8, 11

23   (C.D. Cal. Mar. 14, 2022).

24       Moreover, St. Louis already has made clear that it will seek communications between

25   Barclays and its primary U.K. regulator, the FCA.  (ECF No. 100 at 6.) That will present a

26   whole host of issues, including coordination with the FCA—a foreign governmental agency

27

28   _____

[15] Because St. Louis is not a member of the putative class asserting federal securities law claims, it will not be subject to duplicative litigation under any circumstance.

over which this Court has no jurisdiction—as well as related "confidentiality and privilege issues." (*Id.* at 5.)  That the "court does not have the authority to order" non-parties in the U.K. to produce documents "weighs strongly in favor of dismissal."  *Dibdin* v. *S. Tyneside NHS Healthcare Tr.*, 2013 WL 327324, at *5 (C.D. Cal. Jan. 29, 2013).

    ***4.  Unwilling Witnesses Cannot Be Compelled To Testify.***  The Court previously held that this factor "weighed against dismissal" because Barclays did "not provide specific details." (Order at 22.)  *But see Herbert* v. *VWR Int'l, LLC*, 686 F. App'x 520, 521 (9th Cir. 2017) ("The Supreme Court and Ninth Circuit have rejected the notion" that "witnesses" must "be identified with a high degree of specificity.").  Now, however, St. Louis has identified what it considers the key witnesses in its 26(f) report and initial disclosures.  Many of those witnesses, often former employees, reside well beyond this Court's "100 mile[]" subpoena power.  Fed. R. Civ. P. 45(c)(1); *see* ECF No. 100 at 6; Ex. 3 at 5-13.  The Court also noted that Teamsters might wish to call those same witnesses at a trial on its Section 10(b) claim.  (Order at 22.)  But the point still holds:  because those witnesses are outside the Court's compulsory process, they cannot be compelled to testify at a Section 10(b) trial either.  *See Contact Lumber Co.* v. *P.T. Moges Shipping Co.*, 918 F.2d 1446, 1451 (9th Cir. 1990) (affirming dismissal where "key witnesses . . . are all located in the Philippines," and thus parties "cannot compel these witnesses to appear before U.S. courts"); *Aenergy, S.A.* v. *Republic of Angola*, 31 F.4th 119, 133 (2d Cir. 2022) ("'[T]he Angolan government is at the heart of this case' and . . . [i]n light of their official roles, it is 'unlikely that many would be willing to travel to New York to testify.'").

    ***5.  Cost of Bringing Witnesses To Trial.***  It would be less expensive and more convenient to bring U.K. resident witnesses to a trial in England than it would to bring them to a trial in California.  *See Sysco Mach. Corp.* v. *Cymtek Sols., Inc.*, 124 F.4th 32, 42 (1st Cir. 2024) ("'[T]he record and common sense' support[] the district court's conclusion that '[l]itigating in the U.S. would involve greater overall costs for . . . flights[] and lodging for witnesses testifying at trial as well as for depositions.'"); *Unitednet Ltd.* v. *Tata Commc'ns Am., Inc.*, 112 F.4th 1259, 1270 (10th Cir. 2024) (despite "availability of videoconferencing technology, . . . the private-interest factors, on balance, still favored dismissal because the bulk of witnesses are located

1   abroad"); *Ford* v. *Brown*, 319 F.3d 1302, 1311 (11th Cir. 2003) ("that prominent witnesses are

2   located in England only underscores the point that Florida is an inappropriate forum").

3        **6.  *Enforceability of a Judgment.*** As the U.K. government has stated, "[s]erious doubt

4   exists as to whether a judgment or court-approved settlement in a U.S. securities class action

5   would bind a non-U.S. plaintiff who did not opt out of the class."  (U.K. Morrison Br. 28; *see*

6   Moore ¶¶ 158-78.)  It therefore would be fundamentally unfair to litigate a Section 90A class

7   action in this Court, given the potential to "deprive [Barclays] of the benefits of the class action

8   device to which it is entitled under Rule 23—namely, the full preclusive effect of the class

9   action judgment."  *In re Citizens Bank, N.A.*, 15 F.4th 607, 620-21 (3d Cir. 2021).  Courts must

10  "avoid situations" that "leav[e] the defendant liable on class claims (if he loses . . .) without

11  protecting him (if he wins)."  *Kerkhof* v. *MCI WorldCom, Inc.*, 282 F.3d 44, 55 (1st Cir. 2002).

12       **7.  *Practical Problems Make Litigating in California Inefficient.*** Under the last

13  catch-all prong, courts have held that "litigating in [California] is likely to be impractical and

14  inefficient" where, as here, "most of the key witnesses in this case live [overseas]."  *Dickens* v.

15  *NXP Semiconductors*, 703 F. Supp. 3d 1013, 1021 (N.D. Cal. 2023).

