# EXHIBIT 4

**AMENDED AND RESTATED MEMORANDUM OF UNDERSTANDING CONCERNING CONSULTATION, COOPERATION AND THE EXCHANGE OF INFORMATION RELATED TO MARKET OVERSIGHT AND THE SUPERVISION OF FINANCIAL SERVICES FIRMS**

In 2006, in view of the growing globalization of the world's financial markets and the increase in cross-border operations and activities of financial services firms, including large complex financial conglomerates, the United States Securities and Exchange Commission ("SEC") and the United Kingdom Financial Services Authority ("FSA") reached a Memorandum of Understanding ("2006 MOU") on the exchange of information regarding the oversight of financial services firms.

On 1 April 2013, as a result of a reorganization of the financial services regulatory authorities in the United Kingdom, the Financial Conduct Authority ("FCA") and the Bank of England (including in its capacity as the Prudential Regulation Authority) ("Bank of England") became successors in interest to the 2006 MOU within the scope of their respective statutory responsibilities, with the 2006 MOU being treated as two separate Memoranda of Understanding (one Memorandum of Understanding between the SEC and the FCA ("2006 SEC-FCA MOU") and the other Memorandum of Understanding between the SEC and the Bank of England ("2006 SEC-BOE MOU")).

In the event of the UK's withdrawal from the European Union ("EU"), EU legislation would cease to have direct effect in the UK. Instead, the relevant legislation would be converted into UK law under the terms of the EU (Withdrawal) Act 2018, with changes to ensure it operates in a UK context.

The SEC and the FCA have reached this amended and restated Memorandum of Understanding ("MOU"), to reflect, among other things, the UK's withdrawal from the EU and to express, through this MOU, their willingness to continue to cooperate with each other in the interest of fulfilling their respective regulatory mandates, particularly in the areas of investor protection, fostering market integrity, and maintaining confidence and systemic stability.

## ARTICLE ONE: DEFINITIONS

For purposes of this MOU:

1.      "Authority" means the SEC or the FCA:

    a)      "Requested Authority" means the Authority to whom a request is made under this MOU; and

    b)      "Requesting Authority" means the Authority making a request under this MOU.

2.      "Firm" means:

    a)      a Person authorized, designated, qualified, registered, or otherwise regulated, supervised by or subject to the oversight of, one or both of the Authorities, who conducts investment, securities, derivatives, asset management, securities processing, insurance, credit rating, securities or derivatives trade repository[1], or banking business or participates in securities or derivatives market (collectively "financial services business") in either, or both, the United States and the United Kingdom; or

    b)      a Related Entity.

"Firms" may include, but are not limited to, exchanges and other trading venues; brokers or dealers; investment advisers; investment managers; investment funds or investment companies; trade repositories; credit rating agencies and other market participants. This list is illustrative and does not limit the Authorities' ability to cooperate under this MOU with respect to other Firms operating in either, or both, the United States and the United Kingdom that may come under their jurisdiction in the future.

---

[1] This MOU does not address an Authority's direct access to transaction data held by a securities or derivatives trade repository.

3. "Person" means a natural person, unincorporated association, partnership, trust, investment company, corporation, or other legal entity.

4. "Related Entity" means legal entities or sub-groups of a Firm, including affiliates, branches or subsidiaries, regulated by one or both Authorities.

5. "Books and Records" means documents, books and records of, and other information about, a Firm.

6. "On-Site Visit" means:

    a) In the case of an On-Site Visit conducted by the SEC, any regulatory visit to, or inspection of the books, records, and premises of, a Firm; and

    b) In the case of an On-Site Visit conducted by the FCA, a regulatory visit to a Firm that is ad hoc, part of a regulatory program, or in connection with a cross-firm exercise designed to discover information that is relevant for the discharge of the FCA's objectives or strategic priorities.

7. "Host Authority" means the Authority in whose jurisdiction a Firm is located.

8. "Inspecting Authority" means the Authority performing an On-Site Visit.

9. "Emergency Situation" means the occurrence of an event that could materially impair the financial or operational condition of a Firm.

10. "National Governmental Entity" means:

    a) If the Requesting Authority is the SEC, the US Treasury Department, the US Commodity Futures Trading Commission, or the US Federal Reserve Board; and

    b) If the Requesting Authority is the FCA, Her Majesty's Treasury or the Bank of England.

