Adam S. Paris (SBN # 190693)
(parisa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:     (310) 712-6600
Facsimile:     (310) 712-8800

Jeffrey T. Scott (*pro hac vice*)
(scottj@sullcrom.com)
Matthew J. Porpora (*pro hac vice*)
(porporam@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3558

[ADDITIONAL COUNSEL ON SIGNATURE BLOCK]

*Attorneys for Defendant Barclays PLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MERRITT, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:23-cv-09217-MEMF-KS |
| Plaintiff, | **BARCLAYS PLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| v. | [Reply Declaration of Martin Moore K.C. Filed Concurrently] |
| BARCLAYS PLC, JAMES E. STALEY, and NIGEL HIGGINS, | |
| Defendants. | Hearing Date:  November 13, 2025<br>Hearing Time:  10:00 A.M.<br>Courtroom:  8B<br>Judge:  Hon. Maame Ewusi-Mensah Frimpong |

REPLY IN FURTHER SUPPORT OF DEFS.' MOT. TO DISMISS

# TABLE OF CONTENTS

*Page*

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.    St. Louis' 90A Claim Remains Fatally Flawed ...................................................3

    A.    St. Louis Cannot Avoid the Requirement to Plead That Barclays Made a Disclosure That Was Accurate, But Late................................................................3

    B.    St. Louis Improperly Tries to Recast a Misstatement or Omissions Claim as a Dishonest Delay Claim To Evade the Reliance Requirement ......................4

    C.    St. Louis Fails to Plead the Requisite Fraudulent Intent.......................................7

II.   Dismissal is Appropriate on *Forum-Non-Conveniens* Grounds .....................................7

    A.    St. Louis' Choice of a California Forum is Entitled to Little Deference ..............7

    B.    English Courts Are Far Better Equipped to Adjudicate Novel English Law Securities Claims .............................................................................................8

    C.    The Private Interest Factors Favor Dismissal ......................................................8

    D.    The Public Interest Factors Favor Dismissal ......................................................11

CONCLUSION......................................................................................................................11

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*ACL Netherlands BV* v. *Lynch*,
[2022] EWHC 1178 (Ch)..................................................................................5

*AdvanFort Co.* v. *Zamil Offshore Servs. Co.*,
134 F.4th 760 (4th Cir. 2025) .......................................................................10

*Allianz Funds Multi-Strategy Trust* v. *Barclays*,
[2024] EWHC 2710 (Ch)............................................................................3, 5

*Alternate Health USA Inc.* v. *Edalat*,
2022 WL 767573 (C.D. Cal. Mar. 14, 2022)..................................................9

*Alternate Health USA, Inc.* v. *Edalat*,
2023 WL 8732811 (9th Cir. Dec. 19, 2023) ...................................................8

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ............................................................1

*Ayco Farms, Inc.* v. *Ochoa*,
862 F.3d 945 (9th Cir. 2017) ......................................................................7, 9

*City of Sterling Heights* v. *Reckitt Benckiser Group PLC*,
587 F. Supp. 3d 56, 106 (S.D.N.Y. 2022) .....................................................8

*Cooper* v. *Tokyo Elec. Power Co. Holdings, Inc.*,
960 F.3d 549 (9th Cir. 2020) ..........................................................................3

*Das* v. *Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018)..............................................................6

*Fahmy* v. *Jay-Z*,
908 F.3d 383 (9th Cir. 2018) ......................................................................2, 5

*G&G Prods. LLC* v. *Rusic*,
902 F.3d 940 (9th Cir. 2018) ..........................................................................6

*Howe* v. *Goldcorp Invs., Ltd.*,
946 F.2d 944 (1st Cir. 1991)......................................................................9, 11

*Jensen* v. *U.S. Tennis Ass'n*,
2025 WL 707447 (9th Cir. Mar. 5, 2025).....................................................4, 7

*Koster* v. *(Am.) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947)........................................................................................7

*LaSala* v. *TSB Bank, PLC*,
514 F. Supp. 2d 447 (S.D.N.Y. 2007)..............................................................9

*Lavera Skin Care N. Am., Inc.* v. *Laverana GMBH & Co.*,
696 F. App'x 837 (9th Cir. 2017) ..................................................................10

-ii-

*Leetsch* v. *Freedman*,
    260 F.3d 1100 (9th Cir. 2001) ..........................................................................................8

