Adam S. Paris (SBN # 190693)
(parisa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800

Jeffrey T. Scott (*pro hac vice*)
(scottj@sullcrom.com)
Matthew J. Porpora (*pro hac vice*)
(porporam@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3558

[ADDITIONAL COUNSEL ON BRIEF]

*Attorneys for Defendants Barclays PLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN MERRITT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS PLC, JAMES E. STALEY, and NIGEL HIGGINS,<br><br>Defendants. | Case No. 2:23-cv-09217-MEMF-KS<br><br>**DECLARATION OF MARTIN MOORE K.C. IN SUPPORT OF BARCLAYS PLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Hearing Date:  November 13, 2025<br>Hearing Time:  10:00 A.M.<br>Courtroom:  8B<br>Judge:  Hon. Maame Ewusi-Mensah Frimpong |

## I.    Introduction

1.    I have given three Declarations in this matter to date. My First Declaration, dated 30 October 2024, concerned aspects of English securities law in so far as they applied to the Amended Class Action Complaint dated 12 August 2024 (the **Original Complaint**). My Second Declaration, dated 28 February 2025, responded to the Declaration of Adam Kramer KC dated 16 January 2025 (the **Kramer Declaration**). My Third Declaration dated 5 September 2025 addressed the Second Amended Class Action Complaint filed against the Defendants (the **Amended Complaint**). Save where otherwise stated, I adopt the definitions used in my Third Declaration.

2.    I understand that the St Louis Firemen have not filed a further Declaration concerning aspects of English law, whether by Mr Kramer or anyone else. Nevertheless, I am asked by Sullivan & Cromwell LLP to provide this Fourth Declaration on matters of English securities law arising from the Plaintiffs' memorandum in opposition to the Defendants' motion to dismiss the Second Amended Complaint, filed October 3, 2025 (the **Plaintiffs' Memorandum**).

3.    As I noted in my Third Declaration, it is an important requirement of the Court in England and Wales that persons giving expert evidence owe their duties to the Court to which their evidence is to be tendered and not to the party appointing them. Regardless of whether such a requirement exists in the United States District Court, I have made this Fourth Declaration on the same basis as I would were it made in English proceedings.

4.    I continue to hold the views expressed in my Third Declaration and summarised in paragraph 16 of that document. In this Fourth Declaration I address discrete points arising out of the Plaintiffs' Memorandum and do not repeat points otherwise addressed in my Third Declaration.

## II.    Summary of Conclusions

5.    In summary, my conclusions are as follows:

(a)    As set out in my Third Declaration, it is necessary to a dishonest delay claim under Schedule 10A FSMA that the claimant clearly establishes that information required

to be published was in fact published, albeit at a later date (the 'later publication requirement'). In doing so, it is also necessary for the claimant to establish what exactly the issuer was required to publish, and when.[1]

(b) That is firmly established by *Allianz*, and further supported by the Davies Discussion Paper, the Davies Final Report, the HM Treasury Consultation and the HM Treasury Response. The Court in *Standard Chartered* did not make a determinative finding contrary to the conclusions in *Allianz*. *Allianz*, accordingly, represents the current law in England and Wales in this regard (Section III(I)).

(c) Liability cannot arise under para 5 Schedule 10A as a result of Barclays having referred to the Decision Notice published by the FCA on 12 October 2023 (the **FCA Decision Notice**) in their press release of the same date (the **Press Release**). In my view, it is a fundamental matter of statutory interpretation, that information attracting liability under Schedule 10A must be "*published by the issuer*" (Section III(II)).

(d) I remain of the view that the St Louis Firemen's claim is in substance not one of dishonest delay. I do not consider that the English Court would permit a claimant to avoid the need to show individual reliance by seeking to recast it as a delay claim, as the St Louis Firemen have done here (Section IV).

### III. Later Publication

#### A. The St Louis Firemen's Primary Case

6. At paragraphs 103 and 106-113 of the Plaintiffs' Memorandum, the St Louis Firemen argue as a matter of English law that no later publication is required in order to establish a claim for dishonest delay. Paragraphs 168-82 and 106-113 of my Third Declaration already address that position and I do not propose to repeat those points here. However, certain discrete points do arise and which I address now below.

---

[1] Addressed at §103 and §§106-113 of my Third Declaration.

