**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

**HONORABLE MAAME E. FRIMPONG, U.S. DISTRICT JUDGE**

```
STEPHEN MERRITT,              )
INDIVIDUALLY AND ON BEHALF    )
OF ALL OTHERS SIMILARLY       )
SITUATED,                     )
                              )   NO. LA CV 23-09217-MEMF-(KSX)
             PLAINTIFF,       )
                              )
       VS.                    )
                              )
BARCLAYS PLC, ET AL.,         )
                              )
             DEFENDANTS.      )
_____)
```

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**
**MOTION FOR RECONSIDERATION AND STAY**
**THURSDAY, JANUARY 8, 2026**
**1:37 P.M.**
**LOS ANGELES, CALIFORNIA**

**GAYE L. LIMON, CSR NO. 7416**
FEDERAL OFFICIAL PRO TEMPORE COURT REPORTER
LIMONCSR@GMAIL.COM

UNITED STATES DISTRICT COURT

APPEARANCES:

FOR THE PLAINTIFF:          ROBBINS GELLER RUDMAN & DOWD
                           BY:  SHAWN WILLIAMS, ESQ.
                                SHAWNW@RGRDLAW.COM
                                SHAO-JIA CHANG, ESQ.
                                SCHANG@RGRDLAW.COM
                           ONE MONTGOMERY STREET
                           SUITE 1800
                           SAN FRANCISCO, CALIFORNIA 94104
                                -AND-
                           ROBBINS GELLER RUDMAN & DOWD
                           BY:  ASHLEY PRICE, ESQ.
                                APRICE@RGRDLAW.COM
                           655 WEST BROADWAY
                           SUITE 1900
                           SAN DIEGO, CALIFORNIA 92101


FOR THE DEFENDANTS         SULLIVAN & CROMWELL LLP
BARCLAYS AND               BY:  JEFFREY T. SCOTT, ESQ.
NIGEL HIGGINS:                  SCOTTJ@SULLCROM.COM
                                ADAM PARIS, ESQ.
                                PARISA@SULLCROM.COM
                                TYLER ANDREWS, ESQ.
                                ANDREWSTJ@SULLCROM.COM
                                MATTHEW PORPORA, ESQ.
                                PORPORAM@SULLCROM
                           1888 CENTURY PARK EAST
                           LOS ANGELES, CALIFORNIA 90067


FOR THE DEFENDANT          UMHOFER MITCHELL & KING LLP
JES STALEY:                BY:  MATTHEW UMHOFER, ESQ.
                                MATTHEW@UMKLAW.COM
                           11766 WILSHIRE BOULEVARD
                           SUITE 900
                           LOS ANGELES, CALIFORNIA 90025

UNITED STATES DISTRICT COURT

M A S T E R   I N D E X

THURSDAY, JANUARY 8, 2026


CHRONOLOGICAL AND ALPHABETICAL INDEX OF WITNESSES

NONE



EXHIBITS

NONE OFFERED

UNITED STATES DISTRICT COURT

THURSDAY, JANUARY 8, 2026; 1:37 P.M.

LOS ANGELES, CALIFORNIA


-OOO-


THE JUDICIAL ASSISTANT:  NOW CALLING ITEM NUMBER 8, CASE NUMBER LA CV23-09217, STEPHEN MERRITT VERSUS BARCLAYS PLC, ET AL.

COUNSEL, PLEASE STAND AND STATE YOUR APPEARANCES.

MR. WILLIAMS:  GOOD AFTERNOON, YOUR HONOR.  SHAWN WILLIAMS, ROBBINS GELLER RUDMAN & DOWD, ON BEHALF OF PLAINTIFFS.  WITH ME I HAVE MY PARTNER ASHLEY PRICE AND SHAO-JIA CHANG.

MR. SCOTT:  GOOD AFTERNOON, YOUR HONOR.  JEFF SCOTT FROM SULLIVAN AND CROMWELL REPRESENTING BARCLAYS AND NIGEL HIGGINS, TWO OF THE DEFENDANTS.  I'M HERE WITH MY PARTNERS MATTHEW PORPORA AND ADAM PARIS.

MR. UMHOFER:  GOOD AFTERNOON, YOUR HONOR.  MATTHEW UMHOFER ON BEHALF OF MR. STALEY.

THE COURT:  OKAY.  GOOD AFTERNOON TO ALL COUNSEL. THANK YOU FOR COMING IN AND ACCOMMODATING THE NEED FOR THE LATER TIME.

I TRUST THE PARTIES RECEIVED THE COURT'S TENTATIVE?

MR. WILLIAMS:  YES, YOUR HONOR.

THE COURT:  OKAY.

UNITED STATES DISTRICT COURT

MR. UMHOFER:  YES, YOUR HONOR.

THE COURT:  SINCE IT'S THE DEFENDANT'S MOTION, I'LL LET THE DEFENSE BE HEARD.  WE DO HAVE A PRETTY FULL CALENDAR THIS AFTERNOON; SO I HOPE THE PARTIES CAN LIMIT THEMSELVES TO 15 MINUTES PER SIDE.  THANK YOU.

MR. SCOTT:  THANK YOU, YOUR HONOR.  AGAIN, JEFF SCOTT FROM SULLIVAN AND CROMWELL ON BEHALF OF BARCLAYS AND MR. HIGGINS.  MR. UMHOFER, OF COURSE, REPRESENTS MR. STALEY; BUT I WILL BE ADDRESSING THE RECONSIDERATION, INTERLOCUTORY APPEAL MOTION.

MY PARTNER MATTHEW PORPORA WILL ADDRESS A FEW ISSUES RELATING TO THE STAY MOTION.

I WANTED TO START BY THANKING THE COURT FIRST FOR LAST NIGHT'S TENTATIVE RULING.  IT WAS VERY HELPFUL TO US IN TERMS OF FOCUSING ON WHAT WE NEED TO ADDRESS TODAY IN THE ARGUMENT.  THIS WAY, WE COULD BE MORE EFFICIENT.

AS YOU KNOW, YOUR HONOR, FROM THE PAPERS WE DON'T THINK THE MATERIALITY THEORY THAT'S ACTUALLY PLED IN THE COMPLAINT WORKS AS A MATTER OF LAW.  THEY EFFECTIVELY PLEAD THAT IT WAS IMPORTANT TO INVESTORS THAT MR. STALEY REMAIN AS THE CEO, AND THAT'S WHY THEY PURPORTEDLY DOWNPLAYED THE RELATIONSHIP WITH EPSTEIN.  BECAUSE THE MARKET BELIEVED THAT EPSTEIN AND STALEY HAD A CLOSE RELATIONSHIP, HE MIGHT BE FORCED TO RESIGN OR HE MIGHT BE FIRED FROM THE COMPANY.

THE COURT:  LET ME ASK YOU A QUESTION.

MR. SCOTT:  YES, YOUR HONOR.

UNITED STATES DISTRICT COURT

THE COURT:  SOMETHING THAT I SAW IN YOUR BRIEF AND I WASN'T SURE IF I WAS MISUNDERSTANDING THE CITATION, BUT IN YOUR BRIEF YOU INDICATE THAT THE PLAINTIFFS HAVE GIVEN ONE REASON WHY THIS INFORMATION WAS MATERIAL, AND YOU CITE TO A PARTICULAR PARAGRAPH OF THE AMENDED COMPLAINT, AND I JUST -- I DIDN'T SEE IT THERE; SO I WASN'T SURE IF YOU'RE INTERPRETING IT IN THAT WAY OR I WAS MISSING SOMETHING.

