UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MERRITT, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>       v.<br><br><br>BARCLAYS PLC, JAMES E. STALEY, and NIGEL HIGGINS,<br><br>                     Defendants. | Case No.: 2:23-cv-09217-MEMF-KSx<br><br>**ORDER GRANTING BARCLAYS'S REQUEST FOR JUDICIAL NOTICE, AND GRANTING BARCLAYS'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [DKT. NOS. 114-15]** |

    Before the Court is a Request for Judicial Notice and a Motion to Dismiss the Second Amended Complaint filed by Defendant Barclays PLC ("Barclays"). Dkt. Nos. 114-15. For the reasons discussed below, the Court GRANTS Barclays's Request for Judicial Notice and Motion to Dismiss the Second Amended Complaint.

/ / /

/ / /

/ / /

1

**BACKGROUND**

I.    **Factual Allegations**[1]

This Court has previously detailed the factual background in this case in its Order granting in part the Motion to Dismiss the First Amended Complaint. *See* Dkt. No. 84 ("Order"). This Court will therefore only address the aspects of the factual and procedural background that are relevant to this Order.

This case concerns a securities class action on behalf of all persons or entities who (1) purchased or acquired Barclays American Depository Receipts ("ADRs") traded on the New York Stock Exchange ("NYSE") from July 22, 2019, through October 12, 2023, inclusive (the "Class Period") and/or (2) purchased or acquired Barclays ordinary shares traded on the London Stock Exchange ("LSE") during the Class Period. 2AC ¶ 1.

Plaintiffs include the Firemen's Retirement System of St. Louis (the "Retirement System"), and members of the putative class. *Id.* ¶ 43.[2] The Retirement System purchased ordinary shares during the Class Period. *Id.* Plaintiffs are citizens of the United States. *Id.* ¶ 33.

On August 15, 2019, the U.K.'s Financial Conduct Authority (the "FCA") contacted Nigel Higgins, Group Chairman of the Board of Barclays Bank, to request a written response detailing how the Board had satisfied itself that there was no impropriety in the relationship between James E. Staley, CEO of Barclays Bank and director on its Board from December 1, 2015, to October 31, 2021, and Jeffrey Epstein. *Id.* ¶¶ 19, 46-47. The resulting letter (the "2019 Letter") was drafted by Barclays Bank's General Counsel. *Id.* ¶ 19. Staley provided information for the 2019 Letter, and both Higgins and Staley made revisions and approved of the language. *Id.* ¶ 19. Barclays Bank sent the 2019 Letter to the FCA on October 8, 2019. *Id.* ¶ 20

---

[1] The following factual background is derived from the allegations in Plaintiffs' Second Amended Complaint, Dkt. No. 98 ("2AC"), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

[2] Although the original Complaint was filed by Stephen Merritt which is reflected in the caption for this case, the Court appointed the Teamsters as lead plaintiff in this action on June 11, 2024. Dkt. No. 9.

On October 12, 2023, the FCA issued a decision notice (the "FCA Decision") on the results of its investigation into the relationship between Staley and Epstein. *Id.* ¶ 104. The FCA found Staley acted "recklessly" in approving the 2019 Letter. *Id.* The FCA further found that the 2019 Letter contained two misleading statements about the nature of the relationship between Epstein and Staley, and the date of their last contact. *Id.* The FCA fined Staley and banned him from holding a senior management position in the financial services industry. *Id.* The FCA's announcement of the decision notice provided a link to the FCA Decision, which was published for the first time that same day. *Id.* ¶ 105.

The conclusions published in the FCA Decision were based in significant part on the same emails that Barclays possessed in January 2020, and the FCA Decision reprinted and analyzed portions of those emails between Staley and Epstein. *Id.* ¶¶ 111-12. "[T]he FCA Decision and the reprinted emails substantiate, contextualize, and confirm what had not been previously publicly disclosed: a yearslong, close, personal friendship between Staley and Epstein." *Id.* ¶ 114.

Also on October 12, 2023, Barclays issued a press release on the FCA Decision (the "2023 Press Release"). *Id.* ¶ 125. The 2023 Press Release disclosed conclusions by the Board's Remuneration Committee detailing a number of awards for which Staley was no longer eligible along with deferred compensation awards, amounting to a total value of £17.8 million. *Id.* ¶ 126. That day, the price of Barclays ADRs and ordinary shares declined by 4.99% and 3.12% respectively. *Id.* ¶ 127.