16       **D.    The Public Interest Factors Favor Dismissal.**

17       The public interest factors are:  "(1) the local interest of the lawsuit; (2) the court's

18  familiarity with governing law; (3) the burden on local courts and juries; (4) the amount of

19  congestion in the court; and (5) the costs of resolving a dispute unrelated to the forum."  *Ayco*

20  *Farms*, 862 F.3d at 950 (brackets omitted).  These factors favor dismissal.

21       **1.  *California Has No Interest in a Missouri Plaintiff's Lawsuit Under English Law***

22  ***Against an English Issuer Over Securities Traded on the London Stock Exchange.*** England

23  has a far greater interest in determining what information an English company must disclose

24  under English law during on ongoing investigation by its primary U.K. securities regulator—

25  something no English court has addressed—and whether the reliance element of an English law

26  claim can be avoided simply by re-labeling misstatement or omissions claims as a delay claim

27  by arguing that the defendant failed to disclose that its statements were allegedly misleading.

28  *See Dibdin*, 2013 WL 327324, at *6 ("England has a very strong interest in this case" because

1    "the events giving rise to Plaintiff's claims occurred there" and "Plaintiff's claims challenge the

2    integrity of two U.K. governmental institutions . . . that are integral to that country's healthcare

3    system"); *Lou*, 834 F.2d at 739 (affirming transfer where "the operative facts have not occurred

4    within the forum and the forum has no interest in the parties or subject matter").  The U.K.

5    government has expressly invoked its "strong" sovereign interest in "protecting its ability to

6    implement its own regulations for securities registered in the U.K."  U.K. Toshiba Br. 2.

7    Indeed, following the first and only trial of a Section 90A claim in England, Justice Hildyard

8    lamented that "the effect of the US proceedings in this, *the natural forum for these claims*, has

9    been considerable."  *ACL Netherlands BV* v. *Lynch*, [2022] EWHC 1178 (Ch), ¶ 426 (emphasis

10   added) (Moore Ex. 2).

11          On the other side of the ledger, as then-Judge Breyer observed, there is no U.S. policy

12   that "seek[s] so strongly to protect Americans who bought their shares *abroad* from

13   misrepresentations . . . primarily taking place *abroad* that a court may not require an American

14   shareholder to bring his case abroad."  *Howe*, 946 F.2d at 953; *see also* U.K. Morrison Br. 27

15   ("Investors knowingly buy into the financial, legal and regulatory regimes of the jurisdictions in

16   which they purchase or trade securities.  Inherent in their investment decisions—and in the

17   global flow of capital—is a choice of varying safeguards.  The market will align incentives

18   appropriately if issuers are held responsible by the jurisdiction in which they have issued their

19   securities and if investors know they can seek redress for harms in the jurisdiction in which they

20   purchased or traded securities.").

21          **2.  *This Court Lacks Familiarity with Novel Issues of First Impression Under English***

22   ***Law.***  Having a "case tried in a forum familiar with the law that governs the action . . . weighs

23   especially heavily in favor of the [English] courts."  *Leetsch*, 260 F.3d at 1105.  Because the

24   contours of a dishonest delay claim under English law are unsettled, that is a powerful reason to

25   dismiss the case on *forum-non-conveniens* grounds and leave it to the English court to

26   adjudicate any case.  *See Martinez* v. *E.I. DuPont de Nemours & Co.*, 86 A.3d 1102, 1106-07

27   (Del. 2014) ("novel" issues of foreign law are "more appropriately" addressed to "courts of the

28   only sovereign whose law is at stake").  Again, that St. Louis is now asking this Court to change

-23-

English law—which it did not do in its prior pleading—is reason alone to dismiss on *forum-non-conveniens* grounds.  *See Alternate Health*, 2023 WL 8732811, at *1 ("novel issues" of Canadian law should be decided "by a Canadian court").

**3. & 5.  Litigating English Law Claims Will Burden this Court and a California Jury.**
"The burden on local courts and juries unconnected to the case and the costs of resolving a dispute unrelated to the forum also favor dismissal."  *Vivendi*, 586 F.3d at 696; *see Instituto Mexicano del Seguro Soc.* v. *Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 361 (7th Cir. 2022) ("Nor can we ignore the impropriety of asking an Indiana jury to sit on this case and apply Mexican law to events from which they are 'highly attenuated.'").

**4. Court Congestion.**  "The Central District of California is 'one of the busiest districts in the nation.'"  *Alternate Health*, 2022 WL 767573, at *11.  As the Ninth Circuit has recently held, "a trial in the United Kingdom would be 'speedier' than one in the Central District [of California]."  *Bundy* v. *Nirvana LLC*, 2023 WL 4311613, at *2 (9th Cir. July 3, 2023).