**ARTICLE TWO: GENERAL PROVISIONS**

11.    This MOU is a statement of intent to consult, cooperate and exchange information in connection with the oversight of Firms that conduct financial services business in either, or both, the United States and the United Kingdom, in a manner consistent with, and permitted by, the laws and requirements that govern the Authorities.  It is anticipated that cooperation would be primarily achieved through ongoing, informal, oral consultations, supplemented by more in-depth, ad hoc cooperation. The provisions of this MOU are not intended to discourage or hinder such informal and oral communication.

12.    This MOU does not create any legally binding obligations, confer any rights, or supersede domestic laws.  This MOU does not confer upon any Person the right or ability directly or indirectly to obtain, suppress, or exclude any information or to challenge the execution of a request for assistance under this MOU.

13.    This MOU does not limit an Authority to taking solely those measures described herein in fulfillment of its supervisory functions. In particular, this MOU does not affect any right of any Authority to communicate with, conduct an On-Site Visit of, or obtain information or documents from, any Person subject to its jurisdiction that is located in the territory of the other Authority.

14.    This MOU is intended to complement, but does not alter the terms and conditions of the following existing arrangements concerning cooperation in securities matters: (i) the *Memorandum of Understanding on Mutual Assistance and the Exchange of Information* between (among others) the SEC and the FCA (September 25, 1991, as amended), which covers primarily information-sharing in the

4

context of enforcement investigations; (ii) the IOSCO *Multilateral Memorandum of Understanding Concerning Consultation and Cooperation and the Exchange of Information,* to which the SEC and FCA are signatories, which also covers information-sharing in the context of enforcement investigations; (iii) the *Memorandum of Understanding* between (among others) the SEC and the FCA (October 27, 1997); and (iv) the *MoU concerning consultation, cooperation and the exchange of information related to the supervision of Covered Entities in the alternative investment fund industry* between the SEC and the FCA (March 29, 2019). In particular, this MOU does not alter existing understandings between the SEC and FCA in the area of enforcement and does not alter or supersede the 2006 SEC-BOE MOU. However, this MOU supersedes the 2006 SEC-FCA MOU.

15. The Authorities intend periodically to review the functioning and effectiveness of cooperation arrangements between the FCA and SEC with a view, inter alia, to expanding or altering the scope or operation of this MOU should that be judged necessary.

16. To facilitate cooperation under this MOU, the Authorities hereby designate contact persons as set forth in Appendix A.

## ARTICLE THREE: SCOPE OF SUPERVISORY CONSULTATION, COOPERATION AND EXCHANGE OF INFORMATION

17. The Authorities recognize the importance of close communication concerning the global operations of Firms, and intend to consult regularly regarding general supervisory developments and issues relevant to the operations, activities and regulation of such Firms. In addition, the Authorities intend to consult from time to time on any other areas of mutual supervisory interest.

18.   To the extent practicable and as appropriate in the particular circumstances, including the status of efforts to address any difficulties experienced by a Firm, each Authority endeavors to inform the other Authority in advance of:

a)   pending regulatory changes that may have a significant impact on the operations, activities, or reputation of a Firm, in the other jurisdiction; and

b)   any material event that could adversely impact each other's markets or the stability of a Firm, in the other jurisdiction. Such events include known changes in the operating environment, operations, management, or systems and controls.

The above is without prejudice to any arrangements relating to specific prudential issues.

19.   To the extent necessary to supplement periodic and ad hoc oral consultations, upon written request, each Authority intends to provide to the other Authority the fullest possible cooperation in assisting with the oversight of a Firm, and ensuring compliance with the laws or regulations and carrying out other supervisory functions of the Requesting Authority. It is anticipated that such requests will relate to information that is not otherwise available to the Requesting Authority. The assistance covered by this Paragraph includes, as appropriate to each entity, providing:

a)   Information based upon documents held in the files of the Requested Authority relevant to the Requesting Authority's oversight of the operations or activities of a Firm. The Requested Authority will provide the fullest possible assistance in interpreting such information. Such information

6

includes, without limitation:

    i.    Information relevant to the financial and operational condition of a Firm, including, for example, capital structure, liquidity and funding profiles, and internal controls procedures.

    ii.    Relevant regulatory information, including, for example: interim and annual financial statements; information drawn from regulatory reports and filings; early warning notices that a Firm is required to submit to an Authority; and information drawn from examination reports as may be deemed appropriate or relevant by the Requested Authority.

b)    The Requesting Authority may ask to see copies of regulatory reports, filings or other information held in the files of the Requested Authority or other information located in the Requested Authority's jurisdiction that may be relevant to the Requesting Authority's oversight of a Firm. It will be incumbent on the Requesting Authority to specify why information is not otherwise available to the Requesting Authority.