*Levien* v. *hibu plc*,
    2021 WL 5742664 (3d Cir. Dec. 2, 2021) ........................................................................3

*Levien* v. *hibu plc*,
    475 F. Supp. 3d 429 (E.D. Pa. 2020) ...........................................................................8, 9

*Lou* v. *Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ............................................................................................7

*Manning & Napier* v. *Tesco plc*,
    [2017] EWHC 3296 (Ch).............................................................................................1, 5

*Mizokami Bros. of Ariz.* v. *Baychem Corp.*,
    556 F.2d 975 (9th Cir. 1977) ..........................................................................................11

*Mujica* v. *AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ............................................................................................3

*Piper Aircraft Co.* v. *Reyno*,
    454 U.S. 235 (1981)..........................................................................................................9

*Schoeps* v. *Sompo Holdings, Inc.*,
    736 F. Supp. 3d 582 (N.D. Ill. 2024) ..............................................................................9

*Stoneridge Inv. Partners, LLC* v. *Sci.-Atlanta, Inc.*,
    552 U.S. 148 (2008)..........................................................................................................4

*Stoyas* v. *Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ............................................................................................8

*Various Claimants* v. *Standard Chartered PLC*,
    [2025] EWHC 698 (Ch)...........................................................................................3, 5, 6

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................................10

**Rule**

Fed. R. Civ. P. 23(b)(3)............................................................................................................5

**INTRODUCTION**

In its Opposition, St. Louis barely tries to hide its gamesmanship.  As it admits, English courts do not authorize U.S.-style class actions.  (Opp. 17 (ECF 117).)  Further, English law does not recognize a presumption of reliance for standard misstatement and omissions claims, which prevents claimants from bringing such English law securities claims in the U.S. as a class action, because individual issues would overwhelm common issues.  (Opening Br. 11-13 (ECF 114-1).)  Nonetheless, St. Louis effectively contends that a narrow gap filling provision for dishonest delay—which omits a reliance requirement—displaces the entire English law regime for misstatements and omissions.  Under that theory, every alleged misstatement or omission also would be a dishonest delay claim.  The upshot:  if everything is dishonest delay, reliance is effectively eliminated as a requirement under English law.  No English court has endorsed that result.  On the contrary, English courts emphasize that reliance is "absolutely central to the statutory form of action."  (Moore ¶ 36 (ECF 114-2) (quoting *Manning & Napier* v. *Tesco plc* [2017] EWHC 3296 (Ch), ¶ 29).)  This Court should not allow St. Louis to evade the reliance requirement and make California federal courts the preferred forum for English law securities claims against English issuers.  "[W]hen [a federal court is] given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [the court] should choose the narrower and more reasonable path." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 977 (N.D. Cal. 2016).  The Court should again dismiss St. Louis' Section 90A claim.

***Failure to State a Claim.***  St. Louis' 90A claim fails three times over. *First*, St. Louis does not allege that Barclays itself "published" the "information that was delayed."  (Order 23 (ECF 84).)  Rather, it argues that it fixed the issue the Court identified because, instead of alleging that Barclays' press release "*alert*[*s*] readers to the availability of the final FCA Decision" (ECF 69 at 25 (emphasis added)), it now alleges that Barclays' press release "*direct*[*s*] investors to the FCA decision" (Opp. 8 (emphasis added).)  Replacing the verb "alerts" with "directs" does not cure the problem the Court previously identified:  Barclays' 2023 press release was "specifically based on the FCA's final determination and not on what

Defendants independently may have known," and thus Barclays could not have made that disclosure earlier.  (Order 23.)

*Second*, St. Louis contends that "dishonest delay arises where an issuer '***fail[s] to make any statement at all***,'" but it does not allege that Barclays made no statements about the Staley-Epstein relationship.  (Opp. 7 (emphasis in original).)  Instead, it alleges that Barclays failed to disclose that Staley's relationship with Epstein was more "intimate" than Barclays implied in its *ten* statements that allegedly downplayed the Staley-Epstein relationship.  (Opp. 6.)  Thus, the allegedly "delayed information" was an "admi[ssion] [of] its own misstatements."  (*Id.*)  American courts do not permit this sleight-of-hand under the federal securities laws (Opening Br. 10 n.6, 11 n.8), and no English court has endorsed it under English law, which would result in dishonest delay claims displacing the entire field of misstatements and omissions liability and eliminating the reliance requirement altogether.  Even though Barclays' English law expert opined that an English court would reject St. Louis' everything-is-dishonest-delay theory, St. Louis did not even ask its English law expert to opine on that theory.  That silence speaks volumes. *See Fahmy* v. *Jay-Z*, 908 F.3d 383, 392 (9th Cir. 2018) (because defendant's Egyptian law expert "was not contradicted by the testimony of [plaintiff's] expert, … we credit [defendant's expert's] testimony").