-2-

### 1.    The Davies and Government Papers

7.    The Plaintiffs' Memorandum states that "*Neither Professor Davies nor the UK Government suggested such a requirement when developing the dishonest delay framework*".[2] Whilst I acknowledge that the Davies and HM Treasury Papers do not state, in terms, that a subsequent publication is a prerequisite for a dishonest delay claim, it does not follow that they contain no such 'suggestion'. What they *did* say seems to me to be entirely consistent with, and in some cases to presuppose, such a requirement.[3]

8.    In my view, Professor Davies proceeds, on the basis that later publication is an essential feature of dishonest delay claims, describing the "*core case* [as] *one in which the information when published is true, but it is late in arriving*" and concerning "*statements that are accurate but late*".[4] Likewise, in the Final Davies Report a clear distinction is made between "*failing to disclose fully*" and "*delay in disclosure*"[5] and therefore references in that report to liability for "*delayed disclosure*" can be understood as addressing a situation distinct from complete non-disclosure.

9.    The same distinction between delayed disclosure and complete non-disclosure is made in the HM Treasury Consultation Paper.[6] Throughout section 6 of that paper, reference is made to "*delayed announcements*" where the term "*announcement*" itself implies the existence of a specific act of publication. Furthermore, the Government adopts Professor Davies' rationale for imposing liability in cases of delayed publication, and there is

---

[2] Plaintiffs' Memorandum, p. 7.

[3] The Davies and HM Treasury Papers referred to are those cited in my Third Declaration, being the Davies Discussion Paper, the Davies Final Report, the HM Treasury Consultation Paper and the HM Treasury, Extension of the statutory regime for issuer liability (July 2008) (the **HM Treasury Response**).

[4] Davies Discussion Paper, p. 7 paragraphs 83-87.

[5] See, e.g., Davies Final Report, paragraph 47.

[6] See §1.3.

nothing to suggest that it departs from his distinction between delayed publication and no publication at all.[7]

### 2.    *Allianz* and *Standard Chartered*

10.    At footnote 6 of the Plaintiffs' Memorandum, it is said that I attempt "*to sidestep Standard Chartered by asserting it "was an example of active case management of s. 90A claims," while "Allianz was a decision on the merits.*"[8] The St Louis Firemen argue that *"Allianz, too, was driven by case management reasons…*" and that "*Standard Chartered declined to follow Allianz despite "judicial comity" underscores that court's misgivings about dismissing the dishonesty delay claim for lack of later publication."*

11.    Respectfully, the point expressed at paragraphs 65-66 of my Third Declaration has been misinterpreted. The point made there is that Leech J in *Allianz* granted the Defendant's application and positively struck out the claimant's claims on the merits of the application.[9] In doing so, he found that "*Paragraph 5…does not impose liability where no publication has taken place*"[10] and thereby summarily determined the issue against the claimant on a pure point of law. For the reasons expressed in paragraphs 69 and 70 of my Third Declaration, Leech J must necessarily have had a high degree of certainty that there is a requirement for later publication when making that finding.

12.    Conversely, Green J in *Standard Chartered* refused to grant the strike out application, refused to "*decide this novel point of law*" and left the matter to be determined at a trial on the merits.[11] Indeed, in *Standard Chartered* Green J was at pains to say that he was not deciding that *Allianz* was wrong and he made no positive finding one way or the other.[12]

---

[7] See section 6, particularly paragraphs 6.1 and 6.5.

[8] Plaintiffs' Memorandum, p. 5 fn 6.

[9] [152]-[153] of that judgment.

[10] [138] of that judgment.

[11] [119] and [120] of that judgment.

[12] [85]-[88], [116]-[117] and [119] of that judgment.

-4-

That is in contrast to the positive finding made in *Allianz* which, as a result, represents the current law of England and Wales.[13]

13.    The St Louis Firemen also say that a requirement to establish a later publication would create perverse incentives for issuers to remain silent in order to avoid liability.[14] I addressed this point at paragraph 81 of my Third Declaration and would add that any such non-disclosure would in many cases amount to a breach of regulatory disclosure obligations which attract civil penalties and are enforced by the FCA.[15] In any event it is an exaggeration to say that staying silent avoids liability. It does not. Liability will follow if a plaintiff has relied upon a statement made misleading by omission.

### B.    The Alternative Case

14.    By the Plaintiffs Memorandum, an alternative case is posited. It is argued that the "*entire text*" of the FCA Decision Notice is brought within the scope of liability as a result of Barclays having referred to it in their Press Release. As a result, they argue that even if a requirement to establish a later publication did apply, the Second Amended Complaint would "*satisfy that standard*", relying upon both the words of Schedule 10A(2)(1)(b) and the HM Treasury Response, as follows:

> "On October 12, 2023, Barclays published the Press Release directing investors to the FCA Decision. ¶125. Paragraph 2 expressly includes information published "by other means where the availability of the information has been announced by the issuer by recognized means." Sch. 10A(2)(1)(b). Indeed, the U.K. government explained that this provision ensures that when a Regulated Information Service ("RIS") announcement refers to a document, "the whole text of [the document] [is brought] within the scope of the liability regime." HM Treasury Response, ¶6.13."[16]

15.    In my view this proposition rests on a flawed interpretation of the statute. In that regard, Schedule 10A(2)(1) reads, as follows:

---

[13] As explained at §67 of my Third Declaration.