SO I BELIEVE YOU INDICATE THAT THIS IS FOUND IN PARAGRAPH 76 AND SO THAT'S WHAT YOU CITE TO.

MR. SCOTT:  YES.

THE COURT:  IF YOU COULD JUST ADDRESS THAT.

MR. SCOTT:  YES, YOUR HONOR.  SO IF YOU READ THE PARAGRAPH FROM 76, IT SAYS THE MARKET ANALYSTS WHO ARE INTERMEDIARIES FOR WHAT'S IMPORTANT TO INVESTORS WERE COMFORTED BY DEFENDANT'S MISREPRESENTATIONS AND VOICED SUPPORT FOR MR. STALEY IN LIGHT OF THE SOLID FINANCIAL PERFORMANCE HE APPEARED TO DELIVER.  AND SO IN THERE, THERE IS A DISCUSSION ABOUT THEM BEING COMFORTABLE BECAUSE THEY LIED -- "WE'RE SAYING WE LIED AND DOWNPLAYED THE RELATIONSHIP, AND AS A RESULT OF THAT, HE WOULD CONTINUE ON AS THE CEO."

SO I THINK WHAT'S GOING ON HERE, IN TERMS OF THE PLEADING, WE TALKED ABOUT THE CBS CASE.  I THINK THIS IS THE PLAYBOOK FOR THIS CASE, WHICH WAS LES MOONVES HAD SOME INVOLVEMENT IN THE #METOO MOVEMENT.  CBS MADE SOME STATEMENTS WHERE THEY DOWNPLAYED HIS INVOLVEMENT.

THE COURT: LET ME ASK YOU THIS QUESTION BECAUSE I THINK THAT THE PLAINTIFFS DISAGREE WITH YOUR CHARACTERIZATION OF THEIR THEORY OF MATERIALITY. SO I JUST WANTED TO BE CLEAR. YOU ARE READING THIS PARAGRAPH TO MEAN THAT THIS IS WHY THIS INFORMATION WAS MATERIAL. THIS IS THE ONLY REASON IT'S MATERIAL IN THIS PARTICULAR WAY, HENCE, YOUR OTHER ARGUMENTS. I WANT TO BE CLEAR. THEY DIDN'T SAY IT THAT WAY.

MR. SCOTT: RIGHT.

THE COURT: OKAY.

MR. SCOTT: THAT'S RIGHT. BUT, OF COURSE, THEY HAVE TO PLEAD MATERIALITY. SO WHEN YOU LOOK TO THE COMPLAINT FOR SOMETHING -- AND WE DO CITE THE RETAIL WHOLESALE CASE, WHICH SAYS THAT INFORMATION IS ONLY MATERIAL TO INVESTORS IF IT RELATES TO THEIR DECISION-MAKING CONCERNING THEIR INVESTMENT, AND THIS IS 845 F.3D 1268, 1274 (2017) NINTH CIRCUIT CASE. IT CAN'T JUST BE THAT THE INFORMATION IS GENERALLY IMPORTANT TO THE MARKET OR INTERESTING. IT HAS TO RELATE TO AN INVESTMENT DECISION.

THE COURT: AND I UNDERSTAND THAT. I JUST -- I UNDERSTAND NOW WHAT YOU WERE TRYING TO DO. I WAS CONFUSED BECAUSE IT SEEMED THAT YOU WERE STATING SOMETHING THAT I DIDN'T SEE IN THAT PARAGRAPH, BUT I UNDERSTAND THE POINT THAT YOU ARE MAKING.

MR. SCOTT: RIGHT. SO WE LOOKED THROUGH COMPLAINTS. WHAT COULD IT BE ABOUT THE RELATIONSHIP BETWEEN STALEY AND EPSTEIN, THEIR PERSONAL RELATIONSHIP, THAT MIGHT CAUSE AN

UNITED STATES DISTRICT COURT

INVESTOR -- LET'S CALL "PENCO" -- TO SAY, "I WANT TO CONTINUE TO HOLD SECURITIES AT BARCLAYS.  I WANT TO PURCHASE BARCLAYS AS SECURITIES.  MR. STALEY IS GOING TO GREAT JOB, RIGHT, AND HE'S A GOOD STEWARD OF THE COMPANY, AND BECAUSE OF THAT WE DON'T WANT TO LOSE HIM."  AND IF HE CAN DOWNPLAY THE RELATIONSHIP, HE GETS TO CONTINUE ON AS CEO.  THAT'S EXACTLY WHAT THEY WERE ALLEGING IN THE CBS COURT CASE, AND I THINK THAT'S THE PLAYBOOK THEY WERE PLAYING HERE.

NOW, THE PROBLEM HERE, AS WE KNOW, IS, WHEN MR. STALEY RESIGNED FROM THE COMPANY ON NOVEMBER 1, 2021, TWO YEARS EFFECTIVELY BEFORE THE ALLEGED CORRECTIVE DISCLOSURE, THERE WAS NO STOCK PRICE REACTION; SO THAT CONTRADICTS ANY NOTION THAT INVESTORS ACTUALLY CARED THAT MR. STALEY SHOULD CONTINUE TO RUN THE COMPANY AS THE CEO.  IF THEY REALLY DID BELIEVE THAT THE SUCCESS -- THE FINANCIAL SUCCESS OF BARCLAYS REVOLVED AROUND MR. STALEY BEING THE STEWARD OF THE BANK AS THE CEO, YOU WOULD EXPECT THE STOCK PRICE TO DROP, AND IT DID NOT DROP.

AND I THINK THAT'S WHY THE PLAINTIFFS DON'T EVEN REALLY DEFEND THIS THEORY IN THE COMPLAINT.  THEY DON'T DEFEND IT EITHER ON THE MOTION TO DISMISS OR THE MOTION FOR RECONSIDERATION BECAUSE IT REALLY DOESN'T WORK, AND WHAT THIS COURT WENT TO INSTEAD OF THAT BASED ON THEIR ARGUMENT IN TERMS OF MATERIALITY THEORIES IS THAT YOU SAID -- WELL, IN THE TENTATIVE RULING WHAT YOU SAID WAS THERE REALLY IS ANOTHER THEORY IN THE COMPLAINT, AND THE THEORY IS WE MADE A

UNITED STATES DISTRICT COURT

BUNCH OF STATEMENTS, ONE ON THE FIRST DAY OF THE CLASS PERIOD, WHERE WE EFFECTIVELY, ACCORDING TO PLAINTIFFS, TRIED TO MAKE IT APPEAR AS THOUGH THE RELATIONSHIP WAS PROFESSIONAL; AND WE FOUND OUT LATER ON, WHEN WE GOT THE OCTOBER 12, 2023, DISCLOSURE BY THE FCA, IT, IN FACT, WASN'T ACTUALLY A PERSONAL -- A PROFESSIONAL RELATIONSHIP; IT WAS PERSONAL.  I WOULD SUGGEST TO THE COURT THAT THAT IS THE WRONG ISSUE.  THAT GOES TO DECEPTION, FALSITY.  THE DISCLOSURE MAY HAVE FURTHER BEEN INFORMATION THAT THE STATEMENT WAS FALSE, BUT IT DOESN'T ANSWER THE QUESTION AS TO WHETHER OR NOT THE CHALLENGED STATEMENTS -- THE EIGHT OR NINE CHALLENGED STATEMENTS AT THE TIME THEY WERE MADE WERE MATERIAL TO INVESTORS.