## II.    Procedural History

The First Amended Complaint, filed on August 12, 2024, brings three claims against Defendants. *See generally* Dkt. No. 52 ("1AC"). On June 24, 2025, this Court issued an Order denying Defendant Staley's Motion to Dismiss and granting in part Defendant Barclays's Motion to Dismiss. *See* Order. In its Order, the Court granted in part Barclays's Motion to Dismiss on the Retirement System's Count Three claim under the Financial Services and Markets Act ("FSMA"). The Court found that: (1) it would not dismiss Claim Three under the doctrine of *forum non conveniens*; and (2) the Retirement System insufficiently pleaded a dishonest delay claim, because "the 2023 Press Release [was] based specifically on the FCA Decision, and thus could not have been

3

disclosed earlier," and "the 2023 Press Release [was] specifically based on the FCA's final determination and not on what Defendants independently may have known." *See id.* at 20-23.[3]

The Second Amended Complaint was filed on July 24, 2025, and alleged the same three claims. *See generally* 2AC. Claim Three—brought only against Defendant Barclays by the Retirement System—alleges that Barclays dishonestly delayed the publication of information regarding Staley's close relationship with Epstein, which Barclays knew about, in violation of Section 90A of the FSMA of the United Kingdom ("Section 90A"). *See id.* ¶¶ 164–70.

On September 5, 2025, Barclays filed a Motion to Dismiss the 2AC. Dkt. No. 114 ("Motion"). On that same day, Barclays also filed a Request for Judicial Notice. Dkt. No. 115 ("RJN"). The Retirement System filed an Opposition to the Motion on October 3, 2025. Dkt. No. 117 ("Opposition"). Barclays filed a Reply on October 20, 2025. Dkt. No. 122 ("Reply"). On January 26, 2026, the Court continued the hearing on this Motion from January 22, 2026, to March 19, 2026. Dkt. Nos. 141, 148. On February 23, 2026, the Institute of International Bankers ("IIB") filed an Amicus Brief in support of Barclays' Motion. Dkt. No. 154. On February 24, 2026, Financial Recovery Technologies, LLC ("Financial Recovery") filed an Amicus Brief in support of the Retirement System for this Motion. Dkt. No. 157. The Court found this matter appropriate for resolution without oral argument and vacated the hearing set for March 19, 2026. *See* Dkt. No. 159; Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.[4]

/ / /

---

[3] This Court issued an Amended Order, which clarified one of the party's names in the Order denying Defendant Staley's Motion to Dismiss and granting in part Defendant Barclay's Motion to Dismiss. *See* Dkt. No. 93. When discussing this Court's prior Order for this Motion, this Court will refer to citations in the prior Order at Dkt. No. 84.

[4] The Retirement System contend that Barclays failed to comply with Local Rule 11-6.1 for having its Motion being over 10,000 words. *See* Opposition at 1 n.3. However, this Court granted a Stipulation regarding Modification of Word Limits for Barclays's opening and reply briefs. *See* Dkt. No. 120.

Moreover, this Court finds that the Retirement System's Opposition was untimely pursuant to Section VIII(B) of the Court's Civil Standing Order. *See* Civil Standing Order, §VIII(B). However, for the sake of judicial efficiency, the Court will consider the Opposition, but the Retirement System is admonished for filing a late Opposition and are warned that any subsequent late filing could lead to this Court as construing a motion as unopposed.

<u>**REQUEST FOR JUDICIAL NOTICE (DKT. NO. 115)**</u>

**I.      <u>Applicable Law</u>**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

**II.      <u>Discussion</u>**

In support of its Motion, Barclays requests this Court judicially notice: (1) A true and correct copy of the Brief for United Kingdom as Amicus Curiae, *Morrison v. Nat'l Aus. Bank Ltd.*, No. 08-1191 (U.S. Feb. 25, 2010); (2) A true and correct copy of the Brief for United Kingdom as Amicus Curiae, *Toshiba Corp. v. Auto. Indus. Pension Trust Fund*, No. 18-486 (U.S. Dec. 4, 2018); and (3) A true and correct copy of Plaintiffs' initial disclosures, dated August 14, 2025. *See* RJN.

The Retirement System objects to judicial notice of Exhibits One and Two to establish the truth of the facts contained therein, rather than merely to ascertain information that was in the public record. *See* Opposition at 16 n.17. But it does not object to judicial notice of Exhibits One and Two to "reflect what the U.K. government said about the cases before it at the time that those briefs were filed." *Id.* However, as noted above, under Fed. R. Evid. 201(b), courts generally may not notice disputed facts in public records. Therefore, this Court's grant of Barclays's RJN is only for the

purposes of showing information available in the public record and does not take notice of the disputed facts therein.