**IV.    Alternatively, the Court Should Dismiss St. Louis' Section 90A Claim Under Adjudicatory Comity.**

"[C]omity is [] concerned with maintaining amicable working relationships between nations, a shorthand for good neighbourliness, common courtesy and mutual respect between those who labour in adjoining judicial vineyards."  *Mujica* v. *AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (quotations omitted).  In particular, "adjudicatory comity" is "a discretionary act of deference by a [U.S.] court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state."  *Id.* at 599.  "[C]ourts have considered a range of factors when deciding whether to abstain from exercising jurisdiction due to a past or potential judicial proceeding elsewhere," which largely overlap with the *forum-non-conveniens* factors.  *Id.* at 600-01. Although the analysis "is circumstance-dependent and not susceptible to mechanical application," *id.* at 608, the court considers:  (i) "where the conduct in question took place"; (ii) "whether any of the parties are United States citizens or nationals, and also whether they are citizens of the relevant state"; (iii) "the importance of the issue to [] United States" such as "whether the conduct is a regulatory violation" (of slight interest) "or is a violation of

1  international norms against torture, war crimes, or slavery" (of stronger interest); (iv) any other

2  U.S. "foreign policy" or "public policy" interests, such as jeopardizing bilateral negotiations (a

3  reason to abstain) or "ensuring the enforceability of valid debts . . . owed to United States

4  lenders" (a reason to maintain jurisdiction); (v) an "analysis of foreign interests"; and (vi) the

5  "adequacy of the foreign forum." *Id.* at 604-08.

6      As in *Mujica*, the court should decline to exercise jurisdiction under the doctrine of

7  adjudicatory comity: "the strength of the U.S. government's interest in respecting [England's]

8  judicial process, the weakness of California's interest in this case, the strength of [England's]

9  interests in serving as an exclusive forum" for novel claims under English law governing

10 disclosure obligations of English issuers of securities whose shares trade on the London Stock

11 Exchange, and "the adequacy of the [English] courts as an alternative forum" for adjudication of

12 English law securities claims. 771 F.3d at 615; *see Paraschos* v. *YBM Magnex Int'l, Inc.*, 130

13 F. Supp. 2d 642, 647 (E.D. Pa. 2000) ("[T]he United States does not have an insurmountable

14 interest in regulating Canadian corporations and investors who choose to purchase securities

15 that are clearly regulated by Canadian law or in applying U.S. law when its application was not

16 contemplated."); *Howe*, 946 F.2d at 953 (same).

17                                **CONCLUSION**

18     The Court should dismiss St. Louis' Section 90A claim with prejudice.

19

20

21

22

23

24

25

26

27

28

1   Dated:  September 5, 2025

2                                                   /s/ Adam S. Paris
                                                    Adam S. Paris (SBN # 190693)
3                                                   (parisa@sullcrom.com)
                                                    SULLIVAN & CROMWELL LLP
4                                                   1888 Century Park East
                                                    Los Angeles, California 90067
5                                                   Telephone:     (310) 712-6600
                                                    Facsimile:     (310) 712-8800
6
                                                    Jeffrey T. Scott (*pro hac vice*)
7                                                   (scottj@sullcrom.com)
                                                    Matthew J. Porpora (*pro hac vice*)
8                                                   (porporam@sullcrom.com)
                                                    SULLIVAN & CROMWELL LLP
9                                                   125 Broad Street
                                                    New York, New York  10004
10                                                  Telephone:     (212) 558-4000
                                                    Facsimile:     (212) 558-3558
11
                                                    Peter B. Morrison (SBN # 230148)
12                                                  (peter.morrison@skadden.com)
                                                    SKADDEN, ARPS, SLATE, MEAGHER &
13                                                  FLOM LLP
                                                    2000 Avenue of the Stars, Suite 200N
14                                                  Los Angeles, California 90067
                                                    Telephone:     (213) 687-5000
15                                                  Facsimile:     (213) 687-5600

16                                                  Scott D. Musoff (*pro hac vice*)
                                                    (scott.musoff@skadden.com)
17                                                  Boris Bershteyn (*pro hac vice*)
                                                    (boris.bershteyn@skadden.com)
18                                                  Lara A. Flath (*pro hac vice*)
                                                    (lara.flath@skadden.com)
19                                                  SKADDEN, ARPS, SLATE, MEAGHER &
                                                    FLOM LLP
20                                                  One Manhattan West
                                                    New York, New York 10001
21                                                  Telephone:     (212) 735-3000
                                                    Facsimile:     (212) 735-2000
22
                                                    *Attorneys for Defendant Barclays PLC*
23

24

25

26

27

28

1

**CERTIFICATE OF COMPLIANCE**

2

      The undersigned, counsel of record for Barclays PLC, certifies that this brief contains

3

25 pages, which complies with the page limit set in Section VIII.C of the Court's Civil Standing

4

Order.

5

6

Dated:  September 5, 2025               SULLIVAN & CROMWELL LLP

7

8

                        /s/ Adam S. Paris
                        Adam S. Paris

9

                        *Attorney for Defendant Barclays PLC*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28