This general requirement for a written request is without prejudice to Paragraph 20 relating to the provision of unsolicited information.

20.    Where an Authority has information which may assist or enable the other Authority in the performance of its supervisory functions, the former may provide such information, or arrange for such information to be provided, on a voluntary basis even though no request has been made by the other Authority, and the terms and the conditions of this MOU will apply if the providing Authority specifies that the information is provided under this MOU.

## ARTICLE FOUR: ACCESS TO INFORMATION IN THE UNITED KINGDOM

21.    The SEC has informed the FCA that, as a condition of its SEC registration and maintaining its status as an SEC registered entity, or its exemption from SEC registration, as applicable, a Firm must commit, among other things, that the Firm's Books and Records are subject at all times to inspection and copying by the SEC and will be made available and supplied directly to the SEC promptly in response to the SEC's request. With respect to the transfer of personal data, the SEC will only use it for the legitimate and specific purpose of assisting the SEC in fulfilling its regulatory mandate and responsibilities, which includes regulating, administering, supervising, enforcing and securing compliance with the securities or derivatives laws in its jurisdiction.

## ARTICLE FIVE: ON-SITE VISITS

22.    The SEC may conduct On-Site Visits of Firms located in the United Kingdom that are authorized, designated, qualified, registered, or otherwise regulated, supervised by or subject to the oversight of, the SEC. The FCA may conduct On-Site Visits of Firms located in the United States that are authorized, designated, qualified, registered, or otherwise regulated, supervised by or subject to the oversight of, the FCA.

23.    The Authorities intend to comply with the following procedures before conducting an On-Site Visit:

   a)  The Inspecting Authority will notify the Host Authority of its intent to conduct an On-Site Visit, by itself or by a third party commissioned by it, the intended time frame for and the scope of the On-Site Visit. If practicable, the Inspecting Authority will attempt to notify the Host Authority at least one week prior to notifying the Firm covered by this Article.

8

b) The Authorities intend to assist each other regarding On-Site Visits, including cooperation and consultation in reviewing, interpreting and analyzing the contents of public and non-public Books and Records; and obtaining information from directors and senior management of a Firm covered by this Article.

c) The Host Authority may, in its discretion, accompany the Inspecting Authority during the On-Site Visit and assist in the On-Site Visit.

**ARTICLE SIX: EXECUTION OF REQUESTS FOR ASSISTANCE**

24. To the extent possible, a request for written information pursuant to Article Three should be made in writing, and addressed to the relevant contact person in Appendix A. A request generally should specify the following:

a) The information sought by the Requesting Authority;
b) A general description of the matter which is the subject of the request and the purpose for which the information is sought; and
c) The desired time period for reply and, where appropriate, the urgency thereof.

This general requirement for a written request is without prejudice to Paragraph 20 relating to the provision of unsolicited information.

25. In Emergency Situations, the Authorities will endeavor to notify each other of the Emergency Situation and communicate information to the other as would be appropriate in the particular circumstances, taking into account all relevant factors, including the status of efforts to address the Emergency Situation. During Emergency Situations,

9

requests for information and responses may be made in any form, including orally, provided such communication is confirmed in writing.

## ARTICLE SEVEN: PERMISSIBLE USES AND CONFIDENTIALITY OF INFORMATION

26.    Except for disclosures in accordance with this MOU, including permissible uses of information under this Article, each Authority will keep confidential, to the extent permitted by law, information shared under this MOU, requests made under this MOU, the contents of such requests, responses, and related communications or consultations between the Authorities, and any other matters arising under this MOU, and, to the extent permitted by law, not disclose non-public information received under this MOU to any third party for any purpose unless it has obtained the prior written consent of the Requested Authority.  The Requested Authority will take into account the urgency of the request to provide such consent and respond in a timely manner.

27.    During an Emergency Situation, consent may be obtained in any form, including orally, provided such communication is confirmed in writing as promptly as possible following such notification. If consent is not obtained from the Requested Authority, the Requesting and Requested Authorities will consult to discuss the reasons for withholding approval of such use and the circumstances, if any, under which the intended use by the Requesting Authority might be allowed.