*Third*, rather than plead that Barclays intentionally delayed making a required public disclosure, as English law requires, St. Louis harps on the irrelevant allegations that Staley misled the FCA and Barclays supposedly knew about it.  (Opp. 8-9.)  Thus, St. Louis has failed to plead the requisite fraudulent intent.

***Forum Non Conveniens.***  Alternatively, St. Louis' claim should be dismissed on *forum-non-conveniens* grounds.  Because St. Louis' claim has no real connection to this forum, St. Louis points to trivial and irrelevant connections (*e.g.*, that Staley met with Epstein in the U.S.).  (Opp. 11.)  As the Third Circuit stated when affirming *forum-non-conveniens* dismissal of Section 90A claims, "there is little sense to allowing a U.S. citizen to [hale] a group of foreign defendants into a U.S. court on transactions having little or nothing to do with this

-2-

country where there is an available foreign forum significantly better suited to handling the litigation." *Levien* v. *hibu Plc*, 2021 WL 5742664, at *2 (3d Cir. Dec. 2, 2021).

Nor is this an "untimely motion for reconsideration." (Opp. 11.) Unlike before, St. Louis now attempts to expand dramatically the scope of liability under English law with no support in English precedent, a "new development" that "tilt[s] the scales towards dismissal." *Cooper* v. *Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 566 (9th Cir. 2020). Indeed, Barclays understands that it is highly likely that other claimants will bring similar Section 90A claims in the English courts, which are better equipped to address these novel English law claims.[1]

## ARGUMENT

**I.      St. Louis' 90A Claim Remains Fatally Flawed.**

   **A.      St. Louis Cannot Avoid the Requirement to Plead That Barclays Made a Disclosure That Was Accurate, But Late.**

St. Louis accuses Barclays of "fabricat[ing] additional requirements that the issuer must itself later publish the delayed information." (Opp. 6.) But St. Louis previously agreed that the statute requires exactly that: "The dishonest delay provision … protect[s] investors in the event that an issuer ***publishes an accurate statement, but one that should have been disclosed earlier***." (ECF 69 at 24 (emphasis added).) The Court correctly dismissed St. Louis' delay claim for this reason. (Order 23.)

St. Louis asserts that *Various Claimants* v. *Standard Chartered PLC* [2025] EWHC 698 (Ch), supports its new position. (Opp. 7.) That is incorrect. As Barclays' English law expert explains, *Standard Chartered* was an unusual decision issued in an unusual context: the case had been proceeding for years and at the 11th hour defendants sought to strike-out the dishonest delay claim. (Moore ¶ 27.) Because the trial would occur notwithstanding dismissal of the delay claim, the court declined to resolve the issue, "ma[king] no positive finding one way or the other" (Moore-Reply ¶ 12), but it nonetheless "questioned" (Opp. 6-7) the bottom-line ruling

---

[1] As a second alternative, the Court should dismiss the 90A claim under adjudicatory comity, (Opening Br. 24-25), which does not require that Barclays establish an "actual conflict between American and foreign law" (Opp. 17). *See Mujica* v. *AirScan Inc.*, 771 F.3d 580, 602 (9th Cir. 2014) ("district court erred when it required the existence of a true conflict").

in *Allianz Funds Multi-Strategy Trust* v. *Barclays* [2024] EWHC 2710 (Ch), that a later truthful publication by the defendant was required.[2]  That one English trial court "questioned" (Opp. 6) the publication requirement in *dicta* does not approach the "potent evidence" required for this Court to "endorse a 'policy innovation' in" English law.  *Jensen* v. *U.S. Tennis Ass'n*, 2025 WL 707447, at *2 (9th Cir. Mar. 5, 2025).

Unable to change English law, St. Louis says it fixed the problem that led to the initial dismissal.  Instead of alleging that "Barclays issued a press release … alerting readers to the availability of the final FCA Decision" (ECF 69 at 25), St. Louis now alleges that Barclays' "Press Release references and, in announcing Barclays' remuneration decision, relies on the FCA Decision" (Opp. 5).  That is a meaningless change.  Whether the press release "alerts readers" to the FCA decision or "references" the FCA decision, the Court's prior reason for dismissing the 90A claim remains:  Barclays' press release could not itself establish dishonest delay because it was "based on the FCA's final determination and not on what Defendants independently may have known."  (Order 23.)