[14] Plaintiffs' Memorandum, p. 7, relying on [114] of *Standard Chartered*.

[15] See, for example, the disclosure obligations arising by virtue of MAR Articles 17(1) and 17(4), DTR 2.2.1R, DTR 2.5.1R, and LR 9.2.8R and civil penalties arising under s. 123 FSMA.

[16] Plaintiffs' Memorandum, p. 8.

*"Published information to which this Schedule applies*

*2 (1) This Schedule applies to <u>information published by the issuer</u> of securities to which this Schedule applies—*

 *(a) by recognised means, or*

 *(b) by other means where the availability of the information has been announced by the issuer by recognised means."*

(underline added)

16. <u>First</u>, as I set out in my First Declaration, liability under Schedule 10A is expressly confined to information "*published by the issuer*" (para 2(1)). While the relevant material may be published by one of two methods set out in sub-sub paras 2(1)(a) and (b), it is clear from the wording of para 2(1) that in each case the material must be "*published by the issuer*". The touchstone of liability is therefore the publication of material by the person alleged to have dishonestly delayed in its publication – whether by "*recognised means*" or by "*other means*".

17. <u>Second</u>, the Decision Notice was not "*published by…*" Barclays.

 (a) The Decision Notice was originally issued by the Regulatory Decisions Committee. It was published by the FCA on 12 October 2023.

 (b) Barclays issued the Press Release later that day which, amongst other matters, acknowledged the FCA's publication of the Decision Notice and provided a brief summary of its findings. The Press Release did not in fact even attach, provide a link to, or reproduce the content of the Decision Notice.

 (c) I do not consider that Barclays' reference to the FCA's Decision Notice in the Press Release constitutes publication of the Decision Notice by Barclays for the purposes of incurring liability under Schedule 10A.

18. <u>Third</u>, paragraph 6.13 of the HM Treasury Paper cited by the St Louis Firemen in support of its position does not contradict the views I have expressed above. That paragraph contains no suggestion that the Government intended liability to extend to material published by third parties. The only example given by the Government of a document that

-6-

DECLARATION OF MARTIN MOORE K.C.

may be published by "*other means*" under Schedule 10A(2)(1)(b) is a company's annual accounts – a document that would plainly be regarded as "*published by the issuer*".

19.  <u>Finally</u>, insofar as I am aware, the St Louis Firemen's position is a novel one. To my knowledge, the point has not been the subject of judicial consideration and no claim for dishonest delay has ever succeeded against an issuer in respect of material published by a third-party.

20.  To conclude, it seems to me fundamental as a matter of statutory interpretation, that information attracting liability under Schedule 10A must be "*published by the issuer*". The guidance at paragraph 6.13 of the HM Treasury Response serves to support that conclusion. Therefore, in my view, liability cannot arise under para 5 Schedule 10A in relation to Barclays' Press Release insofar as it referred to the prior publication by the FCA of the FCA Decision Notice.

**IV.    The Basis of the Remaining Claim**

21.  It remains unclear to me as to precisely what information it is alleged that Barclays should have published, and by what time. The St Louis Firemen point loosely to the "*underlying facts*", the "*1200 email cache*" and/or "*the misleading Letter*" as the basis for their claim, without more.[17] In substance, therefore the St Louis Firemen's argument is not that the Press Release should have been made earlier but, instead, that the "*underlying facts*" should have been disclosed.

22.  In my view, that allegation is not of delayed publication at all.[18]

23.  Consequently, the Plaintiffs' Memorandum does not alleviate the concerns set out at paragraphs 108(a) and (d) of my Third Declaration. I remain of the view that the claim is, in substance, an allegation of omission or misstatement—albeit one where the reliance required to make out such a claim is missing. The English Court would not in my view permit a claimant to avoid the need to show individual reliance by seeking to recast it as a delay claim.

[17] Plaintiffs' Memorandum, p. 10.

[18] Plaintiffs' Memorandum, pp. 10-11.

## V.    Conclusion

24.    A summary of my conclusions is set out in Section II above. I remain happy to assist the Court should further questions arise.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in London, United Kingdom on October 17, 2025.

Martin Moore K.C.

-8-