IF YOU STRIP AWAY THE FACT THAT -- AND THE PLAINTIFFS AREN'T DEFENDING THIS.  THEY AREN'T DEFENDING THE POINT THAT IT WAS IMPORTANT FOR MR. STALEY TO REMAIN AS THE CEO; SO THEY'RE NOT REALLY MAKING THAT POINT.  SO IF IT IS JUST THE PERSONAL RELATIONSHIP, THE INTERESTING DETAILS ABOUT THAT RELATIONSHIP, THAT HAS NOTHING TO DO WITH FINANCIAL MATTERS AT BARCLAY, THE FINANCIAL PERFORMANCE OF THE COMPANY. IT'S JUST PERSONAL INFORMATION; SO THERE'S NO REASON A REASONABLE INVESTOR SHOULD BE INTERESTED THAT FROM A SECURITIES LAW PERSPECTIVE.

AND SO THAT'S WHY WE THINK THEY HAVEN'T PLED A THEORY OF MATERIALITY HERE, AND THAT'S WHY WE THINK THE COURT WOULD BE WELL WITHIN ITS EXERCISE OF ITS DISCRETION TO

RECONSIDER THE RULING ON MATERIALITY AND DISMISS THE SECTION 10(B) CLAIM.

IF THE COURT WEREN'T GOING TO DO THAT, I DO THINK THERE'S ALSO A BASIS FOR INTERLOCUTORY APPEAL HERE.  YOUR HONOR SAID, WITH RESPECT TO THE THREE ELEMENTS, TWO OF THEM HAD BEEN SATISFIED -- THE ONE IS THERE IS A CONTROLLING QUESTION OF LAW AND THE SECOND WAS IN A FOOTNOTE YOU SAID THERE WOULD BE A RESOLUTION.  A RESOLUTION OF THE ISSUE WOULD MATERIALLY ADVANCE THE LITIGATION BECAUSE IT'S JUST A 90(A) CLAIMS LEFT IF WE GET RID OF THE 10(B).  THE SUPREME COURT IS KIND OF DIRECTING LOWER COURTS, "YOU REALLY SHOULD KICK THAT CLAIM" I THINK THE LANGUAGE YOU USED, AND THAT WAS THE LANGUAGE THAT WAS IN THE SUPREME COURT DECISION.

THE ISSUE WE FOUND WE DIDN'T SATISFY WAS, WAS THERE A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION WITH RESPECT TO REASONABLE JURISTS?  AND I WOULD SUGGEST THERE, YOUR HONOR, THERE IS.  THE CBS COURT CASE AND THE GREENHOUSE DECISION IS THEY STAND FOR THE PROPOSITION THAT THE PERSONAL ISSUES NEED TO RELATE TO FINANCIAL MATTERS OR THE FINANCIAL SUCCESS OF THE COMPANY TO BE MATERIAL.  THAT'S WHAT BOTH OF THOSE OPINIONS ARE EFFECTIVELY SAYING.

AND BECAUSE MR. STALEY WAS GONE FROM THE COMPANY, THESE STATEMENTS ABOUT THE EPSTEIN RELATIONSHIP REALLY ARE PURELY PERSONAL IN NATURE; AND SO THERE IS A DIFFERENCE OF OPINION THAT REASONABLE JURORS COULD HAVE ABOUT THIS ISSUE; SO WE THINK WE SATISFIED THE THIRD ELEMENT THERE.  AND SO THE

UNITED STATES DISTRICT COURT

COURT DOESN'T GRANT RECONSIDERATION, WE WOULD ASK THAT THE COURT ALLOW INTERLOCUTORY APPEAL ON THAT ISSUE.

JUST VERY BRIEFLY ON THE LOSS CAUSATION ARGUMENT, YOUR HONOR.  SO THE NEKTAR CASE IS A CASE FROM THE NINTH CIRCUIT THAT WE CITE IN OUR PAPERS THAT'S NOT CITED IN THE TENTATIVE RULING, AND IT SAYS THERE -- THE NINTH CIRCUIT SAID THERE THAT, "IN ORDER FOR AN ALLEGED CORRECTIVE DISCLOSURE TO BE A BASIS OF LOSS CAUSATION, IT MUST PROVIDE NEW INFORMATION TO THE MARKET THAT EXPOSES THE ALLEGED FALSITY OF THE CHALLENGED STATEMENTS," IN OTHER WORDS, NEW INFORMATION OF THE MARKET.

WE KNOW THE OCTOBER 12, 2023, DISCLOSURE COULD NOT HAVE PROVIDED NEW INFORMATION TO THE MARKET ABOUT THE PERSONAL RELATIONSHIP BETWEEN EPSTEIN AND STALEY BECAUSE THERE WERE DOZENS OF ARTICLES IN THE PRESS BY THEN.  BARCLAYS ITSELF HAD DISCLOSED IT, AND THE PLAINTIFFS DON'T REALLY DISPUTE THAT THIS INFORMATION WAS ALREADY IN THE MARKETPLACE; AND WE KNOW UNDER NINTH CIRCUIT PRECEDENCE, WHEN YOU ARE JUST CONFIRMING ALREADY-KNOWN PUBLIC FACTS, THAT'S NOT A BASIS FOR LOSS CAUSATION.

HOWEVER, YOUR HONOR, SO WHAT THEY SAY, THOUGH, IS THEIR NEW INFORMATION THAT WAS DISCLOSED BY THE OCTOBER 12, 2023, DISCLOSURE AND THAT NEW INFORMATION WAS APPARENTLY THAT BARCLAY SOMEHOW DID NOT COOPERATE WITH THE REGULATORS, AND THEY DO HAVE ONE STATEMENT THAT BARCLAYS MADE THAT THEY'RE CHALLENGING AS FALSE THAT WE SAID WE WERE COOPERATING

UNITED STATES DISTRICT COURT

GENERALLY.  IT DIDN'T RELATE TO THE EPSTEIN MATTER, BUT WE MADE A GENERAL STATEMENT THAT BARCLAYS COOPERATING --

THE COURT:  BEFORE YOU GET TO THAT, WHAT CASE LAW WOULD YOU RELY ON FOR THE IDEA THAT THE CASE LAW CONCERNING -- CONFIRMING ALREADY-KNOWN PUBLIC FACTS ALSO APPLIES TO ALSO APPLIES TO A FINDING BY A BODY?

MR. SCOTT:  SO WE HAVE THE HERBALIFE DECISION, AND WE'LL GET YOU THE TWO OTHER DECISIONS, THE DISTRICT COURT DECISIONS, IN OUR PAPERS.  WE'LL GRAB THEM AFTER THE BREAK. I DON'T HAVE THEM RIGHT NOW.  BUT TWO DECISIONS WHERE THEY SAY, WHERE IT'S CONFIRMATORY IN NATURE, IT CAN'T BE NEW INFORMATION.  THAT MAKES SENSE.  YOU ARE JUST CONFIRMING PRIOR INFORMATION.  AND THE PLAINTIFFS WRITE IN THEIR PAPERS, ARGUE THERE IS SOMETHING NEW BECAUSE THEY KNOW THIS CASE LAW. AND SO YOU HAVE TO SAY WHAT IS THE NEW THING IN THE MARKETPLACE?  WHAT THEY'RE SAYING THE NEW DETAILS WERE PURPORTEDLY BARCLAYS' FAILURE TO COOPERATE, AND THEY CITE TO THE FCA DECISION FROM OCTOBER 12, 2023.  BUT THAT DECISION DOESN'T SAY ANYTHING ABOUT BARCLAYS' PURPORTED FAILURE TO COOPERATE.  WHAT IT SAYS IS THAT MR. STALEY FAILED TO COOPERATE, AND IT SAYS ALSO THAT MR. STALEY LIED TO BARCLAYS.