The Ninth Circuit has taken judicial notice of amicus briefs filed with the Supreme Court. *See Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 812 n.7 (9th Cir. 2024). Because it is a public record, Exhibits One and Two are sources (i.e., the fact that this document exists and that it contains the words it contains) whose accuracy cannot reasonably be questioned. *See* RJN. Also, Exhibit Three, Plaintiffs' initial disclosures, is a public record. Thus, this Court will take judicial notice of Exhibits One, Two, and Three, but will not take notice of any disputed facts therein.

## MOTION TO DISMISS (DKT. NO. 114)

### I.   Applicable Law

#### A.  12(b)(6) Motion

Barclays brings its Motion pursuant to Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### B. Federal Rule of Civil Procedure 44.1

"In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Fed. R. Civ. P. 44.1. "Although, pursuant to Rule 44.1, courts may ascertain foreign law through numerous means, expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law." *Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999). "Also, it is neither novel nor remarkable for a court to accept the uncontradicted testimony of an expert to establish the relevant foreign law." *Id.* at 1039. And "a federal court should carefully consider a foreign state's views about the meaning of its own laws. The appropriate weight in each case, however, will depend upon the circumstances; a federal court is neither bound to adopt the foreign government's characterization nor required to ignore other relevant materials." *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 34 (2018).

### II. Discussion

Barclays moves to dismiss Claim Three contending that this Court should dismiss under *forum non conveniens* or international comity grounds, and that regardless, the Retirement System has failed to state a Section 90A claim on the merits. *See generally* Motion. For the reasons discussed below, this Court finds that it will not dismiss on *forum non conveniens* or international comity grounds, and that Claim Three is not sufficiently pleaded.

### A. This Court will not Dismiss Claim Three on *Forum Non Conveniens* or International Comity Grounds.

Barclays argues that this Court should decline to exercise jurisdiction over Claim Three under the doctrine of *forum non conveniens* and international comity. *See* Motion at 14-25. Barclays previously argued this Court should decline to exercise jurisdiction under the doctrine of *forum non*

*conveniens* in its initial Motion to Dismiss; it argues that the Retirement System is now asking this Court to change existing English law, which requires dismissal in favor of an English forum. Motion at 16  (citing *Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d 1193, 1210 n.12 (9th Cir. 2017)). The Retirement System contends that this is an "untimely motion for reconsideration." *See* Opposition at 11. Although Barclays previously filed a motion for reconsideration and did not address this issue in that motion, *see* Dkt. No. 92, this Court does not find this to be an improper motion for reconsideration in light of the parties' new dispute regarding how English law would apply to Claim Three. Accordingly, this Court will address the *forum non conveniens* arguments below.

"The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). Because of this harsh result for plaintiffs, it is "'an exceptional tool to be employed sparingly.'" *Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1018 (9th Cir. 2011) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)). "At its core, the doctrine . . . is concerned with fairness to the parties." *Id.* at 1030. It is not a "'doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Dole Food Co.*, 303 F.3d at 1118 (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)). To prevail, the defendant bears the burden of showing "(1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Id.* "The plaintiff's choice of forum will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country." *Id.*

The central focus of the first part of the inquiry—whether an adequate alternative forum ordinarily exists—asks if "the *entire case* and *all the parties* can come within the jurisdiction of that forum. *Gutierrez*, 640 F.3d at 1029 (emphasis added). "The foreign court's jurisdiction over the case and competency to decide the legal questions involved will also be considered." *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001). "The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). Dismissal is not justified simply where a case involves conduct or parties from overseas. *Carijano*, 643 F.3d at 1224. "The burden of showing the existence

of an adequate alternative forum is the defendant's." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983).

Barclays argues that it "is amenable to service in England . . . and it is indisputable that English courts provide an adequate forum to adjudicate novel English law claims." Motion at 15. Barclays then argues that there is flexibility under this doctrine to allow dismissing some of a suit for *forum non conveniens*, while proceeding with other claims, because the Ninth Circuit in *Gutierrez* said that the "[a]n alternative forum *ordinarily exists*." *See* Motion at 16 (emphasis added) (citing *Gutierrez*, 640 F.3d at 1029). Barclays does not cite binding precedent in support. *See id.* at 16-17; *Cf. Su v. M/V S. Aster*, 978 F.2d 462, 467 (9th Cir. 1992) (*dismissing* some claims on the merits and the remainder of the claims on *forum non conveniens* grounds); Opposition at 12. Thus, this Court finds that, as discussed in its prior Order, the adequate forum inquiry concerns "the *entire case* and *all the parties*." *See* Order at 21.[5]