28.    Subject to Paragraphs 31, 32, and 33, below, the Requesting Authority may use non-public information obtained under this MOU solely for conducting oversight of Firms, and seeking to ensure compliance with the laws or regulations of the Requesting Authority.

29.    If an Authority receives, via a third party, information related to the

10

oversight of Firms provided by the other Authority, the first Authority will treat the information in accordance with the terms of this MOU.

30.   Before using non-public information furnished under this MOU for any purpose other than those stated in Paragraph 28, the Requesting Authority must first inform the Requested Authority of the intended use. As necessary, the Authorities will consult to discuss the reasons for any denial by the Requested Authority of such use and the circumstances under which such use might be allowed.

31.   As mentioned above, this MOU is intended to complement, but not alter in any way, either the Memorandum of Understanding on Mutual Assistance and the Exchange of Information between (among others) the SEC and the FCA (September 25, 1991, as amended) or the IOSCO Multilateral Memorandum of Understanding Concerning Consultation and Cooperation and the Exchange of Information. The Authorities recognize that while information is not to be gathered under the auspices of this MOU for enforcement purposes, subsequently the Authorities may want to use the information for law enforcement. In cases where an Authority seeks to use information obtained under this MOU for enforcement purposes, including in conducting investigations or bringing administrative, civil or criminal proceedings, prior consent must be sought from the other Authority. Use will be subject to the terms and conditions of the arrangements referred to above concerning cooperation in enforcement matters.

32.   To the extent possible, the Requesting Authority intends to notify the Requested Authority of any legally enforceable demand for non-public information furnished under this MOU. Prior to compliance with the demand, the Requesting Authority intends to assert all appropriate legal exemptions or privileges with respect to such information as may be available.

11

33.  In certain circumstances it may become necessary for a Requesting Authority to share information obtained under this MOU with other National Governmental Entities. In these circumstances and to the extent permitted by law,

a)  the Requesting Authority will notify the Requested Authority, and

b)  prior to passing on the information, the Requested Authority will receive adequate assurances concerning the National Governmental Entity's use and confidential treatment of the information, including, as necessary, assurances that:

   i.  the National Governmental Entity has confirmed that it performs a function similar to a function of the Requested Authority or regulates, supervises or investigates banking, insurance or other financial services;

   ii.  the National Governmental Entity will maintain a level of confidentiality in respect of the non-public information it has received at least equivalent to that which the Requesting Authority is subject to (including, where relevant, restrictions or conditions imposed on it by the Requested Authority);

   iii.  the non-public information will be used for supervisory purposes in a manner consistent with Article Seven; and

   iv.  the non-public information will not be shared by the National Governmental Entity with other parties without getting the prior written consent of the Requested Authority.

34.  The Authorities intend that the sharing or the disclosure of non-public information, including but not limited to deliberative and consultative materials, pursuant to the terms of this MOU, will not constitute a waiver of privilege or confidentiality of such information.

12

**ARTICLE EIGHT: TERMINATION**

35.    Cooperation in accordance with this MOU will continue until the expiration of 30 days after either Authority gives written notice to the other Authority of its intention to terminate its cooperation under the MOU. If either Authority gives such notice, cooperation will continue with respect to all requests for assistance that were made under the MOU before the effective date of notification until the Requesting Authority terminates the matter for which assistance was requested. In the event of termination of this MOU, information obtained under this MOU will continue to be treated in the manner prescribed under Article Seven.

**ARTICLE NINE: ENTRY INTO FORCE**

36.    This MOU enters into force on the date EU legislation ceases to have direct effect in the United Kingdom.

Signed this 29th day of March, 2019.


Jay Clayton, Chairman
For the United States
Securities and Exchange Commission

Andrew Bailey, Chief Executive Officer
For the United Kingdom
Financial Conduct Authority

14

**APPENDIX A**

## CONTACT OFFICERS

**US Securities and Exchange Commission**
100 F Street NE
Washington, DC 20549
USA

Attention:

Director, Office of International Affairs

Tel.:   (202) 551-6690
Fax:   (202) 772-9280
Email: OIASupervisoryCoop@sec.gov

---

**UK Financial Conduct Authority**
12 Endeavour Square
London E20 1JN

Attention:

Requests for assistance on supervisory matters:

International Regulator Supervision Enquiries
Email: regulator.supervisionenquiry@fca.org.uk
Tel: +44 207 066 1000

Requests for letters of good standing:

https://www.fca.org.uk/requests-letters-goodstanding