Moreover, Barclays did not endorse, or adopt as its own, the statements in the FCA decision by referencing it in the press release.  (Opp. 8.) As Moore explains, St. Louis is incorrect that Barclays is subject to liability for the "entire text" of the FCA decision by referencing it in its press release. (Moore-Reply ¶¶ 14-20.)

**B.     St. Louis Improperly Tries to Recast a Misstatement or Omissions Claim as a Dishonest Delay Claim To Evade the Reliance Requirement.**

St. Louis cites no authority to support transforming what its English law expert concedes is a narrow gap-filling provision for dishonest delay (*see* ECF 69-1 ¶ 76) into a broad catchall that swallows the default provisions for misstatements and omissions.  As St. Louis contends, "dishonest delay arises where an issuer '***fail[s] to make any statement at all***.'"   (Opp. 7

---

[2] St. Louis suggests this Court should follow the English procedural practice of deferring legal issues until trial.  (Opp. 7 n.6.)  But U.S. courts must follow U.S. procedure.  *Cooper*, 960 F.3d at 557.  Unlike in England, the motion to dismiss is a critical stage for U.S. securities litigation, because "extensive discovery and the potential for uncertainty and disruption in a lawsuit allow plaintiffs with weak claims to extort settlements from innocent companies."  *Stoneridge Inv. Partners, LLC* v. *Sci.-Atlanta, Inc.*, 552 U.S. 148, 163 (2008).

(emphasis in original).)  In that context, a claimant cannot rely on a statement when there is total "nondisclosure" and the "lack of a statement" at all.  (Opp. 8 n.9.)  But St. Louis does not allege complete non-disclosure.  It alleges that Barclays' repeated statements about Staley's relationship with Epstein were "materially false and misleading when made."  (SAC ¶¶ 56, 81, 91, 101.)  It then contends that Barclays delayed "admit[ting] its own misstatements" and the "underlying facts."  (Opp. 6, 10.)  This is a textbook omission claim, even according to St. Louis' own English law expert—*i.e.*, an "omission[] from published information."  (ECF 69-1 ¶ 38; *see* Moore-Reply ¶¶ 21-23.)  Nor is there any need to resort to the dishonest delay provision in that circumstance.  The impossible burden of proving reliance on something that was never said does not exist.  It is not impossible for St. Louis to prove (if true) that it was "aware of the statement which subsequently turned out to be misleading," *ACL Netherlands BV* v. *Lynch*, [2022] EWHC 1178 (Ch), ¶ 504 (ECF 114-4)—here, the ten alleged misleading statements that purportedly downplayed the Staley-Epstein relationship.  (*See* Opening Br. 5-6 (quoting challenged statements).)

St. Louis does not try to hide that, under its theory, every misstatement or omission claim can be recast as a delay claim, thereby effectively eliminating the reliance requirement for securities fraud under English law.  St. Louis did not ask its English law expert to opine on its new everything-is-dishonest-delay theory, or to respond to Moore's opinion that an English court would reject it (Moore ¶¶ 40, 60, 108), which is reason alone to reject St. Louis' argument.  *See Fahmy*, 908 F.3d at 392.  To support the sweeping expansion of English law it seeks, St. Louis merely observes that the judge in *Standard Chartered* could think of "no particular vice in an overlap" between dishonest delay claims and misstatements and omissions claims.  (Opp. 10.)  But the supposed lack of a policy-based objection does not override statutory language.  Moreover, that judge's assumption is plainly wrong.  Under English law, proof of investor reliance is "absolutely central to the statutory form of action." *Tesco*, ¶ 29.  The delay provision eliminates that critical element as part of a "finely balanced" legislative decision to impose liability in the narrow "period when no statement had been made," due to the impossibility of proving reliance. *Allianz*, ¶¶ 54, 85.  As the court in *Allianz* explained,

broadening the delay provision to "overlap" entirely with all misstatements and omissions "makes no sense at all given the significance" of "the requirement of reliance." *Id.* ¶ 141; *see* Moore ¶¶ 40, 60.   The consequences of allowing that maneuver to evade the reliance requirement would be massive:   eliminating proof of reliance, a major impediment to establishing predominance under Rule 23(b)(3), would incentivize all claimants to bring English law securities claims in California federal court, rather than in England, to take advantage of the U.S. class action device.   The U.K. government considers that result an affront to its sovereignty.  (*See* U.K. Toshiba Br. 2 (ECF 115-2).)