NOW, WE HAVE COUNSEL FOR MR. STALEY HERE, AND HE TAKES THE POSITION HE DISAGREES WITH THAT SECOND PIECE OF THAT.  SO I JUST WANTED TO NOTE THAT FOR THE RECORD.

BUT THERE'S NOTHING IN THAT DECISION THAT SAYS THE BARCLAYS FAILED TO COOPERATE, NOTHING AT ALL.  IN FACT,

IT SAYS THE BARCLAYS BOARD WAS THE VICTIM OF THE LIE, AND THE FCA HASN'T MADE THAT FINDING.

IT ALSO HAS THE AUTHORITY TO SANCTION BARCLAYS IF, IN FACT, BARCLAYS AS A REGULATED ENTITY FAILED TO COOPERATE WITH AN INVESTIGATION.  THEY DO THAT ALL THE TIME. THEY DIDN'T SANCTION BARCLAYS.  THEY DIDN'T SANCTION BARCLAYS BECAUSE THE FCA DECISION SAYS THE ONLY ONE THAT KNEW THE EXTENT OF THE PERSONAL RELATIONSHIP WAS MR. STALEY, NOT BARCLAYS.  AND SO THAT CAN'T BE A CORRECTIVE DISCLOSURE.

WHAT THE PLAINTIFFS ARE ARGUING IT CORRECTED THE STATEMENT THAT BARCLAYS SAID TO THE MARKET, "WE COOPERATE WITH REGULATORS," BUT THERE'S NOTHING IN THE FCA DISCLOSURE FROM 2023 THAT ACTUALLY SAYS BARCLAYS'S NOT COOPERATING; SO IT CAN'T BE A CORRECTIVE DISCLOSURE; SO THEY'RE LEFT WITHOUT A VIABLE BASIS FOR LOSS CAUSATION.

THE LAST THING I WOULD SAY, YOUR HONOR, I ALSO THINK ON THIS POINT CERTAINLY WE MEET THE FIRST AND THIRD PRONGS.  I THINK ON THIS ONE YOUR HONOR SAID YOU DIDN'T THINK THERE WAS A CONTROLLING QUESTION OF LAW, BUT I WOULD SUGGEST THERE IS A CONTROLLING QUESTION OF LAW IN THE CONTEXT OF THIS COMPLAINT.

THE CASE LAW DOES SAY IT HAS TO BE CONFIRMATORY -- IT CAN'T BE CONFIRMATORY; IT HAS TO BE NEW INFORMATION.  WE KNOW THAT INFORMATION ABOUT THE PERSONAL RELATIONSHIP WASN'T NEW, AND THE COOPERATION PIECE OF IT ISN'T IN THE FCA DECISION; SO IT IS NOT A CORRECTIVE

UNITED STATES DISTRICT COURT

DISCLOSURE.

AND I WOULD SAY -- WE POINT THE JUDGE FISHER'S DECISION FROM HERBALIFE, AND THAT ADDRESSES THE EXACT SCENARIO HERE.  IN THAT CASE JUDGE FISHER FOUND THAT THE PLAINTIFFS THERE HAD NOT PLED LOSS CAUSATION BECAUSE, QUOTE, "THE COMPLAINT HAD INCLUDED ALLEGATION ABOUT ADDITIONAL EVENTS," IN OTHER WORDS, DISCLOSURES THAT HAD, QUOTE, "ALREADY REVEALED HERBALIFE'S FRAUDULENT PRACTICES TO THE MARKET."  AND SO IN THAT CASE SHE FOUND THAT THE CORRECTIVE DISCLOSURE WAS FACT -- IT WAS CONFIRMATORY.  IT WASN'T REVEALING NEW INFORMATION.

IT IS A VERY SIMILAR SITUATION TO WHAT WE HAVE HERE.  AND SO SHE'S A REASONABLE JURIST, YOUR HONOR; YOU'RE A REASONABLE JURIST, YOUR HONOR.  SO I THINK WE SATISFIED THAT PRONG; AND, OF COURSE, IF THE SECTION 10(B) CLAIM WAS DISMISSED FROM THE CASE, THE 90(A) CLAIMS NEED TO BE KICKED.

THAT'S ALL I HAVE ON THIS POINT UNLESS YOU HAVE ANY QUESTIONS FOR ME.

THE COURT:  NO.  I MEAN I THINK YOU APPRECIATE THAT THE FACT THAT DIFFERENT DISTRICT COURTS COME TO DIFFERENT DECISIONS ON THE ISSUE.  THAT'S NOT ENOUGH FOR AN INTERLOCUTORY APPEAL.  WE'D HAVE THEM ON EVERY CASE.  I THINK YOU KNOW THAT.

MR. SCOTT:  YES.  THANK YOU, YOUR HONOR.

THE COURT:  OKAY.  WAS THERE SOMETHING ELSE ON THE STAY BRIEFLY?

MR. PORPORA:  YOUR HONOR, TO BE VERY BRIEF BECAUSE I KNOW YOU DO HAVE A FULL CALENDAR, AGAIN, MATTHEW PORPORA, SULLIVAN AND CROMWELL, FOR THE SAME DEFENDANTS AS MR. SCOTT MENTIONED.

YOUR HONOR, I THINK THE TENTATIVE GOT IT EXACTLY RIGHT.  I WON'T BELABOR THAT POINT.  I DO BELIEVE THE STATE PROVISION IS UNAMBIGUOUS ON ITS FACE.  IT REQUIRES THAT THERE BE NO DISCOVERY WHEN THERE'S ANY PENDING MOTION TO DISMISS, AND I THINK YOUR HONOR GOT IT EXACTLY RIGHT THAT THE NINTH CIRCUIT HAS ALREADY WEIGHED IN ON THAT IN THE PETRIE DECISION.

THE ONE THING THAT I WOULD ASK, YOUR HONOR, IS TO ISSUE AN ORDER THAT STAYS THE DEADLINES IN THE CASE THAT ARE ONGOING RIGHT NOW, AND THAT RELIEF IS EXPRESSLY ASKED FOR AT PAGE 5 OF DEFENDANT'S MOVING BRIEF ON THE STAY MOTION. THAT'S AT DOCKET 102.

AND THE REASON FOR THAT, YOUR HONOR, THE REASON WHY IT'S IMPORTANT IS THAT WE ARE CURRENTLY IN THE PROCESS OF BRIEFING CLASS CERTIFICATION; AND, YOUR HONOR, CLASS CERTIFICATION OF COURSE IS AN EVIDENTIARY MOTION.  THE PLAINTIFFS HAVE PUT IN EVIDENCE ON THAT.  WE NEED TO HAVE DISCOVERY INTO THAT EVIDENCE.  WE WILL BE ABLE TO PUT IN EVIDENCE, AND THE PLAINTIFFS OF COURSE IN TURN WILL BE ABLE TO TAKE DISCOVERY OF US.

GIVEN THAT THE PSR'S STAY IS AUTOMATIC, ALL OF THAT DISCOVERY CANNOT TAKE PLACE RIGHT NOW PURSUANT TO YOUR

HONOR'S TENTATIVE, WHICH, AGAIN, I THINK IS EXACTLY RIGHT; SO WE WOULD ASK THAT YOUR HONOR ISSUE A RULING THAT MAKES CLEAR THAT THE DISCOVERY CANNOT GO FORWARD.  WHAT WE WOULD PROPOSE IS THAT, ONCE YOUR HONOR RULES ON THE MOTION TO DISMISS THE SECTION 90(A) CLAIM, AT A REASONABLE PERIOD OF TIME THEREAFTER, WE WORK WITH THE PLAINTIFFS TO SUBMIT TO YOUR HONOR A REVISED CASE SCHEDULE THAT WOULD MAKE APPROPRIATE ACCOMMODATIONS IN ORDER TO PUSH BACK THOSE DEADLINES.