Moreover, *forum non conveniens* does not require the Retirement System to choose "'the optimal forum'" for its claims. *Dole Food Co.*, 303 F.3d at 1118 (quoting *Ravelo Monegro*, 211 F.3d at 514). And as discussed below in analyzing the 12(b)(6) claim, the Court is not altering existing English law, rather, the Court is simply applying the current state of English law as informed by the parties' expert testimony. The need to apply foreign law is "not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 n.29 (1981); *see also* Motion at 14-17; Reply at 8. The Retirement System agrees. *See* Opposition at 13. Accordingly, this Court still finds that because this case also involves two claims under U.S. law, both including Barclays as a defendant, a U.K. court

---

[5] Because Barclays does not cite binding precedent to show how it is proper for dismissal of a claim on *forum non conveniens* grounds, while the party's other federal claims are litigated in the U.S., this Court finds that severing Claim Three is not warranted. *See* Order at 22; *see also* Motion at 18.

would not necessarily be a *better* forum for the entire case and all Plaintiffs. [6] Nonetheless, the U.K is likely an *adequate* forum, as a remedy is provided under U.K. law. *See* Order at 21.[7]

Assuming the U.K. would be an adequate forum, this Court continues to the next step of the *forum non conveniens* analysis—consideration of the public and private interest factors. Courts consider the following private interest factors in determining whether to grant dismissal under *forum non conveniens*:

> (1) the residence of the parties and the witnesses;
> (2) the forum's convenience to the litigants;
> (3) the access to physical evidence and other sources of proof;
> (4) whether unwilling witnesses can be compelled to testify;
> (5) the cost of bringing those witnesses to trial;
> (6) the enforceability of the judgement; and
> (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lueck*, 236 F.3d at 1145.

> i.       Barclays has not met its burden to show how the private factors strongly weigh against dismissal on *forum non conveniens* grounds.

Barclays first argues that the Retirement System's choice of forum is entitled to little deference, citing cases primarily involving transfer of venue. *See* Motion at 18-19. The Retirement System contends that its choice of forum is entitled to "substantial deference." *See* Opposition at 11. Although there is "a strong presumption that [a domestic plaintiff's] choice of forum was convenient," *see Carijano*, 643 F.3d at 1229, "[t]his deference is 'far from absolute,' . . . and it is within the court's discretion to decide whether a foreign forum is more convenient," *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015) (quoting *Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 767 (9th Cir. 1991)); *see also Piper Aircraft,* 454 U.S. at 255 n.23 (noting that "[a] citizen's forum choice should not be given dispositive weight"). And a "U.S. citizen plaintiff is

---

[6] In its amicus brief, IIB makes the same argument regarding the novelty of the Retirement System's Section 90A claim and it being better suited for a U.K. court, *see* Dkt. No. 154 at 4-7, 9-10, but the Court is not persuaded by the argument for the reasons discussed above.

[7] In its amicus brief, Financial Recovery contends that the U.K. is "less adequate as a forum for shareholder disputes," because of "procedural barriers" that "will effectively close the courthouse doors to most members of the Ordinary Share Class," so the Court should not dismiss on *forum non conveniens* grounds. *See* Dkt. No. 157 at 5-6. But because the Court found that it is not dismissing this case on *forum non conveniens* due to its analysis of the private and public factors, the Court need not address this argument.

entitled to less deference in his choice of forum if he does not reside in that forum." *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017). Accordingly, this Court finds that the Retirement System is entitled to less deference, but that "is not the same thing as no deference." *Ravelo Monegro*, 211 F.3d at 514. This Court now addresses the private factors below.

The first factor is neutral against dismissal. "[A] court should evaluate 'the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[] their accessibility and convenience to the forum.'" *Lueck*, 236 F.3d at 1146 (quoting *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335-36 (9th Cir. 1984)). The residence of the parties is neutral because while Barclays is headquartered in London, 2AC ¶ 5, the Retirement System is located in St. Louis and seeks to represent a class, *see id.* ¶ 44. Moreover, the witnesses identified in the Rule 26(f) Report "may include" some witnesses that reside outside of the U.S., *see* Dkt. No. 100 at 6, but the Retirement System has also identified potential material witnesses located in the U.S, *see* Dkt. No. 115-4 at 5-8. Barclays has not explained why the U.K. or any other foreign witnesses shall be deemed more material and important than the U.S. witnesses. *See* Motion at 19. Accordingly, the first factor is neutral.