In any event, nothing in *Standard Chartered* supports St. Louis' argument that claimants can evade the reliance requirement by recasting any misstatement or omission as a delay claim. The court in *Standard Chartered* took pains to emphasize that the dishonest delay provision "was intended to cover a quite narrow lacuna in issuer liability and that, as such, it should probably be construed to be quite confined in its reach." *Standard Chartered*, ¶ 118.  It applies only where the issuer "fail[s] to make any statement at all." *Id.* ¶ 104.  It is not the catchall that St. Louis claims.   The court merely questioned whether "making liability for that delay dependent on a later statement being made … address[es] the mischief." *Id.*  Nothing about that supports turning this narrow gap-filler provision into an all-purpose liability provision.

As a last gasp, St. Louis asserts a new theory.  It claims that Barclays failed to disclose the contents of the "1,200-email cache" between Staley and Epstein.  (Opp. 10.)  This claim fails for at least three reasons.  *First*, Barclays itself never published those emails, so the publication element is not met.   *Second*, the contention that the "emails contextualize, substantiate and confirm" that Barclays made misleading statements by downplaying the Staley-Epstein relationship is an omissions claim, not a delay claim.  (Opp. 6.)  *Third*, to state a delay claim, a "claimant must establish that the issuer was subject to an obligation to publish information by a particular date or within a particular timeframe" (Moore ¶ 99; *see Allianz*, ¶ 138(6) (duty-to-disclose required))—*e.g.*, corporate events such as mergers or controlling-shareholder transactions (Moore ¶ 64).  St. Louis does not cite any provision in English law requiring issuers to disclose the contents of emails or characterize emails in a pejorative way.

*See G&G Prods. LLC* v. *Rusic*, 902 F.3d 940, 951 (9th Cir. 2018) (rejecting "unsupported" position regarding foreign law).  For comparison, there is no such duty under the federal securities law.  *See Das* v. *Rio Tinto PLC*, 332 F. Supp. 3d 786, 814 (S.D.N.Y. 2018) ("no general duty to disclose internal emails").  If St. Louis wants to chart a new course in English law, it should ask an English court to address the issue, not a California federal court.  *See Jensen*, 2025 WL 707447, at *3.

### C.      St. Louis Fails to Plead the Requisite Fraudulent Intent.

St. Louis argues that Staley "dishonestly concealed the truth" from the FCA.  (Opp. 9.) But the question is not whether Staley was dishonest in dealings with the FCA or whether Barclays knew facts from the emails that "contradicted the letter to the FCA." (*Id.*)  St. Louis had to plead that Barclays "knew of the requirement to publish by the earlier date" and "dishonestly" delayed making a public disclosure.  (Moore ¶ 63.)  Even St. Louis' English law expert agrees that it had to plead that Barclays "acted dishonestly in delaying the publication." (ECF 69-1 ¶ 102.)   St. Louis does not even try to argue that Barclays was aware of any obligation under English law to disclose Staley's emails and deliberately chose not to make a public disclosure.

### II.      Dismissal is Appropriate on *Forum-Non-Conveniens* Grounds.

### A.      St. Louis' Choice of a California Forum is Entitled to Little Deference.

St. Louis says its forum choice is entitled to "substantial deference," even though California is not its home state.  (Opp. 11.)  Not so.  "A U.S. citizen plaintiff is entitled to less deference in his choice of forum if he does not reside in that forum."  *Ayco Farms, Inc.* v. *Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017).  Nor did Barclays suggest that deference is weakened because the putative class includes "foreign plaintiffs."  (Opp. 12.)  The point is that, where "an individual … represents a class, the named plaintiff's choice of forum is given less weight," *Lou* v. *Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), because "there are hundreds of potential plaintiffs" who could sue in "their many home courts," *Koster* v. *(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

-7-

**B. English Courts Are Far Better Equipped to Adjudicate Novel English Law Securities Claims.**

St. Louis insists that *forum-non-conveniens* dismissal is permitted "only where the entire case and all parties can be heard abroad." (Opp. 12.) That is wrong, as explained in the Opening Brief (at 16-17). Nor did the Ninth Circuit "caution" courts against partial *forum-non-conveniens* dismissal (Opp. 12) by "declin[ing] to address" the issue "in the first instance." *Stoyas* v. *Toshiba Corp.*, 896 F.3d 933, 952 n.25 (9th Cir. 2018). Regardless, St. Louis does not deny that the Court could sever its 90A claim and then dismiss it on *forum-non-conveniens* grounds. (Opening Br. 18.)