THE COURT:  THANK YOU.

MR. PORPORA:  THANK YOU.

THE COURT:  LET ME HEAR FROM PLAINTIFFS' COUNSEL.

MR. WILLIAMS:  GOOD AFTERNOON, YOUR HONOR.  SHAWN WILLIAMS, ROBBINS GELLER RUDMAN & DOWD.

THE COURT:  I SHOULD HAVE MENTIONED THIS BEFORE, IF YOU NEED TO ADJUST THE PODIUM, THERE IS A BUTTON ON THE TOP OF THE PODIUM TO THE RIGHT OF THE MICROPHONE.

MR. WILLIAMS:  I THINK I'LL BE OKAY.

THE COURT:  OKAY.

MR. WILLIAMS:  YOUR HONOR, WE WERE HERE BACK IN MAY OF 2025.  YOUR HONOR WAS HEARING ARGUMENT TESTING THE ADEQUACY OF THE AMENDED COMPLAINT THAT WE FILED.  AND AS YOU KNOW, WE -- PLAINTIFFS WERE UNDER -- AT LEAST WE HAD TO MEET THE HEIGHTENED PLEADING STANDARD OF THE PSR, AND THAT BURDEN WAS VERY, VERY HIGH.  WE SATISFIED THAT AS YOUR HONOR RULED IN JUNE.

TODAY WE ARE HERE AND THE DEFENDANTS ARE HERE ON

UNITED STATES DISTRICT COURT

A MOTION FOR RECONSIDERATION, AND THE STANDARD THAT THEY HAVE TO MEET IN ORDER FOR THE COURT TO RECONSIDER ITS RULING OF JUNE OF -- 24TH OR 25TH OF 2025 IS ALSO VERY, VERY HIGH. THEY HAVE NOT COME CLOSE.

YOUR HONOR'S TENTATIVE OF LAST NIGHT WAS ALSO VERY, VERY HELPFUL. WE DON'T HAVE ANY QUARREL WITH THE COURT'S TENTATIVE ON THE MOTION FOR RECONSIDERATION. THERE ARE NO NEW FACTS. THERE IS NO NEW LAW. AND YOUR HONOR THOROUGHLY ANALYZED THE VERY ARGUMENTS THAT COUNSEL STOOD UP HERE AND ARGUED AGAIN TODAY.

IT MAY BE THAT BECAUSE THERE'S NEW COUNSEL IN THE CASE AND THEY WEREN'T HERE WHEN WE STOOD BEFORE YOU FOR THREE HOURS ABOUT EIGHT MONTHS AGO.

THE COURT: WAS IT THREE HOURS? OH, MY.

MR. WILLIAMS: WE TALKED FOR -- YOU HAD A LARGE CALENDAR ON THAT DAY AS WELL, AND WHAT YOU ENDED UP DOING IS WE HAD TO TAKE A BREAK DURING LUNCH, AND WE CAME BACK AFTERWARDS, AND WE TALKED FOR A VERY LONG TIME.

THE COURT: I DON'T GIVE ANYONE THREE HOURS THESE DAYS.

MR. WILLIAMS: YEAH. IT WAS INTERMITTENT.

THE COURT: GOT IT.

MR. WILLIAMS: THERE WERE OTHER THINGS GOING ON.

WE CITED FOR YOUR HONOR THE TRANSCRIPT OF THAT HEARING WHERE, NOT ONLY WERE THESE ARGUMENTS MADE, THEY WERE ADDRESSED VERY, VERY THOROUGHLY. ON THE -- ON THE -- RECONSIDERATION --

UNITED STATES DISTRICT COURT

THE COURT: CAN YOU JUST ADDRESS THIS ARGUMENT MADE MY DEFENSE COUNSEL REGARDING WHAT YOUR THEORY OF MATERIALITY IS IN THE COMPLAINT AND WHETHER OR NOT IT IS VIABLE?

MR. WILLIAMS: SURE, YOUR HONOR. FIRST THING I WANT TO SAY ABOUT MATERIALITY AMONG THE ELEMENTS OF A 10(B) CLAIM MATERIALITY IS THE LOWEST OF THE BURDENS OF ESTABLISHING AND PLEADING MATERIALITY. AND GENERALLY THROUGHOUT THE COMPLAINT, WE ALLEGE THAT BARCLAYS AND MR. STALEY MISREPRESENTED THE SCOPE OF THE RELATIONSHIP THAT MR. EPSTEIN -- I'M SORRY -- THAT MR. STALEY HAD WITH MR. EPSTEIN. IN FACT, THEY LIED ABOUT IT, SO DID MR. STALEY. AND THOSE REPRESENTATIONS AND OMISSIONS WERE IMPORTANT TO THE INVESTMENT COMMUNITIES. NOT ONLY WERE THEY IMPORTANT TO THE INVESTMENT COMMUNITY, THEY WERE IMPORTANT TO THE REGULATORY BODY THAT GOVERNS BANKING INSTITUTIONS IN THE UK.

AND WHAT'S NOT IN THE COMPLAINT AND WHAT WE'VE ALL SEEN OVER THE LAST SEVEN OR EIGHT MONTHS OR SO, THESE FACTS SEEM TO BE IMPORTANT TO A LOT OF PEOPLE. SO, YOU KNOW, THE MATERIALITY ISSUE SUGGESTING THAT WE HAVEN'T ALLEGED MATERIALITY, I.E., THAT THE SCOPE OF THIS RELATIONSHIP IS NOT IMPORTANT TO THE INVESTING PUBLIC, IS ABSURD. OUR CLIENTS LOST MONEY WHEN THE TRUTH ABOUT THE SCOPE OF THIS RELATIONSHIP WAS REVEALED.

THE COURT: WELL, DEFENSE COUNSEL SAYS THAT YOUR THEORY IS ALL ABOUT WHETHER MR. STALEY COULD CONTINUE AS THE CEO, AND -- AND THAT THEORY FAILS FOR A NUMBER OF REASONS

UNITED STATES DISTRICT COURT

INCLUDING THAT, WHEN HE WAS NO LONGER THE CEO, NO ONE CARED.

MR. WILLIAMS:  I UNDERSTOOD -- AT LEAST I THINK I UNDERSTOOD WHAT I READ IN THEIR PAPERS; AND, IN FACT, I THINK WE SAID IN OUR PAPERS THAT THEY MISCHARACTERIZED OUR ALLEGATIONS.

THE COURT:  HOW WOULD YOU CHARACTERIZE WHY THIS INFORMATION WAS IMPORTANT TO THE INVESTMENT COMMUNITY?

MR. WILLIAMS:  I'M SORRY, YOUR HONOR.  WHAT I JUST DESCRIBED OR --

THE COURT:  YEAH.  HOW WOULD YOU -- BECAUSE HE'S SAYING THAT YOU ALLEGE IN YOUR COMPLAINT THAT THE REASON WHY THE SCOPE OF THE RELATIONSHIP WAS IMPORTANT TO THE INVESTMENT COMMUNITY WAS BECAUSE, IF PEOPLE KNEW THE TRUE EXTENT, STALEY WOULD HAVE TO STEP DOWN, AND EVERYONE LOVED HIM; HE WAS SO GREAT.  SO GIVEN THAT YOU ARE SAYING THAT'S NOT QUITE YOUR THEORY, HOW WOULD YOU CHARACTERIZE IT?