As to the second factor, Barclays has not argued why California is not a convenient forum for the Retirement System, or why it is more convenient for the Retirement System and class to litigate in the U.K. *See* Motion at 20; Reply at 8-9. This Court finds that the U.S. (and California, specifically) is a more convenient forum because the Retirement System is representing a class of U.S. investors, 2AC ¶ 33, there are material witnesses in the U.S., and as discussed below, the key physical evidence is likely to be digital. Thus, the second factor weighs against dismissal.

Next, the third factor weighs against dismissal. As this Court found in its prior Order: the evidence in this case is likely to be largely digital and held by parties in the suit—the contested statements were made by Barclays itself and are contained in materials easily available and transmitted online. *See* Order at 22; *cf. Lueck*, 236 F.3d at 1146 (finding the private interest factors favored dismissal where evidence in New Zealand included aircraft wreckage, flight crew, crash investigators, Plaintiffs, Plaintiffs' doctors and employers, airline and aircraft records, investigation records, and records regarding the qualifications of the flight crew). And the "most important

evidence" in this case, the Staley-Epstein emails, have "already been collected," so this Court does not find Barclays' contention regarding the FCA and the U.K.'s data privacy laws to be persuasive. *See* Motion at 20; Opposition at 14. And as the Retirement System notes, "those concerns would apply equally in U.K. court[s] and also for the Exchange Act claims," *see* Opposition at 14; *see also Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006) (finding, with respect to a dispute where evidence was potentially included in the United States and the Philippines, that "[a]ny court, whether in the United States or in the Philippines, will necessarily face some difficulty in securing evidence from abroad"). Thus, the third factor weighs against dismissal.

As to the fourth factor, the inquiry is focused on "whether unwilling witnesses *can be compelled to testify*." *Lueck*, 236 F.3d at 1145 (emphasis added). Thus, the inquiry does depend on this Court's subpoena power. *See* Opposition at 14. The Retirement System has identified potential U.K. witnesses in its Rule 26(f) Report and initial disclosures, *see* Dkt. No. 100 at 6; Dkt. No. 115-4 at 5-8, and this Court cannot compel any U.K. witness to testify, whether for this claim or the other claims. Therefore, the fourth factor weighs in favor of dismissal. *See* Motion at 21 (citing *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1451 (9th Cir. 1990)).

Next, as to the fifth factor, this Court finds this factor neutral because witnesses have been identified in both the U.S. and the U.K., *see* Dkt. No. 100 at 6; Dkt. No. 115-4 at 5-8; both parties would have to incur expenses in bringing witnesses to either forum, *see* Opposition at 15 (citing *Cooper*, 860 F.3d at 1211).

As to the sixth factor, Barclays contends that the Retirement System's class action will not be given preclusive effect in a U.K. court. *See* Motion at 22. However, it is not clear at this stage in the litigation that the Retirement System will propose inclusion of foreign citizens in its class; as this Court has previously noted, it appears likely that the class members reside in the U.S. *See* Order at 21-22. In fact, Plaintiffs explicitly allege that "[they] are members of the putative class and citizens of the United States." 2AC ¶ 33. The alleged "uncertainties" then that Barclays point to are purely speculative. *See* Reply at 10; *see also* Dkt. No. 154 at 16 (IIB arguing the same class action concerns). If the class does include foreign plaintiffs, then Barclays' concerns are valid, but it is premature to judge the preclusive effect without the class being defined. This Court can address this

issue at class certification, and there is no binding precedent saying otherwise. *See* Opposition at 15; Reply at 10. Accordingly, the sixth factor weighs against dismissal.

Finally, as to the seventh factor, the Court finds this factor is neutral. Barclays argues that the fact that the key witnesses live overseas shows why there is a practical problem in favor of dismissal. *See* Motion at 22. But as discussed above, the Retirement System has also identified key U.S. witnesses in its Rule 26(f) Report and initial disclosures. *See* Dkt. Nos. 100 at 6, 115-4 at 5-8. And the Retirement System argues that dismissal would increase costs and delay and lead to parallel proceedings. *See* Opposition at 15. There is simply no binding precedent to warrant severance of a claim on *forum non conveniens grounds*, while the other federal claims are litigated. Thus, the Retirement System cannot point to any practical problems, so the seventh factor is neutral.