St. Louis says it need not choose the most "optimal" forum. (Opp. 12.) That misses the point. As its own English law expert opines, the scope of a dishonest delay claim "is not settled" and has "not been considered by any appellate court" in England. (ECF 69-1 ¶ 81.) Thus, not only is a California federal court a sub-optimal forum, but this Court must make new English law to adjudicate St. Louis' claim. As the Ninth Circuit repeatedly has emphasized, the fact that "[t]he [English] court would be more competent than a United States court" to address novel English law claims "weighs especially heavily in favor of" dismissal. *Leetsch* v. *Freedman*, 260 F.3d 1100, 1103, 1105 (9th Cir. 2001); *see Alternate Health USA, Inc.* v. *Edalat*, 2023 WL 8732811, at *1 (9th Cir. Dec. 19, 2023) (same). St. Louis gets no support (Opp. 13) from *City of Sterling Heights* v. *Reckitt Benckiser Group PLC*, because that case involved a standard 90A claim for "misleading statements," not a novel dishonest delay claim. 587 F. Supp. 3d 56, 106 (S.D.N.Y. 2022).

**C. The Private Interest Factors Favor Dismissal.**

*1 & 2 (Residence & Convenience).* St. Louis grasps at the most tenuous U.S. connections. That "Staley is a U.S. citizen" (Opp. 11) is irrelevant because he is not a defendant on St. Louis's 90A claim. Nor does it matter that (i) Staley rendezvoused with Epstein at "U.S. locations," (ii) Barclays subsidiaries that are not defendants have "California offices," or (iii) "U.S. regulators" have investigated Epstein's conduct. (Opp. 11.) None of that matters to St. Louis' claim about disclosures Barclays made in England under English law in connection with securities traded on the London Stock Exchange. *See Levien* v. *hibu plc*, 475 F. Supp. 3d

429, 445 (E.D. Pa. 2020) (dismissing 90A claim; that "corporate meetings … occurred in King of Prussia, Pennsylvania … is not enough to transform the case into a 'local dispute'").

Likewise, it is inconsequential that Barclays (i) previously commenced two trademark infringement lawsuits in New York, and (ii) has retained "U.S.-based lawyers" in this action. (Opp. 13-14.)  "[J]ust because [Barclays] … previously participated in litigation in the U.S. does not mean that this lawsuit" belongs there.  *Schoeps* v. *Sompo Holdings, Inc.*, 736 F. Supp. 3d 582, 604 (N.D. Ill. 2024); *see Levien*, 475 F. Supp. 3d at 444-45 (same).  Having U.S. counsel also is not grounds for denying *forum-non-convenience* dismissal because parties must be represented by a locally-admitted lawyer.  *See, e.g.*, *Ayco*, 862 F.3d at 947 (affirming *forum-non-conveniens* dismissal where defendant was represented by California lawyers).

*3 (Location of Documents).*  Although "digital" documents lessen the burden of "cross-border litigation" (Opp. 14), this factor bears minimal weight and "neither precludes nor favors dismissal."  *Alternate Health USA Inc.* v. *Edalat*, 2022 WL 767573, at *8 (C.D. Cal. Mar. 14, 2022).

*4 (Unavailability of Witnesses).*  Barclays is not required to identify trial witnesses or determine whether they would be "unwilling to testify."  (Opp. 14.)  *See Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 258 (1981) (rejecting that "defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call," because "many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview").  Moreover, St. Louis is wrong that the FCA personnel and the ***former*** Barclays' board members and employees it identified in its initial disclosures are within "[Barclays'] control."   (Opp. 15.)   Barclays has no control over regulators and former employees, among others.