MR. WILLIAMS:  OUR THEORY -- I BET THAT'S PART OF THE TOTAL MIX; BUT IN OUR VIEW, THE FACT IS THAT, IF BARCLAYS AND MR. STALEY WERE GOING TO MISREPRESENT THE FACTS AROUND THIS PARTICULAR RELATIONSHIP, WHAT ELSE ARE THEY MISREPRESENTING? WHAT ELSE IS IT THAT WE DON'T KNOW ABOUT THE COMPANY, I.E., BARCLAYS', ABILITY TO, NOT ONLY DO DUE DILIGENCE ON ITS OWN CEO, BUT DUE DILIGENCE -- DO DUE DILIGENCE ON ALL THE OTHER REGULATORY MATTERS THAT AFFECT THE FINANCIAL CONDITION OF BARCLAYS?

THESE ARE VERY SERIOUS ALLEGATIONS.  ONE OF THE

UNITED STATES DISTRICT COURT

THINGS THAT MY PARTNER ARGUED TO YOU SIX OR SEVEN MONTHS AGO WAS THAT BARCLAYS IS SUBJECT TO A SIGNIFICANT AMOUNT OF REGULATORY STATUTES REGARDING SEX TRAFFICKING, DRUG TRAFFICKING, MONEY LAUNDERING, AND OTHERS THAT I CAN'T NAME. IN FACT, I DON'T THINK WE CITED IN OUR PAPERS AND I CAN FIND IT FOR YOU.  ONLY ABOUT FOUR MONTHS AGO I THINK THAT BARCLAYS WAS SANCTIONED FOR VIOLATING MONEY LAUNDERING LAWS.  I WANT TO BE CAREFUL ABOUT THAT BECAUSE I THINK I HAVE IT IN MY -- IN MY MATERIAL, BUT I'M NOT CERTAIN.  I CAN ACTUALLY SUBMIT FOR YOUR HONOR.

BUT THE POINT IS THAT, IF INVESTORS ARE INVESTING IN A COMPANY THAT CANNOT MANAGE ITS OWN FINANCIAL CONDITION MUCH LESS ITS CEO, THEN THAT INVESTMENT MAY NOT BE WHAT THEY THINK IT IS.  MAYBE THEY'LL TAKE THEIR MONEY AND INVEST IT IN OTHER PLACES.  AND WE KNOW THAT BECAUSE THE STOCK PRICE DECLINED WHEN THE TRUTH WAS ACTUALLY REVEALED WHEN A REGULATORY AGENCY SAID, "UM, WHAT YOU WROTE TO US WAS A LIE; IT WAS NOT TRUE."

THE COURT:  CAN YOU ADDRESS DEFENSE COUNSEL'S POINT THAT THE DECISION SAID NOTHING ABOUT BARCLAYS' LACK OF COOPERATION.

MR. WILLIAMS:  I DON'T THINK -- I DON'T THINK THE DECISION MADE -- USES THOSE SPECIFIC WORDS.  BUT AS YOUR HONOR INDICATED AND I THINK WE ARGUED BEFORE, THERE WAS A VERY STRONG INFERENCE FROM THE CONCLUSION THAT THEY WERE NOT COOPERATING.

AGAIN, I THINK MS. PRICE STOOD BEFORE YOU SEVERAL MONTHS AGO AND -- AND -- AND EXPLAINED THAT IF, IN FACT, YOU'RE TELLING YOUR INVESTORS THAT YOU'RE COOPERATING WITH THE AUTHORITIES, THAT IS INCONSISTENT WITH SUBMITTING A LETTER THAT INCLUDES VERY SPECIFIC LIES ABOUT THE VERY TOPIC THAT THE FCA IS INVESTIGATING.  I DON'T KNOW THAT -- YOU KNOW, MOST PEOPLE WHO READ THAT FCA DECISION I THINK -- AND MAYBE WE'LL HAVE A JURY HERE IN A YEAR OR SO AND WE'LL MAKE THE SAME ARGUMENTS TO THEM -- THEY UNDERSTOOD THAT THAT'S NOT COOPERATION; RIGHT?  SO I THINK THAT'S HOW I WOULD ADDRESS THAT QUESTION, YOUR HONOR.

SO ON THE -- ON THE -- ON THE RECONSIDERATION PORTION OF YOUR HONOR'S TENTATIVE, WE ARE COMFORTABLE WITH IT.  WE THINK YOU GOT IT RIGHT.  WE THINK YOU GOT IT RIGHT SIX MONTHS AGO.  HOPEFULLY WE DON'T HAVE TO DO THAT ONE MORE TIME.

I DO HAVE A COMMENT ON THE 1292(B), AND I THINK THERE, WHILE WE AGREE WITH THE COURT'S ULTIMATE CONCLUSION THAT THIS IS NOT AN APPROPRIATE CASE TO CERTIFY TO THE CIRCUIT, I DO WANT TO ADDRESS THE COURT'S RULING THAT THE -- THAT THE QUESTION THAT THEY ASK TO BE PRESENTED, I.E., WHETHER A CEO'S PERSONAL CONDUCT PRIOR TO BEING APPOINTED CEO CAN BE MATERIAL AS A MATTER OF LAW.

I -- I -- WE DISAGREE WITH THE CONCLUSION THAT THAT IS A CONTROLLING QUESTION OF LAW.  WE THINK THAT THE QUESTION THAT THEY'VE ASKED YOU TO CERTIFY VIOLATES THE

UNITED STATES DISTRICT COURT

SUPREME COURT'S RULING IN MATRIXX AND BASIC, WHICH BASICALLY PROHIBITS THE IDENTIFICATION OF A BRIGHT LINE FOR MATERIALITY.  I THINK THAT WHAT THEY'VE ASKED FOR IS A RULING OR THE CERTIFICATION OF A QUESTION THAT SAYS WHEN -- A CEO'S PERSONAL CONDUCT PRIOR TO THE APPOINTING CEO CANNOT BE MATERIAL AS A MATTER OF LAW.  IT'S EXACTLY WHAT THE SUPREME COURT SAID IN BASIC YOU CANNOT DO.  AND IN BASIC VERSUS LEVINSON, THE ISSUE WAS WHETHER OR NOT MERGER NEGOTIATIONS OR PRELIMINARY MERGER NEGOTIATIONS COULD BE MATERIAL, AND THERE THE DEFENDANTS ARGUED THAT THOSE THAT -- BECAUSE THEY WERE PRELIMINARY, SUCH QUESTIONS -- THAT ISSUE COULD NOT BE MATERIAL TO -- TO -- TO THE INVESTMENT COMMUNITY.  AND THE SUPREME COURT SAID NO.  IN FACT, I THINK I HAVE THE LANGUAGE BEFORE ME IF YOU GIVE ME ONE SECOND, YOUR HONOR.

(BRIEF PAUSE.)