In sum, this Court finds that three factors (Factors Two, Three, and Six) weigh against dismissal, one factor (Factor Four) weighs for dismissal, and three factors (Factors One, Five, and Seven) are neutral. Barclays has thus not met its burden to show that the balance of the private factors strongly favors dismissal. *See Dole Food Co.*, 303 F.3d at 1118. This Court now examines the public interest factors.

  ii.  The balance of the public interest factors weighs against dismissal on *forum non conveniens* grounds.

Courts also examine the following five public interest factors in determining whether to dismiss under forum non conveniens:

(1) local interest of lawsuit;
(2) the court's familiarity with governing law;
(3) burden on local courts and juries;
(4) congestion in the court; and
(5) the costs of resolving a dispute unrelated to this forum.

*Lueck*, 236 F.3d at 1147. Barclays argues that under the first two public interest factors, the U.K. has a "far greater interest in determining [the novel issue of] what information an English company must disclose under English law during on ongoing investigation by its primary U.K. securities regulator." *See* Motion at 22-23; *see also* Reply at 11. The Court acknowledges that this is true; the U.K. does have an interest in this case because the Retirement System bought shares traded on the London

Stock Exchange. However, the U.S. also has a significant interest in the case because Epstein was under extensive U.S. scrutiny and criminal investigations for his sex-trafficking charges. *See* 2AC ¶¶ 13-17, 92-95. And California and the U.S. each "[have] a strong interest in ensuring the welfare of its residents, U.S. citizens and non-citizens alike" from being harmed. *Tuazon*, 433 F.3d at 1182. At best, the first factor is neutral.

With respect to the second factor, the Court acknowledges that U.K. courts have a greater familiarity with governing law. But in light of the fact that there has been extensive expert testimony and English case law presented, that English law applies similar principles of statutory construction, and there are rules and precedent created to aid federal courts in applying foreign law, this factor does not weigh strongly in favor of dismissal. *See* Fed. R. Civ. P. 44.1; *Universe Sales Co.*, 182 F.3d at 1038.

Finally, the last three factors weigh against dismissal. Barclays contends that the local court and jury will be burdened by resolving a foreign dispute, and the Central District is congested. *See* Motion at 24. However, this Court is already adjudicating the Exchange Act claims, and a U.S. jury can address foreign subjects involving foreign companies. *See Tuazon*, 433 F.3d at 1181-82.

In sum, all the public factors weigh against dismissal. Because Barclays has not met its burden to show how the private and public factors strongly favor dismissal under the "exceptional" application of *forum non conveniens*, this Court retains jurisdiction over Claim Three. *See Gutierrez*, 640 F.3d at 1029; *Dole Food Co., Inc.*, 303 F.3d at 1118.[8]

### B. This Court Finds the Retirement System Has Failed to Properly Plead Claim Three.

In its previous Order, this Court found that the Retirement System failed to plead a Section 90A claim for dishonest delay. The Court accepted the parties' joint position that to plead such a claim, the Retirement System was required to plead the existence of an accurate-but-late statement.

---

[8] This Court does not find Barclays's international comity arguments persuasive for the same reasons it declines Barclays's *forum non conveniens* arguments. *See* Motion at 24-25 (citing *Mujica v. AirScan Inc.*, 771 F.3d 580, 597-600 (9th Cir. 2014)). Accordingly, this Court will not dismiss this case under international comity.

Order at 23; *see* Dkt. No. 69 at 24; Kramer Decl. ¶¶ 76, 84, Dkt. No. 69-1; Moore Decl. ¶¶ 58-59, Dkt. No. 58-1; Dkt. No. 73 at 10; Moore Decl. ¶¶ 31-32, Dkt. No. 73-1. In light of that, the Court found that the Retirement System had failed to plead the required accurate-but-late statement. Order at 23. The 2023 Press Release was not late because it was based on the FCA Decision and could not have been disclosed earlier. *Id.* Moreover, the 2023 Press Release was a statement of the FCA's final determination, not a statement of what the Dependents may have independently known earlier, so it did not meet the requirement of being an accurate-but-late statement of what the *Defendants* knew. *See id.*

Barclays contends that: (1) the Retirement System still does not allege that Barclays ever made a disclosure that was accurate but late; (2) the Retirement System improperly attempts to repackage a false misstatement or omission claim as a dishonest delay claim; and (3) the Retirement System cannot plead the requisite intent for its dishonest delay claim. *See* Motion at 10-14; Reply at 3-7. The Retirement System contends that: (1) the 2023 Press Release references and relies on the FCA Decision that includes information about Staley's relationship with Epstein that Barclays had independently known and never disclosed; (2) the issuer did not have to later publish the delayed information, and even if it was required, it satisfied the requirements of a dishonest delay claim; and (3) the Retirement System did not improperly attempt to allege a false misstatement or omission claim through its dishonest delay claim. *See* Opposition at 5-11.