St. Louis' proposed workaround of obtaining videotaped testimony under the "Hague Evidence Convention" is no answer in a fraud case, where live testimony at trial is crucial. (Opp. 14.)  *See Howe* v. *Goldcorp Invs., Ltd.*, 946 F.2d 944, 952 (1st Cir. 1991) (Breyer, J.) ("Compulsory process would seem especially important where, as here, fraud and subjective intent are elements of the claim, making the live testimony of witnesses for the purposes of

-9-

presenting demeanor evidence essential to a fair trial."); *LaSala* v. *TSB Bank, PLC*, 514 F. Supp. 2d 447, 460 (S.D.N.Y. 2007) (collecting cases).

*5 (Cost of Bringing Witnesses To Trial).* Although St. Louis attempts to minimize this factor (Opp. 15), the costs of bringing primarily English witnesses to trial in the U.S. will be greater than bringing witnesses to a trial in England.

*6 (Enforceability of a Judgment).* St. Louis notes, without citing authority, that a U.S. judgment would be enforceable "against Barclays," but does not contest the views of the U.K. government and Barclays' English law expert that "[s]erious doubt exists as to whether a judgment or court-approved settlement in a U.S. securities class action would bind a non-U.S. plaintiff who did not opt out of the class." (U.K. Morrison Br. 28 (ECF 115-2); Moore ¶¶ 165-78.) St. Louis cites *In re Vivendi Universal, S.A.*, but there defendants "ignore[d] the issue," and thus the court assumed (incorrectly) that enforceability turns solely on jurisdiction over the "defendant." 242 F.R.D. 76, 103 (S.D.N.Y. 2007); *see* Moore ¶¶ 165-70 (citing contrary English authority). That "U.S. courts" occasionally adjudicate class claims "that include foreign plaintiffs" (Opp. 15) says nothing about whether a *U.K. court* will enforce a U.S. judgment against U.K. absent class members.

St. Louis' suggestion to defer this issue until class certification is wrong. (Opp. 15.) The enforceability of a judgment must be considered in the *forum-non-conveniens* analysis. *See Lavera Skin Care N. Am., Inc.* v. *Laverana GMBH & Co.*, 696 F. App'x 837, 838 (9th Cir. 2017) ("uncertainties" about "enforceability of the judgment" support *forum-non-conveniens* dismissal).

*7 (Other Practical Problems).* St. Louis observes that granting *forum-non-conveniens* dismissal will "fracture the litigation" and force Barclays to litigate in two forums. (Opp. 15.) But because "dismissing this action would not force [St. Louis] to litigate in two different countries," *AdvanFort Co.* v. *Zamil Offshore Servs. Co.*, 134 F.4th 760, 771 (4th Cir. 2025), its concern over Barclays' inconvenience is irrelevant.

-10-

**D.    The Public Interest Factors Favor Dismissal.**

St. Louis argues this Court is capable of adjudicating a novel English law claim and that the U.S. has an overriding compelling interest in providing a U.S. forum for plaintiffs to assert English law claims over securities they purchased on the London Stock Exchange.  (Opp. 16-17.)  That is wrong.  English law courts are better equipped to address novel English law claims. (*See* Opening Br. 16, 23-24.)   Further, the U.S. has no compelling interest in adjudicating English law securities claims relating to securities purchased in England.  "[P]arties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere."  *Mizokami Bros. of Ariz.* v. *Baychem Corp.*, 556 F.2d 975, 978 (9th Cir. 1977); *accord Howe*, 946 F.2d at 953.

## CONCLUSION

The Court should dismiss St. Louis' Section 90A claim with prejudice.

-11-

Dated:  October 20, 2025

/s/ Adam S. Paris
Adam S. Paris (SBN # 190693)
(parisa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800

Jeffrey T. Scott (*pro hac vice*)
(scottj@sullcrom.com)
Matthew J. Porpora (*pro hac vice*)
(porporam@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3558

Peter B. Morrison (SBN # 230148)
(peter.morrison@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone:    (213) 687-5000
Facsimile:    (213) 687-5600

Scott D. Musoff (*pro hac vice*)
(scott.musoff@skadden.com)
Boris Bershteyn (*pro hac vice*)
(boris.bershteyn@skadden.com)
Lara A. Flath (*pro hac vice*)
(lara.flath@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000

*Attorneys for Defendant Barclays PLC*

-12-

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Barclays PLC, certifies that this brief contains 3,948 words, which complies with the Court's October 15, 2025 order (ECF 121).


Dated:  October 20, 2025                    SULLIVAN & CROMWELL LLP


                                            /s/ Adam S. Paris
                                            Adam S. Paris

                                            *Attorney for Defendant Barclays PLC*

-13-