MR. WILLIAMS:  AND I'M READING FROM MATRIXX INITIATIVES VERSUS SIRACUSANO, 563 U.S. 27 AT 38 AND 39.  THE SUPREME COURT SAYS, "BASIC INVOLVED THE CLAIM DEFENDANT HAD MADE MISLEADING STATEMENTS DENYING THAT IT WAS ENGAGED IN MERGER NEGOTIATIONS WHEN IT WAS, IN FACT, CONDUCTING PRELIMINARY NEGOTIATIONS.  THE DEFENDANT URGED A BRIGHT LINE RULE THAT PRELIMINARY MERGER NEGOTIATIONS ARE MATERIAL ONLY ONCE THE PARTIES TO THE NEGOTIATIONS REACH AN AGREEMENT IN PRINCIPLE.  WE OBSERVED THAT, QUOTE, ANY APPROACH THAT DESIGNATES A

UNITED STATES DISTRICT COURT

SINGLE-FACTUAL OCCURRENCE HAS ALWAYS DETERMINATIVE OF AN INHERENTLY FACT-SPECIFIC FINDING SUCH AS MATERIALITY MUST NECESSARILY BE EITHER OVER-INCLUSIVE OR UNDER-INCLUSIVE.  WE THUS REJECTED THE DEFENDANT'S PROPOSED RULE EXPLAINING THAT IT WOULD ARTIFICIALLY EXCLUDE FROM THE DEFINITION OF MATERIALITY INFORMATION CONCERNING MERGER NEGOTIATIONS."

AND IN MATRIXX THEY CONCLUDED THAT REPORTS -- I'M SORRY -- REPORTS OF ADVERSE EVENTS ASSOCIATED WITH PHARMACEUTICAL COMPANY'S PRODUCTS IS ALSO AMONG -- JUST LIKE THE ARGUMENT THAT WAS MADE IN MATRIXX, AND THOSE SPECIFIC CATEGORIES OF ISSUES CANNOT BE REMOVED FROM THE MATERIALITY QUESTION.  THEY ARE QUESTIONS OF FACT; THEY ARE NOT QUESTIONS OF LAW.

SO, FOR EXAMPLE, AS WE WERE KIND OF PREPARING LAST NIGHT, WE WERE KIND OF GOING THROUGH SOME POTENTIAL HYPOTHETICALS AS TO HOW THIS COULD WORK.  I THINK, IF A PERSON PRIOR TO BEING APPOINTED CEO WAS DOING -- EXPERIMENTING WITH UNAPPROVED DRUGS ON BABIES IN THEIR BASEMENT AND LATER WAS APPOINTED CEO OF A PHARMACEUTICAL COMPANY, DO YOU THINK THAT INVESTORS MIGHT WANT TO KNOW THAT? I THINK SO.  I THINK THAT, YOU KNOW, IF THEY FOUND OUT THAT A PERSON WAS CONDUCTING EXPERIMENTS ON BABIES WITH UNAPPROVED DRUGS, THAT -- MAYBE THAT'S NOT A GREAT INVESTMENT IF THAT PERSON BECOMES THE CEO.  SHOULD THAT BE IMMATERIAL?  NO.

THE COURT:  CAN YOU ADDRESS YOUR RESPONSE TO DEFENSE COUNSEL'S ARGUMENT THAT THE INFORMATION IN THE DECISION WAS

UNITED STATES DISTRICT COURT

NOT NEW.  IT MERELY CONFIRMED WHAT WAS ALREADY IN THE PUBLIC.

MR. WILLIAMS:  I SAY THE SAME THING, YOUR HONOR, AND YOUR HONOR ADDRESSED THIS DIRECTLY IN THE -- IN THE INITIAL ORDER AND, I THINK, LAST NIGHT.  THAT THE NEW INFORMATION, A, IN FACT, IT WAS THAT THE FCA ACTUALLY FOUND THAT THIS WAS A LIE, A STATEMENT THAT WAS MADE BY THE COMPANY AND MR. STALEY WAS A LIE; AND, TWO, THE NEW INFORMATION WAS THAT MAYBE BARCLAYS' FINANCIAL CONDITION ISN'T WHAT IT SAID IT WAS BECAUSE, CLEARLY, THEIR ABILITY TO DO DUE DILIGENCE, NOT ONLY ABOUT THEIR OWN CEO, BUT, IN FACT, THE PROCESS OF THE -- OF DEALING WITH THE REGULATORS WAS FAULTY.  THAT WAS NEW INFORMATION.  I DON'T KNOW HOW TO EXPRESS IT ANY -- ANY -- ANY CLEARER, AND CLEARLY THEY WEREN'T COOPERATING.

I CAN MOVE ON TO THE NEXT TOPIC, YOUR HONOR.

THE COURT:  YES.  DID YOU HAVE ANYTHING TO SAY ABOUT THE STAY?

MR. WILLIAMS:  YES.  ON THE STAY -- LOOK, I UNDERSTAND -- WE UNDERSTAND THE COURT'S RULING.  WE UNDERSTAND THE LANGUAGE OF THE STATUTE.  I THINK THAT WHAT YOU INDICATED LAST NIGHT IN PRACTICALITY IS THAT YOU ARE GOING TO RULE ON THE 90(A) PIECE OF THE OVERALL COMPLAINT AT SOME POINT IN THE SHORT TERM.  BUT ULTIMATELY I THINK THAT IT IS -- THE -- THE WAY THAT THE STATUTE HAS BEEN INTERPRETED THAT ANY MOTION-TO-DISMISS LANGUAGE IS FAR MORE NUANCED THAN SIMPLY, WELL, ANY MOTION THAT IS -- ANY MOTION TO DISMISS STAYS ALL DISCOVERY.  I THINK WE TRIED TO EXPRESS THAT FOR

THE COURT.

I THINK THAT WHAT WE -- IF YOUR HONOR IS INCLINED, IT COULD AND SHOULD REVIEW ONCE AGAIN THE OPINION IN THE LATHAM VERSUS STEIN BECAUSE I THINK THE COURT THERE DISCUSSED THE COWEN CASE AND REALLY SORT OF CAPTURED WHY INTERPRETING THAT LANGUAGE STRICTLY IS NOT -- IT'S PROBABLY NOT APPROPRIATE.

IN THIS CASE, YOUR HONOR, I DON'T THINK YOU HAVE TO -- I DON'T THINK YOU HAVE TO REACH THAT. I THINK THAT -- I DON'T THINK THAT YOU HAVE TO ISSUE A RULING THAT SPECIFICALLY SAYS THAT. I THINK IT WILL COMPLICATE THE LAW. I DON'T THINK THAT IT IS NECESSARY. WE SERVED THE DISCOVERY BACK IN AUGUST OF 2025. NO DISCOVERY HAS BEEN TAKEN. WE ACTUALLY REACHED AN AGREEMENT WITH THE DEFENDANTS NOT TO TAKE ANY DISCOVERY UNTIL YOUR HONOR RULED ON THE MOTION FOR RECONSIDERATION; SO IT'S LARGELY MOOT.

WE HAD HOPED THEY WOULD ACTUALLY WITHDRAW THE MOTION, BUT I WILL SAY THAT TO DATE THE ONLY ENTITIES THAT ARE ACTUALLY ACTIVELY TAKING DISCOVERY IS THE DEFENDANTS. THEY'RE HERE ASKING YOU FOR A MOTION FOR AN ORDER STAYING DISCOVERY, AND THEY ARE ACTIVELY SEEKING DISCOVERY, NOT ONLY FROM OUR CLIENTS, BUT FROM THE INVESTMENT MANAGERS THAT ACTUALLY BOUGHT THE STOCK ON BEHALF OF OUR CLIENTS. I'M NOT PARTY TO THOSE CONVERSATIONS, BUT I HAVEN'T HEARD THAT THEY'VE TOLD THEM, "HEY, YOU DON'T NEED TO PRODUCE ANY DOCUMENTS." WHAT I HAVE HEARD IS THAT THEY WANT THEM.