As an initial matter, the parties now dispute whether, to plead a dishonest delay claim under the FMSA, the Retirement System must plead a publication that was delayed or whether it can bring a claim where it alleges that Barclays never published the delayed information. *See* Motion at 11; Opposition at 6-8; Reply at 3-4. This Court notes that in its first Motion to Dismiss, the Retirement System basically took the position—in reliance on an English law expert—that a dishonest delay claim required that there be a later publication of the withheld information, rather than no publication at all. *See* Dkt. No. 69 at 24; Kramer Decl. ¶¶ 76, 84, Dkt. No. 69-1; Moore Decl. ¶¶ 58-59, Dkt. No. 58-1; Dkt. No. 73 at 10; Moore Decl. ¶¶ 31-32, Dkt. No. 73-1. In any event, this Court need not resolve this dispute as even if there is no publication requirement, the Court finds that the Retirement System has failed to state a claim.

The Retirement System frames its dishonest delay claim as follows: Barclays dishonestly delayed disclosure of (1) information it possessed showing Staley's relationship was close and personal, (2) the fact that Barclays possessed emails detailing Staley's close relationship with Epstein, and (3) the fact that its 2019 Letter was clearly misleading. *See* Opposition at 8. The primary dispute that this Court must resolve is whether—and to what extent—a dishonest delay claim can overlap with a misleading statements claim. *See* Opposition at 10-11. In determining the meaning of English law on this point, this Court looks to the expert testimony provided, as well as its own research. *Universe Sales Co.*, 182 F.3d at 1038 (holding that "expert testimony accompanied by extracts from foreign legal materials has been and likely will continue to be the basic mode of proving foreign law," and that a district court "may do [its] own research in order to ascertain foreign law"). In this case, both sources lead to the same conclusion—that the Retirement System cannot bring a dishonest delay claim based upon the alleged failure of Barclays to correct certain misleading statements: to do so would render the misleading statements provision, and its reliance element, superfluous, contrary to basic principles of English statutory interpretation.

The Retirement System asserts—and Barclays disputes—that an overlap between a dishonest delay claim and a misleading statements claim is permitted and it can decide at its election which to pursue. Opposition at 10-11. But the Retirement System's expert only addressed the question of overlap between a dishonest delay claim and an *omissions* claim, not a misleading statements claim. *See* Kramer Decl. ¶ 75, Dkt. No. 69-1.

Similarly, *Standard Chartered*, upon which the Retirement System relies, also only discusses the question of overlap between a dishonest delay claim and an *omissions* claim. *Various Claimants v. Standard Chartered PLC* [2025] EWHC 698, ¶¶ 109-112, Dkt. No. 114-5 at 490-91 of 1378. But the problem this Court sees is that the Retirement System is attempting to craft a dishonest delay claim out of allegedly *misleading* statements. Neither its expert nor any of the case law cited suggests that a dishonest delay claim can be stretched this far.

Just as with statutory construction under American law, English law also incorporates the principle—known in U.S. law as the canon against surplusage—that every word of a statute is presumed to have a meaning and courts will therefore construe statutes to avoid rendering language

meaningless. *See* Diggory Bailey & Luke Norbury, *Bennion, Bailey and Norbury on Statutory Interpretation* 631-32 (8th ed. 2020)[9] ("Given the presumption that the legislature does nothing in vain, the court must endeavor to give significance to every word of an enactment. It is presumed that if a word or phrase appears, it was put there for a purpose and must not be disregarded. . . . The presumption that every word in an enactment is to be given meaning may affect the interpretation of a different enactment."); *see also Revenue and Customs Commissioners v Lloyds TSB Equipment Leasing (No.1) Ltd*, [2013] UKUT 368 (TCC), § 44(c), 2013 WL 4411349 (citing *Bennion on Statutory Interpretation*, 5th. ed., at page 1157) ("Every word of an enactment is presumed to have been put there for a purpose.")); *Cf.* Moore Decl. ¶¶ 60, 78, Dkt. No. 114-2; *Allianz Funds Multi-Strategy Trust v. Barclays* [2024] EWHC 2710 (Ch), ¶¶ 141-42, Dkt. No. 114-5 at 417-18 of 1378. Were this Court to read Paragraph 5 of Schedule 10A to permit a dishonest delay claim based upon a failure to correct a prior misleading statement, this would render a Paragraph 3 claim for misleading statements redundant, and in particular, eliminate the reliance element that neither party disputes is important to all Paragraph 3 claims. The Retirement System points to nothing in the legislative history suggesting that in adding a dishonest delay claim to fill an acknowledged gap, that the legislature intended to eliminate the reliance requirement for misleading statements claims, or allow parties to bring dishonest delay claims instead of misleading statements claims where they wished to