UNITED STATES DISTRICT COURT

SO THEY'RE ASKING YOU --

THE COURT:  I'M GOING TO HAVE TO INTERRUPT YOU BECAUSE WE DO NEED TO MOVE ON.

WAS THERE ANY REBUTTAL THAT DEFENSE COUNSEL WANTED TO PROVIDE?

MR. SCOTT:  IF I COULD.

MR. WILLIAMS:  THANK YOU, YOUR HONOR.

MR. SCOTT:  UNDER 60 SECONDS OR SO.

THE COURT:  YES, YES.

MR. SCOTT:  IT'S IMPORTANT.  SO YOU ASKED THE QUESTION TO PLAINTIFFS' COUNSEL, LIKE, WHAT WAS IN THE COMPLAINT THAT WAS MATERIAL?  AND WHAT WE HEARD WAS AN ANSWER THAT HAS NOTHING TO DO WITH THE COMPLAINT.  WHAT HE SAID WAS THAT, ONCE THE MARKET KNEW THAT BARCLAYS WAS LYING -- ALLEGEDLY LYING ABOUT THE EPSTEIN-STALEY RELATIONSHIP, WHAT OTHER THINGS WERE WE LYING ABOUT?  AND WE COULD BE LYING ABOUT OUR FINANCIAL CONDITION; WE COULD BE LYING ABOUT WHOLE SORT OF THINGS.  NONE OF THAT, YOUR HONOR, IS ALLEGED IN THE COMPLAINT.  IT'S TOTALLY IMPERMISSIBLE TO CONSIDER IN THE CONTEXT OF PLEADING, AND THAT'S WHAT HAPPENED WITH THE INITIAL MOTION-TO-DISMISS DECISION ON THE COOPERATION POINT. THEY GOT UP IN ORAL ARGUMENT AND THEY ARGUED IT WAS MATERIAL BECAUSE THEY WANTED TO KNOW WHETHER OR NOT THEY WERE COOPERATING.  THAT'S NOT IN THE COMPLAINT EITHER.  NONE OF THIS CAN BE ACCEPTED.

FRANKLY, IT'S AN ADMISSION THAT THE ONLY THEORY

THEY HAVE IS THE MARKET WANTED STALEY TO CONTINUE AS THE CEO, AND WHEN HE LEFT AS CEO, THERE WAS NO REACTION; SO IT COMPLETELY REFUTES THEM ON MATERIALITY, YOUR HONOR.  SO THAT WAS A VERY SIGNIFICANT CONCESSION BY THEM.

THE CONFIRMATORY POINT AS WELL.  THE FACTS HERE ARE CONFIRMATORY.  HE SAID THE EVIDENCE IS THAT THE FCA'S CONCLUSION WAS NEW INFORMATION.  A CONCLUSION IS CONFIRMATORY.  IT WAS CONFIRMING OR CONCLUDING ON FACTS WELL-KNOWN TO THE MARKET.  HE'S ADMITTED, THEN, IT'S CONFIRMATORY UNDER BINDING NINTH CIRCUIT PRECEDENCE.  THAT CANNOT BE CONSIDERED AS A BASIS FOR LOSS CAUSATION.

YOU ASKED FOR THE CASES, YOUR HONOR, THAT GO TO THIS POINT ON CONFIRMATORY.  THEY'RE AT PAGES 12 TO 13 OF OUR OPENING MOTION.  IT'S THE HERBALIFE DECISION; IT'S THE ESPY DECISION; IT'S THE ARCIMOTO DECISION.

THE COURT:  REMIND ME:  THESE ARE CASES INVOLVING A DECISION BY A BODY LIKE THE FCA CONFIRMING --

MR. SCOTT:  THESE ARE ALL -- SO ONE INVOLVES A DECISION BY THE FDA.  THE OTHERS ARE CONFIRMATORY INFORMATION IN OTHER WAYS.  IN OTHER WORDS, THE COMPANY MAY HAVE CONFIRMED PRIOR INFORMATION.

THE COURT:  MY QUESTION WAS ABOUT AN OUTSIDE BODY'S INVESTIGATION.

MR. SCOTT:  ONE OF THEM RELATES TO THE FDA, YOUR HONOR.

THE COURT:  THE HERBALIFE CASE?

MR. SCOTT:  WE WILL GET THAT TO YOU -- SORRY.  YES, I

UNITED STATES DISTRICT COURT

HAVE IT HERE.  THE FIBROGEN, CASE.

THE COURT:  THANK YOU.

MR. SCOTT:  AND I WOULD SUGGEST, THOUGH, WHETHER IT IS THE COMPANY CONFIRMING IT OR WHETHER IT'S SOME REGULATORY AGENCY CONFIRMING IT, THE POINT ON MATERIALITY IT'S GOT TO BE NEW.  SO IT DOESN'T MATTER WHETHER A COMPANY CONFIRMS IT, AN EXECUTIVE CONFIRMS IT.

THE COURT:  I THOUGHT THIS POINT RELATES TO LOSS CAUSATION.

MR. SCOTT:  IT DOES, YOUR HONOR.  I MOVED ON FROM LOSS CAUSATION.  SO WE DO BELIEVE WITH RESPECT TO THAT.

AND THE LAST POINT ABOUT THE FCA DECISION, AGAIN, IT SAYS THAT BARCLAYS WAS DECEIVED.  BARCLAYS WAS NOT FOUND TO HAVE FAILED TO COOPERATE.  THEY WERE ACTUALLY DECEIVED.  A REASONABLE INFERENCE CANNOT BE DRAWN FROM THE COMPLAINT.

ONE THING ON THE STAY, YOUR HONOR, COUNSEL JUST SAID WE'RE ENGAGED IN DISCOVERY ON CLASS CERTIFICATION.  ONE THING HE DIDN'T MENTION IS, WHEN YOUR HONOR MOVED THE HEARINGS, THE WAY IT WAS ORIGINALLY SCHEDULED YOU HAD THE MOTION FOR RECONSIDERATION, AND THEN THE MOTION TO DISMISS HEARING, YOU MOVED THEM TO THIS MONTH IN JANUARY.  WE CALLED THEM AND THEN SENT THEM AN EMAIL AND SAY, "BECAUSE YOUR HONOR MOVED EVERYTHING, SHOULDN'T WE JUST MOVE CLASS CERTIFICATION SO WE DON'T HAVE TO DEAL WITH THE CLASS CERTIFICATION DISCOVERY WHEN WE DON'T HAVE THE BENEFIT OF YOUR RULINGS?"

THE COURT:  SO I THINK I'M CLEAR ON THAT.  THANK YOU SO

MUCH.

MR. SCOTT:  THANK YOU.

THE COURT:  I APPRECIATE THE PARTIES COMING IN.  THANK YOU FOR YOUR TIME AND YOUR ATTENTION.  THE COURT WILL TAKE THAT MATTER UNDER SUBMISSION AND ISSUE A RULING.  TAKE GOOD CARE.  HAVE A HAPPY NEW YEAR'S EVERYONE.

(AT 2:15 P.M., THE PROCEEDINGS WERE
ADJOURNED.)

UNITED STATES DISTRICT COURT

CERTIFICATE OF FEDERAL PRO TEMPORE

OFFICIAL REPORTER

COUNTY OF LOS ANGELES )

STATE OF CALIFORNIA    )

I, GAYE L. LIMON, FEDERAL PRO TEMPORE OFFICIAL COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT, PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS 14TH DAY OF JANUARY, 2026.

_____
GAYE L. LIMON, CSR NO. 7416
FEDERAL PRO TEMPORE OFFICIAL COURT REPORTER

UNITED STATES DISTRICT COURT