---

[9] The Court finds the second and third examples particularly instructive:

> In *R v Millward*[,] the Court of Appeal rejected the appellant's argument that the Perjury Act 1911, s1(1), applies only where the witness believes a false statement to be material, because this reading would render s 1(6) of the Act (which provides that the question whether a statement is material is a question of law to be decided by the court of trial) meaningless.

> In *Brown v Hyndburn Borough Council*[,] the Court of Appeal considered whether the power in the Housing Act 2004, s 90(1), to impose conditions on landlords 'for regulating the management, use or occupation of the house concerned' enabled a local authority to impose conditions requiring a landlord to provide facilities. Section 90(3) conferred a limited power to impose conditions relating to certain kinds of facilities. Section 90(3) would have been unnecessary if conditions as to facilities could be imposed under s 90(1) – this pointed against s 90(1) being interpreted in this way.

Bailey & Norbury, *supra*, at 631-32.

avoid pleading reliance.[10] *See* Dkt. No. 69 at 24; Opposition at 7-10; *see also* Kramer Decl. ¶¶ 28-35, 75-77, 107, 109-10, Dkt. No. 69-1.

And here, it is beyond dispute that the dishonest delay the Retirement System alleges is a failure to correct prior allegedly misleading statements. The Retirement System cannot reasonably dispute that the 2AC alleges that Barclays affirmatively made several misleading statements regarding the Staley-Epstein relationship—rather than concealing information by making no statements. *See* 2AC ¶¶ 103-07, 115-16, 119. In fact, its first expert enumerated the "published statements" that could support a Schedule 10A claim, and each is fairly characterized as a misleading statement under the Retirement System's theory of the case. *See* Kramer Decl. ¶ 47, Dkt. No. 69-1 (listing paragraphs 69-70, 77-79, 83, 88-89, 94, and 98 in the 2019 Annual Report as constituting "published information" for the purposes of Schedule 10A). Several are explicitly characterized as such. *See* 1AC ¶¶ 69-70, 77-79, 81, 91, 106-09.[11]

Accordingly, this Court finds that the Retirement System has failed to properly plead a dishonest delay claim because a dishonest delay claim must be based on the dishonest delay in publishing information as opposed to a failure to correct a prior misleading statement.

---

[10] Given the settled understanding of the purpose of adding the dishonest delay claim (to plug a gap and not to eliminate the reliance requirement), applying this statutory construction principle is also consistent with interpreting the statute under the purposive method of interpretation, as the Retirement System's expert proposes. "The Courts have emphasized that s.90A should be construed purposively, which is to say '*consistently with the admitted objectives of both the domestic legislature and the Transparency Directive.*'" Kramer Decl. ¶ 34, Dkt. No. 69-1. As stated in a leading treatise, "The courts have for a long time held that legislation should be interpreted according to the 'mischief' that it is intended to address." Bailey & Norbury, *supra*, at 434. This principle is defined as follows:

Purposivism construction:

(1) In construing an enactment the court should aim to give effect to the legislative purpose.
(2) A purposive construction of an enactment is a construction that interprets the enactment's language, so far as possible, in a way which best gives effect to the enactment's purpose.
(3) A purposive construction may accord with a grammatical construction, or may require a strained construction.

Bailey & Norbury, *supra*, at 434-35.

[11] The corresponding paragraphs in the 2AC also explicitly allege misleading statements. *See* 2AC ¶¶ 69-70, 77-79, 81, 120-23.

Thus, the Section 90A claim fails. Having already provided the Retirement System with an opportunity to amend the complaint and in the absence of any request by the Retirement System that it be permitted to further amend or, more importantly, any indication that it can amend the complaint to resolve the defects identified above, the Section 90A claim is dismissed without leave to amend.

### III.  Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Barclays's Request for Judicial Notice (Dkt. No. 115) is GRANTED.
2. Barclays's Motion to Dismiss Claim Three of the Second Amended Complaint (Dkt. No. 114) is GRANTED WITHOUT LEAVE TO AMEND.
3. For clarity of the docket, the Plaintiffs shall file a Third Amended Complaint within seven (7) days of this Order that omits Claim Three.

IT IS SO ORDERED.

Dated: July 28, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge